UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 13bk31265 |
| CHICAGO CONSTRUCTION SPECIALTIES, INC., | Chapter 11 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of the Motion To Authorize the Debtor To Reject All Collective Bargaining Agreements to Which It Is a Party (the "Motion") brought by Chicago Construction Specialties, Inc. (the "Debtor"). The Construction and General Laborers' District Council of Chicago and Vicinity (the "Union") and the Laborers' Pension and Welfare Funds (the "Funds") (collectively, the "Respondents"), parties to collective bargaining agreements with the Debtor, have objected to the Motion. Upon review of the parties' respective filings and after holding a hearing on the matter, the court finds that the Debtor has satisfied the requirements under 11 U.S.C. § 1113 for rejection of collective bargaining agreements in the context of a chapter 11 liquidation and, accordingly, grants the Motion.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion to reject collective bargaining agreements pursuant to section 1113 of the Bankruptcy Code arises in a case under title 11. As such, such a motion is a core proceeding and within the bankruptcy court's statutory and constitutional jurisdiction. 28 U.S.C. § 157(b)(2)(A) and (O); *In re Garofalo's Finer Foods, Inc.*, 117 B.R. 363, 365 (Bankr. N.D. Ill. 1990) (Squires, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the Motion [Docket No. 42], the court has evaluated the arguments of the parties at the February 5, 2014 hearing on the Motion (the "Hearing"), has reviewed and considered the Motion itself, and has considered:

(1) Funds' Objection to Motion To Authorize the Debtor To Reject All Collective Bargaining Agreements to Which It Is a Party [Docket No. 53][1]; and

(2) Debtor's Reply in Support of Its Motion To Authorize the Debtor To Reject All Collective Bargaining Agreements to Which It Is a Party [Docket No. 60].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## BACKGROUND

From consideration of the foregoing, the court finds as undisputed the following facts:

(1) Prior to selling substantially all of its assets and commencing this bankruptcy case, the Debtor performed certain construction demolition work for general contractors in the Chicago metropolitan area.

(2) On or about August 6, 2008,[2] in connection with its construction demolition work, the Debtor entered into an "Independent Construction Industry Collective Bargaining Agreement" (the "CBA") with the Union.

(3) By signing the CBA, and specifically, by virtue of the provisions of paragraph 2 of the CBA, the Debtor bound itself as a party to a host of other collective bargaining agreements which were then in force between the Union and a number of other health and welfare trusts and entities (the "Benefits Trusts"). The Benefits Trusts were designed to provide employment benefits to the Debtor's unionized work force and had each designated the Funds to be their agent for collection and other purposes.

(4) On February 8, 2013, the Debtor ceased all business operations.

(5) In May 2013,[3] the Debtor disposed of substantially all of its tangible assets at a public auction.

---

[1] Despite the title, the objection was filed by both of the Respondents.

[2] The CBA provided to the court is undated.

[3] The exact date of the auction was not provided by either party in their briefings or exhibits.

(6) On August 5, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

(7) Also on August 5, 2013, following the commencement of the case, the Debtor, through its counsel, sent a letter to the Respondents and their counsel, to inform them that the Debtor proposed to reject the CBA and all related collective bargaining agreements pursuant to 11 U.S.C. § 1113 (the "Notice").

(8) On December 11, 2013, the Debtor filed the Motion.

## APPLICABLE LAW

The matter before the court lies at the nexus of bankruptcy and labor laws. This matter is one of apparent first impression in this court as to the interpretation of section 1113 of the Bankruptcy Code as it pertains to a liquidating chapter 11 case.

Section 1113 governs the rejection or modification of a collective bargaining agreement by a chapter 11 trustee or debtor in possession. It provides, in pertinent part, as follows:

> (a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement *only in accordance with the provisions of this section.*
>
> (b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession), shall—
>
>> (A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and
>>
>> (B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.
>
> (2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.
>
> (c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—
>
>> (1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);

3

>  (2) the authorized representative of the employees has refused to accept such proposal without good cause; and
>
>  (3) the balance of the equities clearly favors rejection of such agreement ....
>
> (f) *No provision of this title* shall be construed to permit a trustee to *unilaterally terminate or alter* any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

11 U.S.C. § 1113 (emphasis added).

A debtor – as the movant – has the burden of proof with respect to a request under section 1113 and must demonstrate each element by preponderance of the evidence. *Garofalo's Finer Foods, Inc.*, 117 B.R. at 370. As with all matters before the court, however, once a *prima facie* case has been established, the burden then shifts to the party opposing the relief requested. *In re Patriot Coal Corp.*, 493 B.R. 65, 112 (Bankr. E.D. Mo. 2013) (*citing In re American Provision Co.*, 44 B.R. 907, 909 (Bankr. D. Minn. 1984)).

The case at bar turns in part on those burdens, but also on how the underlying elements may be established in a liquidating case under chapter 11. The Debtor argues that it has, within the circumstances of a liquidating case, satisfied the elements of section 1113. The Respondents, standing on the strict requirements of section 1113, insist that the Debtor has not.

In order to better understand the positions of the parties here, it is essential to first understand section 1113 itself. In so doing, the court considers the circumstances surrounding the enactment of section 1113 and its application to liquidations, keeping in mind that "[t]he case law in this area is far from controlling." *In re Hostess Brands, Inc.*, 477 B.R. 378, 380 (Bankr. S.D.N.Y. 2012).

A.  The Purpose of Section 1113

As noted above, section 1113 governs the rejection or modification of a collective bargaining agreement by a chapter 11 trustee or debtor in possession, and was enacted by Congress, in part, in response to *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984). In *Bildisco*, the Supreme Court addressed how collective bargaining agreements would be treated under the relatively new Bankruptcy Code. *Id.* at 525-26. *Bildisco* was, for many, a crucial formative case on how the Bankruptcy Code's expansive treatment of a debtor's contracts might override existing and well developed law in other arenas. *In re Family Snacks, Inc.*, 257 B.R. 884, 890 (B.A.P. 8th Cir. 2001); *Garofalo's Finer Foods, Inc.*, 117 B.R. at 369 (the *Bildisco* case "remains an important indicator" of the meaning of the Bankruptcy Code).

The Supreme Court in *Bildisco* first considered whether collective bargaining agreements would be treated in the same manner as "executory contracts" under the Bankruptcy Code. Given the expansive definition that that term has been afforded,[4] it is not surprising that the Court

---

[4] While "executory contract" is not defined in the Bankruptcy Code, the Seventh Circuit has joined the majority of courts in adopting Professor Countryman's definition of executory contract. *Dick ex rel. Amend. Hilbert Residence Maint. Trust v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006) (*citing In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir.1989)). According to Professor Countryman, an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing

4

unanimously held that a collective bargaining agreement falls within the definition. *Bildisco*, 465 U.S. at 521-22. Given that conclusion, it is equally unsurprising that the Court held that a chapter 11 debtor in possession could reject such a collective bargaining agreement in place as of the filing of the petition so long as the rejection was necessary to the debtor's reorganization and the equities favored such a rejection. *Id.* at 526-27.

The second holding of the Court in *Bildisco* was, however, more controversial. In considering the debtor in possession's power of rejection, the Court stated that a debtor could unilaterally reject such an agreement without violating section (8)(d) of the National Labor Relations Act (the "NLRA").[5] *Id.* at 523-27. The Supreme Court stated:

> Section 8(d) applies when contractual obligations are repudiated by the unilateral actions of a party to the collective-bargaining agreement. We have recognized that Congress's central purpose in enacting § 8(d) was to regulate the modification of collective-bargaining agreements and to facilitate agreement in place of economic warfare. In a Chapter 11 case, however, the "modification" in the agreement has been accomplished not by the employer's unilateral action, but rather by operation of law. Since the filing of a petition in bankruptcy under Chapter 11 makes the contract unenforceable, § 8(d) procedures have no application to the employer's unilateral rejection of an already unenforceable contract.

*Id.* at 532-533 (internal citations omitted). As to this latter holding, Congress was rightfully concerned that *Bildisco* would result in "companies ... misusing the bankruptcy system as an end-run around collective bargaining." *In re Pinnacle Airlines Corp.*, 483 B.R. 381, 404 (Bankr. S.D.N.Y. 2012). Congress acted on that concern, enacting section 1113.

In enacting section 1113, Congress made clear that collective bargaining agreements are a special breed of contract, entitled to special treatment in bankruptcy. *Family Snacks, Inc.*, 257 B.R. at 890 (Congress "clearly manifested its intent that CBAs be treated differently than other executory contracts with respect to rejection."). While section 1113 is not artfully drafted, the purpose of avoiding abuses by debtors is evident in the statute. *Garofalo's Finer Foods, Inc.*, 117 B.R. at 370 (Section 1113 is meant to encourage and create an "expedited form of collective bargaining with a number of safeguards designated to ensure that employers cannot use chapter 11 solely to rid themselves of unions, but only propose modifications that are truly ...."). The point is to balance the potential for abuse with a debtor's legitimate need to modify its collective bargaining agreements in order to reorganize. *See, e.g., In re Northwest Airlines Corp.*, 346 B.R. 307, 330 (Bankr. S.D.N.Y. 2006).

B.   Applicability of Section 1113 in Liquidations

Preventing abuse, however, is of greater concern when the debtor is in an actual position to abuse the system. When a debtor is liquidating, different factors come into play.

---

the performance of the other." V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973). An unexpired collective bargaining agreement unquestionably meets this definition.

[5]   Section 8(d) of the NLRA prohibits either party to a labor contract from unilaterally changing its terms and conditions during the life of the agreement. 29 U.S.C. § 158(d).

5

1.  Liquidation in Chapter 7

In bankruptcy, liquidation generally occurs under chapter 7 of the Bankruptcy Code. In such a case, the court process is used to wind up the debtor's estate as expeditiously as possible. 11 U.S.C. § 704(a)(1). All of the debtor's executory contracts are rejected as a matter of law, 11 U.S.C. § 744, and as the debtor receives no discharge in a chapter 7 case, the fresh start policy concerns underlying a traditional chapter 11 or 13 case are not present. *In re Am. Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004) (Cox, J.).

It is generally accepted, though not without some controversy, that section 1113 does not apply in a chapter 7 liquidation. *In re Rufener Const., Inc.*, 53 F.3d 1064, 1067 (9th Cir. 1995); *In re Moline Corp.*, 144 B.R. 75, 79 (Bankr. N.D. Ill. 1992) (Ginsberg, J.); *In re Liberty Fibers Corp.*, No. 05-53874, 2007 WL 2471446, at *4 (Bankr. E.D. Tenn. 2007); *In re U.S. Truck Co. Holdings*, No. 99-59972 WS, 2000 WL 1580098, at *9 (Bankr. E.D. Mich. 2000). The controversy arises out of the wording of section 1113(f), which reads, in pertinent part, that "*[n]o provision of this title* shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement ...." 11 U.S.C. § 1113. As the "title" in this provision refers to title 11, then "under the plain language of the statute, no provision of the entire bankruptcy code may be construed to permit the unilateral termination of a collective bargaining agreement absent compliance with the provisions of § 1113." *Rufener Const., Inc.*, 53 F.3d at 1067.

Despite this language, courts have found several reasons not to apply section 1113 in chapter 7 cases.

Several courts have concluded that section 103(g) of the Bankruptcy Code makes the wording of section 1113(f) irrelevant. Section 103(g) states that "[e]xcept as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply *only* in a case under such chapter." 11 U.S.C. § 103 (emphasis added). As section 1113 is part of subchapter I of chapter 11 and as the exceptions in section 901 are inapplicable, those courts find that section 1113 must be limited to application to a chapter 11 case only. *See, e.g., Loc. Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc.*, 314 F. Supp. 2d 332, 342 (S.D.N.Y. 2004); *Liberty Fibers Corp.*, 2007 WL 2471446, at *3; *Moline Corp.*, 144 B.R. at 79.

Other courts have looked to the language of section 1113 itself to conclude that section 1113 has no application in a chapter 7 case. Section 1113(a) states that "[t]he *debtor in possession*, or the *trustee* if one has been appointed under the provisions of *this chapter* ... may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." 11 U.S.C. § 1113(a) (emphasis added). As debtors in possession exist only in chapter 11 cases and given the chapter specific reference for trustee appointment, such courts conclude that "[section] 1113 as a whole, ... [makes] clear that its provisions do not apply to Chapter 7 proceedings." *Liberty Fibers Corp.*, 2007 WL 2471446, at *4; *see also Rufener Const., Inc.*, 53 F.3d at 1068 ("Reading the language of § 1113 in its entirety, we conclude that it is applicable only to bankruptcies filed under Chapter 11."). As the *Rufener* court stated, "[w]hen we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." *Rufener Const., Inc.*, 53 F.3d at 1067.

Courts have also expanded their analysis to conclude that section 1113 serves no purpose in a chapter 7 liquidation. As the *Liberty Fibers* court stated, "[w]ith few exceptions, companies in Chapter 7 bankruptcy are not engaging in operations to which the terms of collective bargaining agreements would be relevant, and little purpose would be served by the debtor's complying with the requirements of § 1113." *Liberty Fibers Corp.*, 2007 WL 2471446, at *4 (*citing Rufener Const., Inc.*, 53 F.3d at 1067).

For each of the foregoing reasons, this court agrees with those courts that have held that "section 1113(f) does not apply in Chapter 7." *Moline Corp.*, 144 B.R. at 79.

2. Liquidation in Chapter 11

Chapter 7 does not, however, provide the only method of liquidation in the Bankruptcy Code. Despite being entitled "Reorganization," chapter 11 expressly contemplates liquidating plans of reorganization. Section 1129 of the Bankruptcy Code, for example, provides a condition to confirmation that "[c]onfirmation of the plan is not likely to be followed by the liquidation ... *unless such liquidation ... is proposed in the plan.*" 11 U.S.C. § 1129(a)(11) (emphasis added); *see also* 11 U.S.C. § 1123 (A plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests.").

While a debtor may choose to liquidate in chapter 11 over chapter 7 for a variety of reasons, the choice of chapters does not change the ultimate result. As in a chapter 7, a chapter 11 debtor who is not an individual receives no discharge. 11 U.S.C. § 1141(d)(3)(A); 11 U.S.C. § 727(a). While the chapter 11 confirmation requirements are onerous compared to the less complicated procedures in chapter 7, the net result should be the same. *See In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 523 (Bankr. S.D.N.Y. 1991) ("[T]here are no material differences between the mechanics of liquidation in Chapter 11 or Chapter 7."). The debtor's motivation does not change the fact that liquidating under chapter 11 is permissible.

As noted by the Ninth Circuit, however, "the procedural requirements imposed by § 1113 appear ill-suited to a liquidation proceeding. Many of the provisions of the section are premised on the notion that the company is still conducting business." *Rufener Const., Inc.*, 53 F.3d at 1067. This court agrees.

It is tempting, therefore, to find that section 1113 is simply inapplicable to liquidating chapter 11 cases. After all, the express language of section 1113 makes clear that the modifications therein are those "necessary to permit the *reorganization* of the debtor." 11 U.S.C. § 1113(b)(1)(A). Such reasoning would be consistent with those courts who have read the use of "debtor in possession" in section 1113 to conclude that section 1113 does not apply outside chapter 11. *See, e.g., Liberty Fibers Corp.*, 2007 WL 2471446, at *4.

But those courts that have short cut the process of applying section 1113 have paid the price on appeal. *See Family Snacks, Inc.*, 257 B.R. 884 (remanding to bankruptcy court for consideration of all factors set forth in section 1113); *see also Tool & Die Makers Loc. Lodge No. 113 v. Buhrke Industries, Inc.*, 94 C 5728, 1996 WL 131698, at **9-10 (N.D. Ill. 1996) ("The Bankruptcy Court did not find these nine requirements before concluding that [the debtor] could reject the CBA ... Although this court must apply the 'clearly erroneous' standard of review for the Bankruptcy Court's findings of

7

fact, it may remand if the Bankruptcy Court failed to sufficiently delineate the evidentiary basis for its decision.").

Further, a conclusion that section 1113 does not apply to a liquidating chapter 11 case is not consistent with the overall language of chapter 11. As noted above, chapter 11 as a whole is entitled "Reorganization." As liquidation is an option within chapter 11, it follows that "reorganization" in chapter 11 could mean either reorganization or liquidation.[6] Thus it is possible that use of the term reorganization in section 1113 may also be given to mean either reorganization or liquidation.

For fear of the former rather than belief in the latter, it is this court's conclusion that section 1113 applies in a liquidating chapter 11 case. In application, however, the court must not just consider the tests that have developed in the case law for reorganizing cases. The court must also determine how, if any, those tests should be treated differently in a liquidating case.

## DISCUSSION

The majority of cases dealing with section 1113 are of the nonliquidating variety. Thus the majority of opinions addressing section 1113 address it in the context of a debtor's reorganization. These courts reason that without section 1113 relief, a debtor may be unable to effectively reorganize its obligations and may ultimately to be forced to liquidate. *See, e.g., Northwest Airlines Corp.*, 346 B.R. at 330. At the same time, these courts balance the request under section 1113 with its overriding goal noted above: protecting against abuse from debtors.

These courts have developed over time a nine-factor test that balances these two concerns. *American Provision*, 44 B.R. at 909. The test, which is tailored to reorganizing cases and not liquidating ones, essentially paraphrases the statutory requirements articulated in sections 1113(b) and (c). *Id.*; *see also Family Snacks, Inc.*, 257 B.R. at 892; *In re Horizon Nat. Resources Co.*, 316 B.R. 268, 280 (Bankr. E.D. Ky. 2004); *In re Lady H Coal Co., Inc.*, 193 B.R. 233, 241 (Bankr. S.D.W. Va. 1996); *Garofalo's Finer Foods, Inc.*, 117 B.R. at 370. The factors, paraphrased from *American Provision*, are as follows:

1. The debtor in possession must make a proposal to the union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

---

[6]    The court notes that the use of the term "reorganization" to encompass liquidation, however, would render the juxtaposition of reorganization and liquidation in 11 U.S.C. § 1129(a)(11) superfluous and, therefore, the use of "reorganization" in chapter 11 is not consistent.

8

5. The debtor must provide to the union such relevant information as is necessary to evaluate the proposal.

6. Between the time of the making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.

*American Provision*, 44 B.R. at 909.

As noted above, *American Provision* provides that it is the debtor that bears the ultimate burden under the statute. *Id.* at 909. How a debtor meets that burden is not entirely clear and has been the subject of a variety of cases on point. What is clear, however, is that even where the debtor bears the ultimate burden, the court may determine the burden of production. *Id.*; *see also In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983). This avoids instances where the debtor must otherwise prove the nonexistence of a fact or provide proof that is more likely to be accessible to an objecting party. *Martin*, 698 F.2d at 887.

As will be shown, in a liquidation, some of these nine factors are satisfied by nature of the liquidation itself. In other words, the nine-factor test must be applied contextually, rather than strictly as the Respondents propose. That being the case, however, the initial burden must fall on the Debtor to demonstrate that this case is, indeed, a liquidation.

A.   The Debtor's Initial Burden

It is incumbent on a debtor seeking, as a by product of its liquidation, leniency with respect to the section 1113 factors to first demonstrate that it is indeed liquidating. The easiest way for a debtor in a chapter 11 to demonstrate its liquidation is to present a plan that so provides. Presuming that the modification of the collective bargaining agreement is contained within that plan and is not sought independently, the debtor need do nothing further than point to that plan to show that it is liquidating. If the plan is confirmed unmodified, the liquidation will proceed.

This is not to say that a debtor need demonstrate that its liquidation is the right choice. The Bankruptcy Code contains mechanisms to ensure that such a choice, made in the context of a bankruptcy case, is correct. If a debtor proposes a plan that calls for its liquidation, section 1129 will determine the plan's propriety.

That is not, however, the case here. Here, the debtor seeks modification in advance of a plan, for good reason. The Debtor here has ceased operations and sold substantially all its assets prior to filing for bankruptcy. Yet, even where such a debtor has sold its assets, that does not result in a termination of the debtor's collective bargaining agreements unless the agreements so provide. *Buhrke Indus.*, 1996 WL 131698, at *7.

9

Thus the Debtor remains bound to a collective bargaining agreement though its business is defunct. The Debtor seeks to reject that agreement in the course of its liquidation. Why? Because, as with any unrejected contract, postpetition obligations thereunder may result in administrative claims against the estate. 11 U.S.C. § 365(g); *Moline Corp.*, 144 B.R. at 78. Waiting to reject as a part of a confirmed plan, when such plan confirmation process may be protracted and the intermediate period results in accrual of administrative obligations, would not be in the interest of the Debtor's estate as a whole.

Such claims – should they meet the definition of allowable administrative claims – not only dilute the recoveries of other creditors, but have an even greater potential detriment to the Debtor's restructuring. As the failure to pay administrative claims prevents a plan from being confirmed, 11 U.S.C. § 1129(a)(9)(A), the net result of accrual of administrative claims beyond the defunct Debtor's ability to pay would be that the Debtor would be prevented from confirming its plan of liquidation at all.

Further, while denial of rejection does not automatically result in an executory contract's assumption, *Family Snacks, Inc.*, 257 B.R. at 902; *see also Massachusetts Air Conditioning & Heating Corp. v. McCoy*, 196 B.R. 659, 663 (D. Mass. 1996) ("Because § 1113 speaks only to rejection, assumption of a collective bargaining agreement—like any other executory contract—remains within the province of § 365."), given that such contracts "ride through" bankruptcy and remain enforceable against a debtor, *Bildisco*, 465 U.S. at 546 n.12 (Brennan, J., concurring), failure to reject is tantamount to assumption in that regard. The Debtor's inability to reject such contracts in the context of its liquidation would leave open questions that the liquidation is designed to answer.

The net result of the Respondents' argument would be, in the case of collective bargaining agreements not rejected pursuant to section 1113, to afford claims thereunder a species of superpriority, something that the higher courts in this District have expressly declined to provide. *Buhrke Indus.*, 1996 WL 131698, at *4 ("Congress has shown on other occasions that it knows how to create a superpriority above and beyond section 507, and yet they chose not to do so here.").

Given the foregoing, the Debtor's choice to seek rejection in advance of a plan is understandable. Nonetheless, such a choice places a higher burden on the debtor to demonstrate its liquidation.

The facts here, however, show that that burden is easily met. Almost six months prior to filing for bankruptcy, the Debtor ceased business operations. Further, the Debtor then sold all of its assets more than three months prior to seeking bankruptcy relief.

Under these circumstances, the Debtor has no choice but to liquidate as there is nothing left to reorganize. Its assets are gone. Any breach of the collective bargaining agreements has long since occurred, or should have occurred, as there remains no business to perform the obligations thereunder. For these reasons, the court concludes that the Debtor has demonstrated that it is in liquidation, albeit one performed in the context of chapter 11.

B. <u>The Nine-Factor Test</u>

As noted above, it would make sense in the context of such a liquidation to dismiss certain aspects of the nine-factor test as simply inapplicable. Courts that have short cut the test, however,

have not fared well on appeal. For that reason, the court will now examine the elements of the nine-factor test – doing so with the impending liquidation of the Debtor firmly in mind. As certain factors are related, they will be considered together, rather than in strict numerical order.

1. The First Factor

The Bankruptcy Code requires a debtor to provide the union with proposed modifications to a collective bargaining agreement *prior to* filing an application to reject the agreement. 11 U.S.C. § 1113(b)(1)(A); *see also Northwest Airlines Corp.*, 346 B.R. at 320.

In most cases, this factor is perceived as a routine formality. As a result, the bar for satisfying this requirement is low – only that such a proposal be communicated to and received by the parties to the agreement. *In re Pierce Terminal Warehouse, Inc.*, 133 B.R. 639, 647 (Bankr. N.D. Iowa 1991) (section 1113(b)(1)(A) "does not require that the initial proposal by the [debtor] be the [proposal] that satisfies the substantive requirements of [subsection] (b)(1)(A)."). Instead, section 1113(b)(1)(A) may be interpreted to mean "only that … such an offer must be made." *Id.*

There is no question here that the Notice meets this minimal standard – whether this is a liquidation or a reorganization. The Notice, sent on August 5, 2013, was sent more than four months prior to the filing, on December 11, 2013, of the application under section 1113. The Notice clearly provides that the Debtor proposed to modify the CBA by rejecting it"". Nothing further is needed or appropriate with respect to the first test.

The Respondents argue that the Debtor's letter is nothing more than a unilateral rejection of the CBA, as opposed to an invitation to negotiate. While the Respondents may be correct that the exigencies of the Debtor's circumstances make negotiations fruitless, the court finds that the Notice in and of itself was not improper. By its express terms, the Notice stated that it was a proposal. The Notice also made clear that "[t]he purpose for this letter … is to notify you that the Debtor *proposes* to reject (pursuant to 11 U.S.C. § 1113) that certain collective bargaining agreement which it entered into on August 6, 2008 …." (emphasis added).

While the Respondents' argument is at odds with the express language of the Notice, it may indeed be the case that opportunity to negotiate is limited by the facts. That, however, is not a consideration in determining whether the first factor of the nine-factor test has been satisfied. It has.

2. The Second and Fifth Factors

Both the second and fifth factors speak to information. The former addresses the information upon which a debtor bases its decision, while the latter addresses the information provided by the debtor to the counterparty.

With respect to both factors, a debtor must gather the "most complete information at the time and … base its proposal on the information it considers reliable," excluding "hopeful wishes, mere possibilities and speculation." *In re AMR Corp.*, 477 B.R. 384, 409 (Bankr. S.D.N.Y. 2012) (*citing In re Karykeion, Inc.*, 435 B.R. 663, 678 (Bankr. C.D. Cal. 2010)). "The breadth and depth of the requisite information will vary with the circumstances, including the size and complicacy of the debtor's business and work force; the complexity of the wage and benefit structure under the collective bargaining agreement; and the extent and severity of modifications that the debtor is

11

proposing." *In re AMR Corp.*, 477 B.R. at 409 (*quoting In re Mesaba Aviation, Inc.*, 341 B.R. 693, 714 (Bankr. D. Minn. 2006) *aff'd in part, rev'd in part sub nom. Assn. of Flight Attendants-CWA, AFL-CIO v. Mesaba Aviation, Inc.*, 350 B.R. 435 (D. Minn. 2006)). Nonetheless, in order to meet the procedural requirements of section 1113(b)(1)(A), "a debtor can only be required to provide information that is within the debtor's power to provide." *In re Pinnacle Airlines Corp.*, 483 B.R. at 411.

The Respondents argue that the Notice fails to demonstrate that sufficient information was relied upon or provided. In the context of a liquidation, however, certain conclusions are tautological. Here, the debtor unquestionably had no ability to continue as a going concern, and the Notice clearly stated such. The Notice provided that "[t]he Debtor closed its doors and ceased normal business operations in February of 2013. It has no current business, or prospects for doing business. It commenced its case for the sole purposed of completing the wind up of its affairs ...." The Notice further made clear that it "[would] not be seeking to sell or transfer its business as a going concern" and that "[t]here is no intention, by the owners of the Debtor, to resurrect the Debtor's business in any form."

Under the circumstances of this case, it is not difficult to conclude that the Debtor based its choice on the most complete and reliable information available at the time of the proposal. The second factor of the nine-factor test has been satisfied.

For similar reasons, the court finds that the fifth factor has been met. While the information provided in the Notice is not voluminous, under the circumstances of this case, it need not have been. The test merely requires that the debtor provide the counterparty with "such relevant information as is necessary to evaluate the proposal." There is no question that the information provided was relevant and necessary. The only question is whether it is sufficient.

The Debtor here has at least made a minimal showing that it provided in the Notice itself the relevant information, and the Respondents have failed to controvert that showing. Further, the case law in this arena confirms that nothing requires the information provided to be provided in the proposal itself. *Pierce Terminal Warehouse, Inc.*, 133 B.R. at 647 ("the statute does [not] require that the employer's best offer be made at the outset of the negotiations ... only that before the court can permit rejection of the bargaining agreement, the employer must prove that it made a proposal which satisfies the statute."). Had the Respondents engaged with the Debtor, they might have been offered or been able otherwise to obtain additional information. But they admit that they made no effort in this regard.

Here, the Respondents must bear the larger part of the blame for failing to engage with the Debtor. While section 1113 puts burdens on all parties, and anticipates that all parties will act in good faith to obtain the correct result, *In re Mile Hi Metal Sys., Inc.*, 899 F.2d 887, 892 (10th Cir. 1990) (reading the requirements of section 1113 as imposing an obligation on both parties to confer in good faith), the statute operates in favor a debtor in instances of inaction. *See, e.g.*, 11 U.S.C. § 1113(c)(2). The Respondents may not adopt the same intractable attitude they accuse the Debtor of without ramifications. *In re Royal Composing Room, Inc.*, 848 F.2d 345, 349 (2d Cir. 1988) ("A union certainly is entitled to adopt a hard-line position, but if ... the union does so, it must recognize the risk inherent in the strategy.").

Had the Respondents wanted additional information, they could have requested it. Instead, the Respondents chose not to engage with the Debtor. By their own admission, the Respondents

concluded that negotiation was meaningless and rejection inevitable. By failing to engage the Debtor and failing to advance a theory under which the Debtor's disclosures are inadequate, the Respondents have failed to show that the fifth factor has not been met. The court therefore concludes that it has been satisfied.

### 3. The Third, Fourth and Ninth Factors

The third, fourth and ninth factors share in common the efficacy of the Debtor's proposal. It is in considering these factors that the Respondents' objection to the nature of the proposal is best considered. It is also, however, in considering these factors that the nature of the Debtor's case – a liquidation – has its greatest impact.

The third factor, that the proposal must be necessary to permit the reorganization of the debtor, has been considered "[t]he most fundamental requirement" for rejecting a collective bargaining agreement. *Northwest Airlines Corp.*, 346 B.R. at 321. Accordingly, this factor has been at the root of numerous interpretational disputes. *Family Snacks, Inc.*, 257 B.R. at 892-93. The problem stems from whether the word "necessary" should be interpreted as synonymous with "essential" or should be given a more flexible meaning. *Id.*

The Respondents argue that section 1113 relief to the Debtor is unavailable as the Debtor is not reorganizing, and thus cannot show that rejection is necessary to permit reorganization. This, in essence, adopts the holding of the bankruptcy court in *Family Snacks*. *Id.* at 920 ("Since [the debtor] is not reorganizing, and since, in any event, it now has no employees, rejection of the CBA is not necessary for its reorganization. For that reason, [the debtor's] motion to reject the CBA must be denied."), *aff'd in part, rev'd in part*, 257 B.R. 884 (B.A.P. 8th Cir. 2001). That, however, as was held on appeal, is a misreading of the statute.

The bankruptcy appellate panel in *Family Snacks* noted an important distinction between the terms "reorganization" and "rehabilitation." *Family Snacks, Inc.*, 257 B.R. at 895. The panel explained that "[w]hile 'reorganization' is not a statutorily defined term, it is generally understood to include all types of debt adjustment, including a sale of assets, piecemeal or on a going concern basis, under § 363 followed by a plan of reorganization which distributes the proceeds of the sale to creditors in accordance with the Bankruptcy Code's priority scheme." *Id*; *see also In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371 n.14 (5th Cir. 1987) (finding "necessary to an effective reorganization" as used in section 362(d)(2) includes liquidation); *Horizon Nat. Resources Co.*, 316 B.R. at 282 ("necessary to permit reorganization" equates to "necessary to confirmation of the plan."). Further, as noted above, despite being entitled "Reorganization," chapter 11 expressly contemplates liquidating plans.

For these reasons, the court finds that "necessary to an effective reorganization" means, in the context of a liquidation, necessary to the Debtor's liquidation.

The Respondents' position that the rejection is unnecessary is, at best, attempting to use section 1113 as a sword rather than a shield. The Respondents took the position in response to the Debtor's Notice that they need not negotiate as such negotiations would be fruitless. The essence of their present argument is, however, that the Debtor's rejection is not correct; that because no negotiations took place, the Debtor should remain bound to a contract that it has no ability to perform.

13

This argument is, quite frankly, absurd. As noted above, the only purpose of leaving the CBA in place would be to afford the Respondents the opportunity for an augmented administrative claim rather than a general unsecured claim. Naturally, a creditor would prefer to maximize its distribution from the bankruptcy estate. Nonetheless, section 1113 may not be used to elevate a union's position at the cost of any distribution to any other creditor. *Buhrke Indus.*, 1996 WL 131698, at *4. Such would be contrary to the purpose of section 1113 and the Bankruptcy Code as a whole.

The court therefore finds that the third factor has been met and the rejection of the CBA is necessary for the Debtor's reorganization-*cum*-liquidation.

In a liquidation case, analysis of the fourth factor is very much intertwined with that of the third factor. This fourth factor addresses whether the proposed modifications assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

With respect to this factor, "[c]ourts take a flexible approach in considering what constitutes fair and equitable treatment due to the difficulty in comparing the differing sacrifices of the parties in interest …. A debtor can meet the requirement 'by showing that its proposal treats the union fairly when compared with the burden imposed on other parties by the debtor's additional cost-cutting measures and the Chapter 11 process generally.'" *In re AMR Corp.*, 477 B.R. at 408 (*quoting Northwest Airlines*, 346 B.R. at 326) (internal citations omitted).

The Respondents allege that a liquidating chapter 11 case "results in the unique situation where a nonoperational corporation is able to get a discharge of its debts, unlike in a corporate Chapter 7 bankruptcy." This is quite simply wrong as a matter of law. As pointed out by the court at the hearing and discussed above, a legal entity does not receive a discharge in a liquidating chapter 11. 11 U.S.C. § 1141(d)(3).

What is proposed by the Debtor in rejecting the CBA is that the Respondents and the employees be treated no differently than they would in a chapter 7 case, and no different than the other similarly situated creditors in this case. This comports with the case law interpreting the fourth factor. *See, e.g., Garofalo's Finer Foods, Inc.*, 117 B.R. at 370 ("[R]equiring that all creditors, the debtor and all affected parties are treated fairly and equitably serves the purpose of spreading the burdens … to every constituency while ensuring that all sacrifice to a similar degree."); *cf.* 11 U.S.C. § 1129(b)(2)(B) (defining "fair and equitable" in the context of a chapter 11 cram down of unsecured creditors). This also comports with the case law in this jurisdiction that section 1113 does not afford claimants a superpriority status. *Buhrke Indus.*, 1996 WL 131698, at *4.

Given the foregoing, the court has little difficulty finding that the fourth factor has been satisfied.

The ninth factor is that the balance of the equities must clearly favor rejection. The Supreme Court stated, in *Bildisco*, that:

> The Bankruptcy Court is a court of equity, and in making this determination it is in a very real sense balancing the equities … Nevertheless, the Bankruptcy Court must focus on the ultimate goal of Chapter 11 when considering these equities. The Bankruptcy Code does not authorize free-wheeling consideration of every

> conceivable equity, but rather only how the equities relate to the success of the reorganization. The Bankruptcy Court's inquiry is of necessity speculative and it must have great latitude to consider any type of evidence relevant to this issue.

*Bildisco*, 465 U.S. at 527.

In balancing the equities, the court must consider the "possibility of liquidation, the impact of the losses suffered by the individual employees in proportion to the losses suffered by the other creditors, and the good faith of the parties." *Garofalo's Finer Foods, Inc.*, 117 B.R. at 371.

As discussed above, the Debtor's proposal to reject the CBA simply treats CBA claims on par with claims of other creditors, in the same manner those claims would be treated in a chapter 7. The Respondents' arguments, on the other hand, would impermissibly and inequitably elevate those claims. The balance of the equities here clearly favors the Debtor.

4. The Sixth, Seventh and Eighth Factors

There is considerable overlap between the sixth, seventh and eighth factors. Each addresses, in one form or another, the parties' negotiations. For example, some courts have held that requiring a debtor to meet at reasonable times with a union will mean that there have been good faith negotiations, satisfying both the sixth and seventh factors, respectively.

The Respondents' objections as to the form of the Notice must also be considered here. The Respondents are of the opinion that the Notice constituted a *notification* of rejection rather than a *proposed* rejection. As noted above, the Respondents contend that the Notice was essentially an ultimatum, forgiving the Respondents of any duty to negotiate.

Could the Notice have been drafted in a way so as to more clearly evoke the provisions of section 1113? Probably. But if the substance of the Notice is acceptable, it would be unjust to deny the Debtor relief under section 1113 simply because the form of the Notice was lacking. The Debtor would be required to restart the process with notice in a different form, but nothing regarding the substance would change. Such a requirement would be putting form over substance, and the law does not require useless acts. *Neece v. John Hancock Mut. Life Ins. Co.*, 914 F.2d 260 (7th Cir. 1990).

The fact that no meetings took place appears to mean that the sixth factor has not been satisfied. But fault for that must be laid at the feet of the Respondents, not the Debtor. If the Debtor were truly recalcitrant, as the Respondents suggests, that might equate to a determination that what the Debtor had done was offer an ultimatum. And having done so, the Debtor would be the one at fault for the lack of there being meetings, *see, e.g.*, *Northwest Airlines Corp.*, 346 B.R. at 327 (the good faith requirement "preclude[s] the debtor from simply offering a 'take it or leave it' proposal"), and might ultimately lose in its request.

But the Notice does not demonstrate such recalcitrance and the Respondents have offered nothing other than the Notice to support this claim. Even when a debtor has proven stubborn or steadfast during negotiations, courts will presume that good faith negotiations have occurred. *See Pinnacle Airlines Corp.*, 483 B.R. at 411. Here, there is an absence of evidence of stubbornness by this Debtor. As noted above, the Notice is clear that it is a proposal. Proposals invite negotiation, especially in light of section 1113(c)(2). As the Tenth Circuit has stated:

15

> Section 1113(b)(2) states that after the proposal is made, "the [debtor] shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications." *We read this to require that both parties confer in good faith.* In addition, subpart (c)(2) requires the union to have "good cause" for rejecting the proposal. These two subparts impose an obligation on the union to participate meaningfully in the negotiations and to explain its reasons for opposing the proposal. Even if part of a proposal is unacceptable as a perceived unfair labor practice, the union must confer in good faith on the remainder of the proposal, and also must work with the debtor on the allegedly illegal provisions, explaining why the union deems them unlawful and negotiating changes or alternatives which would avoid the illegality.

*Mile Hi Metal Systems, Inc.*, 899 F.2d at 892 (internal citations and footnote omitted) (emphasis added); *see also Royal Composing Room, Inc.*, 848 F.2d at 349 (If "the union refuses to compromise, it is as unlikely it could be found to have acted with good cause."); *Northwest Airlines Corp.*, 346 B.R. at 327 ("Although "good cause" is not defined in the Bankruptcy Code, it is closely related to the requirements of § 1113(b)(1) described above, as well as the requirement under § 1113(b)(2) that the parties negotiate in good faith.").

As in the *Royal Composing* case, the Respondents here must be mindful of its choice to not engage with the Debtor. The Debtor alleges, and the Respondents concede, that the neither Funds nor Union ever provided a formal response to the Notice. While the Debtor and the Respondents admit to exchanging brief emails, no requests for information or for meetings from the Respondents appear to have occurred. Given the existence of the good cause requirement in the seventh test, the Respondents could not simply, without good cause, sit back and fail to engage.

The requirement that the Respondents not reject the Debtor's proposal without good cause is "meant to encourage the debtor to act in good faith by proposing only necessary changes while protecting the debtor from a union's refusal to agree to the changes without a good reason for doing so." *In re AMR Corp.*, 477 B.R. at 409 (citing *New York Typographical Union No. 6 v. Maxwell Newspapers (In re Maxwell Newspapers)*), 981 F.2d 85, 90 (2d Cir. 1992)); *see also In re Horsehead Indus., Inc.*, 300 B.R. 573, 585 (Bankr. S.D.N.Y. 2003) (same).

It is duplicitous of the Respondents to argue that there was no point behind negotiation as rejection was a *fait accompli* couched within its argument that rejection should not be permitted. Given that the Notice was innocuous, it is only the circumstances that might lead the Respondents to believe that that negotiation was futile. Those same circumstances, combined with the Respondents' refusal to engage, are what make the Debtor's case compelling.

While the Respondents never engaged with the Debtor sufficiently to even reject its proposal, the failure to engage combined with the opposition in court to the rejection clearly indicate a lack of acceptance. Under the circumstances, the court finds that the Respondents refused to accept the Debtor's proposal without good cause, thus satisfying the eighth factor and thereby satisfying all of the applicable elements of section 1113.

CONCLUSION

For the foregoing reasons, the court concludes that the Debtor has met the burden under 11 U.S.C. § 1113 that would afford it the right to reject the CBA in the context of a liquidating chapter 11 and, accordingly, will grant the Motion. In light of the timing provisions contained in section 1113(d)(2), the rejection authorized hereunder will be effective March 7, 2014, 30 days from the date of the Hearing.

A separate order will be issued concurrent with this Memorandum Decision.

Dated: May 8, 2014

_____
Timothy A. Barnes
United States Bankruptcy Judge