IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | Case No.: 13-31265 |
| CHICAGO CONSTRUCTION | § | |
| SPECIALTIES, INC., | § | |
| | § | Hearing:  June 18, 2014 |
| | § | 10:30  a.m. |
| Debtor. | § | |
| | § | Hon. Timothy A. Barnes |

**MOTION OF BRUCE DOPKE FOR ALLOWANCE
OF FINAL COMPENSATION AND REIMBURSEMENT OF
COSTS AND EXPENSES FOR HIS SERVICE AS
<u>COUNSEL TO THE DEBTOR</u>**

Please take notice that on Wednesday, June 18, 2014, at 10:30 a.m., we will appear before

the Honorable Timothy A. Barnes, Judge of the United States Bankruptcy Court for the Northern

District of Illinois, Eastern Division, at the Everett McKinley Dirksen United States Courthouse,

219 S. Dearborn Street, Courtroom 613, Chicago, IL 60604, or such other judge as may be sitting

in Judge Barnes' place and  stead, and then and there present the Motion of Bruce Dopke For

Allowance of Final Compensation and Reimbursement of Costs and Expenses For His Service

As Counsel To The Debtor" a copy of which is attached hereto and is hereby served upon you.

Dated: May 28, 2014               CHICAGO CONSTRUCTION SPECIALTIES,
                                  INC., Debtor and Debtor In Possession


                          By:   /s/ Bruce Dopke_____
                                Counsel for the Debtor

-1-

## CERTIFICATE OF SERVICE

I, Bruce Dopke, an attorney, hereby certify that I caused to be served a complete and accurate copy of the attached **Notice of Motion** and the document referred to therein by causing a copy of the same to sent: (a) electronically and through the Court's electronic delivery system, to those persons who are registered to receive electronic service of process in this case as indicated below, or (b) by first class US Mail, sent or initiated on or before 5:00 p.m. Central Time to the Debtor, at 2225 Seaver Lane, Hoffman Estates, IL  60169, on the 28th day of May, 2014.  In addition, a "Notice" in the form which is attached as Exhibit "E" to the Motion, was sent to the persons whose names appear on the service list which is attached hereto as Exhibit "1" was also sent by first class US mail, postage prepaid, before the aforesaid date and time.

_/s/ Bruce Dopke_

Bruce Dopke
P.O. Box 681246
Schaumburg, IL 60168-1246
Tel:    847-524-4811
Fax:    847-524-4131
email: bruce@dopkelaw.com
ARDC: 3127052

*Electronic Notice:*

**Roman L. Sukley, Esq**.   Roman.L.Sukley@usdoj.gov
representing: Office of the United States Trustee

**Christina Katherine Krivanek, Esq.**   christinak@chilpwf.com
representing:  Laborers' Pension Fund, et al.

**Yolanda Carrillo, Esq.**   ycarrillo@workinghandslegalclinic.org
representing:   Gustavo Covarrubias, Humberto Iribarren, Isais Martinez, Angelica Garcia, Mayra
                Nunez, Edgar Garcia and Venancio Organista

**Michael Prousis, Esq.**   mprousi@ides.state.il.us
representing:  Illinois Department of Employment Security

Service List
First & Final Fee Application of
Bruce Dopke
May 28, 2014

**EXHIBIT 1**
**NOTICE OF MOTION**

| | | |
|---|---|---|
| Addison Building Materials<br>3201 S. Busse Road<br>Arlington Heights, IL 60005 | ADP, Inc., c/o Nat'l Reg. Agents<br>200 W. Adams Street<br>Chicago, IL 60606 | Airgas<br>1601 Nicholas Blvd<br>Elk Grove Village, IL 60007 |
| Allied Waste<br>PO Box 9000154<br>Louisville, KY 40290 | American Express<br>c/o Becket & Lee LLP<br>PO Box 3001<br>Malvern, PA 19355-0701 | Angel R. Miranda<br>710 N. 4th<br>Maywood, IL 60153 |
| Anita Coronel<br>1101 Arlington Court<br>Hanover Park, IL 60133 | Armando Alcala<br>2225 Seaver Lane<br>Hoffman Estates, IL 60169-5013 | ATL First Aid, Inc.<br>5250 Grand Avenue, Suite 14 #327<br>Gurnee, IL 60031 |
| Bottle Free Water<br>355 E. Geneva Road, # 363<br>Carol Stream, IL 60188 | Capitol One Retail Services<br>PO Box 71106<br>Charlotte, NC 28272-1106 | Central Laborers' Pension Funds<br>PO Box 1267<br>Jacksonville, IL 62651-1267 |
| Chase Bank USA<br>Cardmember Service<br>P.O. Box 15153<br>Wilmington, DE 19886-5153 | Christina Krivanek, Esq.<br>Office of Fund Counsel<br>111 W. Jackson Blvd., Ste. 1415<br>Chicago, IL 60604-3868 | City of Chicago Dept. of Finance<br>PO Box 88292<br>Chicago, IL 60680-1292 |
| Construction & Gen. Laborers DC<br>999 McClintock Drive, Ste. 300<br>Willowbrook, IL 60527-0824 | CMIT Solutions of Chicagoland N<br>825 S. Waukegan Road, A8<br>Lake Forest, IL 60045 | De Lage Landen Fin Serv<br>1111 Old Eagle School Road<br>Wayne, PA 19087 |
| Department of Treasury<br>Centralized Insolvency Operations<br>PO Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Elmhurst Memorial OCC Health Sv<br>155 Brush Hill Road<br>Elmhurst, IL 60126 |
| Flood Brothers<br>PO Box 4560<br>Carol Stream, IL 60197 | Gallagher Lieb Moroni & Associates<br>200 W. Higgins Road, Suite 326<br>Schaumburg, IL 60195 | Hispanic American Construction<br>650 W. Lake Street, Ste. 415<br>Chicago, IL 60661 |
| Home Depot Credit Services<br>Dept -8428<br>PO Box 183175<br>Columbus, OH 43218 | Ill. Dept. of Employment Security<br>PO Box 4385<br>Chicago, IL 60680 | Illinois Department of Revenue<br>Bankruptcy Section<br>PO Box 64338<br>Chicago, IL 60664-0338 |

Image Systems & Bus. Solutions
1776 Commerce Drive
Elk Grove Village, IL 60007

Impression Cleaning Service
2225 Seaver Lane
Hoffman Estates, IL  60169-5013

Independent Recycling Services
2401 S. Laflin Street
Chicago, IL 60608

James A. Stevens, Esq.
Baker Bloomberg & Assoc.
20501 Katy Freeway, Ste. 212
Katy, TX  77450-1942

James P. McHargue Law Office
123 W. Monroe, Ste. 1000
Chicago, IL  60602

James S. Jorgensen, Administrator
11465 Cermak Road
Westchester, IL  60154-5768

Joseph M. Wiedemann & Sons
505 E. Golf Road
Arlington Heights, IL 60005

JP Morgan Chase Bank
OH2-5170
50 S. Main Street, 9th Floor
Akron, OH  44308-1849

Kelley Kelley & Kelley
1535 W. Schaumburg Road
Schaumburg, IL  60194-4042

Litgen Concrete Cutting
1020 Nerge Road
Elk Grove Village, IL 60007

Laborers' Pension Funds et al.
11465 Cermak Road
Westchester, IL  60154-5768

Midwest Insurance Agency
975 W. Hawthorn Drive
Itasca, IL 60143

Milestone Equipment & Supplies
224 David Drive
Streamwood, IL 60107

Occupational Training & Supply
7233 Adams Street
Willowbrook, IL 60527

Patrick S. Layng, Esq.
Office of US Trustee, Region 11
219 S. Dearborn Street, Ste. 873
Chicago, IL  60604-2027

Protectco, Inc.
2225 Seaver Lane
Hoffman Estates, IL  60169-5013

Robert F. Rabin, Esq.
Thompson Coburn LLP
55 E. Monroe Street, 37th Floor
Chicago, IL  60603-6029

Ruth A. Kronvold
85 Pleasant Street
Hoffman Estates, IL 60169

Secura Insurance Co.
PO Box 819
Appleton, WI 54912

Sprint
PO Box 4181
Carol Stream, IL 60197

Sunbelt Rentals
PO Box 409211
Atlanta, GA 30384

Susquehanna Commercial Finance
2 Country View Road, Ste. 300
Malvern, PA 19355

Sprint Nextel Correspondence
Attn:  Bankruptcy Department
PO Box 7949
Overland Park, KS  66207-0949

TD Auto Finance
PO Box 9001921
Louisville, KY 40290

US Bank
P.O. Box 5229
Cincinnati, OH 45201-5229

Waste Management
2625 W. Grandview Road, Ste. 150
Phoenix, AZ  85023

Wessels Sherman, et al.
Attn: Jeff Kier
9800 Shelard Pkwy., Ste. 310
Minnetonka, MN 55441

HD Supply, Inc., d/b/a
White Cap Construction Supply
501 Church Street
Orlando, FL  32805

Workers' Law Office, PC
401 S. LaSalle, Ste. 1400
Chicago, IL  60605-1039

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In Re  Chicago Construction Specialties, Inc.          )
                                                       )
                                                       )     Bankruptcy No. _____13-31265_____
                                                       )
                              Debtor.                  )     Chapter _____11_____

## COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION
### (IN CASES UNDER CHAPTERS 7, 11 AND 12)

Name of Applicant: _____Bruce Dopke_____

Authorized to Provide Professional Services to: _____The Debtor_____

Date of Order Authorizing Employment: _____August 28, 2013 (Doc. 20)_____

Period for Which Compensation is Sought:
From _____August 5_____, ____2013____ through _____June 18_____, ___2014___

Amount of Fees Sought:   $ 57,450.00 (plus up to an additional $3,000.00 for fees incurred prior to the hearing)

Amount of Expense Reimbursement Sought:   $ 2,410.32 (plus any additional costs incurred prior to the hearing)

This is an:      Interim Application _____          Final Application ___✓___

If this is *not* the first application filed herein by this professional, disclose as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| | | | | |

Dated: _____May 28, 2014_____          _____/s/  Bruce Dopke_____
                                                              (Counsel)

(Rev 11/19/10)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | Case No.: 13-31265 |
| CHICAGO CONSTRUCTION | § | |
| SPECIALTIES, INC., | § | |
| | § | Hearing: June 18, 2014 |
| | § | 10:30  a.m. |
| Debtor. | § | |
| | § | Hon. Timothy A. Barnes |

**MOTION OF BRUCE DOPKE FOR ALLOWANCE
OF FINAL COMPENSATION AND REIMBURSEMENT OF
COSTS AND EXPENSES FOR HIS SERVICE AS
COUNSEL TO THE DEBTOR**

Applicant Bruce Dopke, counsel to Chicago Construction Specialties, Inc., debtor and

debtor-in-possession in this case (the "Debtor") files this motion (the "Motion") for entry of an

order which allows Mr. Dopke final compensation and reimbursement of costs and expenses for

his services to the Debtor during the time period of August 5, 2013 through June 18, 2014 under

11 U.S.C. §330.  In support of the Motion, Mr. Dopke respectfully represents as follows.

1.      The Debtor filed a voluntary chapter 11 petition in this judicial district and

division on August 5, 2013.

2.      As this case was filed as a small business bankruptcy case, no committee of

unsecured creditors has been, or will likely be, appointed in this case.

3.      The Court entered an order which approved Mr. Dopke's employment as general

counsel to the Debtor on August 28, 2013 (Doc. 20).

4.      Mr. Dopke has not applied for or received any interim allowances of

compensation or reimbursement of costs during this case.

-1-

5.      Mr. Dopke has served the Debtor in this case under a general retainer, which means that Mr. Dopke has performed his duties in this case without a cash retainer, under circumstances, at least initially, where it was uncertain whether Mr. Dopke would be timely paid, or paid at all, for his services.

6.      Between August 5, 2013 and May 28, 2013 (the "Current Time Period"), Mr. Dopke incurred 191.5 hours of professional time on the Debtor's behalf which, at Mr. Dopke's current and historical hourly billing rates ($300.00 per hour), has a time value of Fifty-Seven Thousand Four Hundred Fifty and xx/100 Dollars  ($57,450.00).  Between May 28, 2014 and the hearing date of this case, Mr. Dopke expects to incur up to an additional ten hours of time, with a value of $3,000.00.  In order to avoid the needless costs and delays inherent in filing a supplemental fee application for this additional time, Mr. Dopke asks the Court's leave to supplement this Motion before the date that it is scheduled to be heard, to provide detail and an actual figure for Mr. Dopke's time charges for services rendered between May 29, 2014 and June 18, 2014, as well as costs and expenses which he may incur in that time, if any.

7.      In compliance with Local Rule 5082-1 B (1)(a), the following chart contains a summary list of all principal activities of Mr. Dopke in connection with this case, including the total compensation requested by Mr. Dopke in connection with each category of activity in the Current Time Period:

| Code and Description | | Hours | Time Value |
|---|---|---|---|
| AD | Administration of the Case | 13.3 | $ 3,990.00 |
| AR | Collection of Accounts Receivable | | |
| | AR1   JC Anderson | 19.7 | $ 5,910.00 |
| | AR2   Pepper Construction | 5.9 | $ 1,770.00 |
| | AR3   Leopardo Companies | 5.6 | $ 1,680.00 |

| Code and Description | | Hours | Time Value |
|---|---|---|---|
| AR4 | Bear Construction | 2.0 | $   600.00 |
| AR5 | FH Paschen, SN Neilsen | 1.8 | $   540.00 |
| AR6 | Midland Frantz | .3 | $     90.00 |
| AR7 | Interior Alterations | 2.0 | $   600.00 |
| AR8 | Bulley & Andrews | 1.9 | $   570.00 |
| AR9 | Gallant Construction | 1.8 | $   540.00 |
| AR10 | Krause Construction | 2.4 | $   720.00 |
| AR11 | WE O'Neil | 1.8 | $   540.00 |
| ***Sub Total of work in "AR" subcategories:*** | | ***45.2*** | ***$ 13,560.00*** |
| BAR | Bar Date | 1.4 | $   420.00 |
| CBA | Collective Bargaining Agreement | 19.9 | $  5,970.00 |
| CT | Court Appearances | 15.0 | $  4,500.00 |
| EMP | Employment of Professionals | 3.7 | $  1,110.00 |
| EXL | Exclusivity (to file Plan) | 2.7 | $   810.00 |
| OB1 | Objection to IRS Claim | 4.0 | $  1,200.00 |
| OB2 | Objection to Nunez/Impression claims | 37.5 | $ 11,250.00 |
| OPS | Operating Reports | 3.2 | $   960.00 |
| PD | Plan/Disclosure Statement | 28.7 | $  8,610.00 |
| SCH | Schedules/Stmt. Financial Affairs | 13.9 | $  4,170.00 |
| FEE | Preparation of Fee Application | 3.0 | $   900.00 |
| Totals: | | 191.5 | $ 57,450.00 |

8.      As required by Local Rule 5082-1 B (1)(b) and by Federal Rule of Bankruptcy

Procedure 2016(a), Exhibit A attached hereto contains a separate and detailed description of

each of Mr. Dopke's principal activities for the Debtor during the Current Time Period covered

by this Motion, in chronological order, including details as to individual tasks performed within

such activity, and a description sufficient to demonstrate to the Court that each task and activity

is compensable in the amount sought.  Exhibit B contains these same time entries, broken down

into the categories of service noted in the preceding paragraph of this Motion.  In addition to

those time entry exhibits, Mr. Dopke would add the following narrative with respect to each of the categories of service.

### "AD" - Case Administration

Mr. Dopke incurred 13.3 hours of time, with a value of $3,990.00 in this category.   A small business bankruptcy case like this one requires a careful balancing of activity, goals, staffing and cost.  When the case began, the Debtor had one unpaid worker (Mrs. Alcala) who could not be paid for her work due to the existence of a small blanket lien on the Debtor's assets held by JP Morgan Chase, and also due to the more pressing practical problem that the Debtor had very little cash.  In the initial three months of this case, Mr. Dopke managed his and the estate's resources, concentrating his efforts on essential tasks while keeping the cost of the engagement to the minimum.  The time entries in the "Case Administration" category includes many types of activity which are often placed in their own category in larger chapter 11 cases, such as preparation for the 341 meeting, the review of claims, advising the Debtor on the proper use of cash collateral, contacts with creditors (by phone or mail) and similar tasks.  These typical and essential tasks were grouped together, because they were achieved with a relatively small investment of legal time.

### "AR" - Collection of Accounts Receivable

Mr. Dopke incurred 45.2 hours of time, with a value of $13,560.00 in this main category and its eleven sub-categories (AR1 - AR11).   The success of this case depended on the Debtor's ability to collect more than $500,000.00 of accounts receivable which were outstanding at the time that this case commenced.  This was no easy task.  The Debtor, prior to its closure on February 8, 2013, worked as a subcontractor for construction general contractors (the

"Generals").  It  sub-contracted with the Generals to demolish existing components of buildings

which were being re-habbed, and then clean up the mess.  All of the subcontracts which the

Debtor signed required it to pay its sub-sub-contractors and its labor costs associated with the

individual construction projects.  Although the Debtor did a good job of insuring that its own

sub-sub-contractors were paid for the work which they did on the various job sites, the Debtor

had a major problem with its union labor force and specifically, the group of pension and benefit

funds to which the Debtor owed more than $250,000.00 when this case  commenced.  The

Debtor's sub-contracts with the Generals authorized the Generals to make direct payments, from

funds which would otherwise be payable to the Debtor, to union representatives, for the unpaid

principal amount of union dues and benefits for which the Debtor was in arrears.  Prior to the

commencement of this bankruptcy case, and indeed, for a substantial period thereafter, most of

the Generals held their payments to the Debtor, pending the  "clarification" of the amounts

which the Debtor owed to the Laborers' Pension Fund (the  "Funds"), which took the lead (for

several other labor organizations) in a lawsuit which it filed against the Debtor in April of 2013.

The approximately $250,000.00 judgment which the Funds obtained against the Debtor on

August 1, 2013 led to the commencement of this bankruptcy case four days later.  Mr. Dopke's

most pressing task, upon the commencement of this case, was to determine how to work with the

Funds' counsel (with whom he had so recently been adverse) so that the Debtor could collect its

accounts receivable from Generals which frankly had no financial incentive to step forward  and

pay what they owed to the Debtor.  The process designed by Mr. Dopke ultimately led to

agreements for the payment of approximately $460,000.00 of the Debtor's accounts receivable,

most of which has been collected.

The initial time contained in the sub-category "AR1" (19.7 hours, valued at $5,910.00)
involved Mr. Dopke's efforts to turn a concept for how to collect the accounts receivable into a
system which the Funds, the Generals and the Court would accept.  This system was first
implemented during the Debtor's effort to collect the amount due from JC Anderson, its largest
account debtor ($188,664.00).  Under that agreement,  JC Anderson made a direct payment of
$37,368.23 to the Funds, which directly reduced the section 507(a)(5) priority claim asserted by
the Funds in this case.  The balance of the receivable ($149,295.77) was paid to the Debtor.  This
first settlement had an additional wrinkle, in that the motion and order which approved the
settlement authorized the Debtor to use the first proceeds which it received to retire the
$8,442.60 secured claim of JP Morgan Chase.  This allowed the Debtor to avoid the  cost of
obtaining authority to use cash collateral in this case, which can be a major component of the
legal cost of a case like this one.  The Court approved the settlement with JC Anderson on
September 25, 2013 (Doc. 28).  Mr. Dopke immediately went to work to replicate that result
with other Generals.  For the Court's convenience, we have sub-divided the work on the other
ten collections into categories AR2 through AR11.  All of these settlements involved similar
efforts, including an initial contact by letter and/or email, followed up by phone, the negotiation
of a settlement agreement, and the preparation and filing of a motion for approval of the
agreement.  As the time records show, the cost of the second and third settlements (with Pepper
Construction (AR2) and Leopardo Construction (AR3) fell to about a third of the cost of
completing the first settlement with JC Anderson.  The cost of doing the remaining eight
settlements was generally about one third of the time needed to do the second and third

-6-

settlements.  The increased efficiency of the project over time was an intended result of the strategy which Mr. Dopke devised.

The approximate $60,000.00 legal cost of this chapter 11 case compares favorably with the recoveries which Mr. Dopke has helped the Debtor achieve in this case.  Assuming that the Debtor will collect the amounts due from Generals under agreements which have been approved by the Court or are pending Court approval, the legal fees and costs incurred by Mr. Dopke for the entire case are about 13% of the amounts collected.  Given the inherent difficulty of collecting construction receivables which are due to insolvent debtors, inside or out of bankruptcy court, we believe that the results achieved in this case amply justify the costs.

### "BAR" - Bar Date

Mr. Dopke incurred 1.4 hours of time, with a value of $420.00, preparing a motion to set a bar date for the filing of claims in this case.  The Court granted this motion on September 25, 2013 (Doc. 27).

### "CBA" - Collective Bargaining Agreement

Mr. Dopke incurred 19.9 hours of time, with a value of $5,970.00, preparing a motion to reject the Debtor's collective bargaining agreements, and in overcoming the Funds' opposition to that motion.  The Court granted this motion on May 9, 2014 (Doc. 101).  As the Court noted in its memorandum opinion, the motion to reject raised issues of first impression in this district and indeed, nationally, concerning whether and how section 1113 of the Bankruptcy Code was to be applied in liquidating chapter 11 cases.  We hope that the legal analysis which we provided to the Court was helpful to the resolution of the difficult and novel issues raised by the motion.

### "CT" - Court Appearance

Mr. Dopke incurred 15.0 hours of time, with a value of $4,500.00, which arise from 15 court appearances in this case during the Current Time Period.  As noted in the time entries, Mr. Dopke discounts his time to between 40% to 50% of the actual time incurred in court appearances, which generally require a 2.8 hour round trip from Mr. Dopke's office in Schaumburg, IL to Bankruptcy Court in downtown Chicago, Illinois.  One hearing (9/25/13) resulted in a 1.5 hour charge, because the Court's calendar was particularly crowded on that day.  Another hearing (on 1/29/14) was billed at .5 hours, because Mr. Dopke was able to cover multiple matters involving this case and other cases on that day, and it was fair and proper to spread the cost of that morning's activities between the various cases and matters.

### "EMP" - Employment of Professionals

Mr. Dopke incurred 3.7 hours of time, with a value of $1,110.00, preparing a motion to approve his employment in this case.  The Court granted this motion on August 28, 2013 (Doc. 20).

### "EXC" - Exclusivity (to file Plan)

Mr. Dopke incurred 2.7 hours of time, with a value of $810.00, preparing a motion to extend the Debtor's exclusive periods to file and confirm a plan in this case.  The Court granted this motion on January 16, 2014 (Doc. 56).

### "OB 1" - Objection to IRS Claim

Mr. Dopke incurred 4.0 hours of time, with a value of $1,200.00, preparing and prosecuting an objection to the claim filed in this case by the United States, Department of the Treasury, Internal Revenue Service (the "IRS").  Working with the IRS can be a relatively

enjoyable task in a case like this, if one approaches the task with a positive attitude.  The IRS

filed Claim 2, which asserted a  $114,954.84 claim against the Debtor's estate, including a

$109,627.40 priority claim component under 11 U.S.C. §507(a)(8).  The filing of the claim

objection started a cooperative process which, over a five month period, led to several

amendments of the IRS claim which reduced its priority and unsecured amounts to appropriate

levels ($25,528.75 priority, $6,567.35 non-priority).  On May 21, 2014, on the Debtor's motion,

the Court entered a minute order which dismissed the Objection to the IRS claim as moot, in

light of those amendments (Doc. 112).

### "OB21" - Objection to "Nunez Claims"

Mr. Dopke incurred 37.5 hours of time, with a value of $11,250.00, preparing and

prosecuting an objection to the claims (the "Nunez Claims") filed by seven individuals (the

"Nunez Claimants") in the following amounts:

| Claimant | Claim # | Amount |
|---|---|---|
| Gustavo Covarrubias | 13 | $49,000.00 |
| Humberto Iribarren | 14 | $45,000.00 |
| Isais Martinez | 15 | $37,000.00 |
| Angelica Garcia | 16 | $35,000.00 |
| Mayra Nunez | 17 | $23,000.00 |
| Edgar Garcia | 18 | $37,000.00 |
| Venancio Organista | 19 | $35,000.00 |

The Claims, which total $261,000.00 (plus additional unspecified statutory damages, penalties

and interest), were all filed as wage claims, asserting priority status (as wage claims) under 11

U.S.C. §507(a)(4).

The Nunez Claims raised unique legal issues concerning the intersection of federal and

state labor laws, on the one hand, and the proper application of the section 507(a)(4) wage

-9-

priority provisions of Bankruptcy law.   The Nunez Claims were based on non-bankruptcy

employment laws which, under appropriate circumstances, can spread joint and several liability

for unpaid (or underpaid) wages to affiliated (but separate) employers and their owners.[1]   The

Nunez Claimants took the position that their alleged wage claims against one of the Debtor's

affiliates were not only enforceable against the Debtor under these non-bankruptcy wage laws,

but that they were also entitled to priority under 11 U.S.C. §507(a)(4).  If they were correct in

their view, the Nunez Claimants would stand to collect the majority of the money which the

Debtor ultimately recovered from its Generals, leaving little or nothing for unsecured, non-

priority creditors.  The Debtor's objection challenged both the priority status and appropriate

amount of the Nunez Claims.  The Nunez Creditors opposed the Debtor's objection, which was

fully briefed by the parties, and then settled.  Under that settlement, which the Court approved on

April 23, 2014 (Doc. 90), the Nunez Claims were collectively allowed in the amount of

$100,000.00, as unsecured, non-priority claims.  This settlement paved the way for the

liquidating plan which the Debtor filed on May 9, 2014, which is set for confirmation on June

18, 2014.  The Objection to the Nunez Claims can therefore be seen as a critical step toward the

Debtor's effort to exit chapter 11 with a fair and beneficial outcome for priority and non-priority

unsecured creditors.

### "OPS" - Operating Reports

Mr. Dopke incurred 3.2 hours of time, with a value of $960.00, preparing nine small

business operating reports for the Debtor.  In chapter 11 cases where the Debtor actually has

---

[1]  Those claims were based on the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*., the Illinois
Minimum Wage Law, 820 ILCS 105/1, *et seq*., the Illinois Wage Payment and Collection Act,
820 ILCS 115/1 and the Illinois Prevailing Wage Act, 820 ILCS 130/1 *et seq*.

staff, and the full service law firm which represents it has paralegals, the task of preparing

operating reports can be fulfilled by people who bill for their time at rates which are less than

$300.00 per hour.  However, in a small business chapter 11 case like this one, there is no staff to

fall back on, either within the Debtor's organization or in Mr. Dopke's firm.  Mr. Dopke found it

far more expedient (and ultimately less expensive for the Debtor) to simply prepare the reports

himself.  The average all-in cost of preparing and filing each of the nine operating reports was

$108.00.  This cost included the review of the operating reports (which Mr. Dopke would have

been required to do anyway) and the redaction of the exhibits to the reports.

### "PD" - Plan/Disclosure Statement

Mr. Dopke incurred 28.7 hours of time, with a value of $8,610.00, preparing the Debtor's

Plan of Liquidation dated May 9, 2014 (the "Plan")(Doc. 96) and the accompanying motion to

schedule the Plan for confirmation (Doc. 100).  The Plan is, as its name implies, a plan of

liquidation under which the net proceeds of the collection of the Debtor's accounts receivable

would be used to pay all of the Debtor's priority claimants, and also pay an initial dividend to

unsecured creditors of 13.7% in July of 2014, with a second and final distribution of another

6.3% in September 2014.  Since the Plan was filed, positive developments (including two new

settlements with Generals) have raised the Debtor's estimate of its initial dividend to unsecured

claims to slightly more than 16%.  Voting on the Plan has been positive, and the Debtor is

hopeful that the Court will confirm the Plan at the confirmation hearing set for June 18, 2014.

### "SCH" - Schedules

As indicated above (in the section concerning the category "CBA"), the Debtor was in a

bit of a hurry to commence this chapter 11 case in early August of 2013, and there wasn't

-11-

anywhere near enough time to permit Mr. Dopke to prepare schedules and statement of financial affairs for the Debtor before the case was filed. Mr. Dopke incurred 13.9 hours of time on this task, with a value of $4,170.00, which resulted in the schedules and statement of financial affairs being filed within the time allowed by Rule on August 19, 2013 (Doc. 14).

### "FEE" - Preparation of Fee Applications

Mr. Dopke incurred far more than the three hours of time for preparing this fee application and its four exhibits. However, in his billing judgment, Mr. Dopke has limited his request for compensation for these activities to three hours of time (with a time value of $900.00). A significant amount of this time was spent providing detail in the narratives contained in this Motion, so that the Court and creditors can make an appropriate assessment of the need for and the value (to the estate) of the services which Mr. Dopke rendered in his capacity as general bankruptcy counsel for the Debtor.

9.      Exhibit C to this Motion contains an itemization and a summary of the $2,410.25 in out-of pocket costs and expenses which Mr. Dopke incurred on the Debtor's behalf during the Current Time Period. Exhibit D to this Motion presents this same information, presented or grouped by the following cost and expense categories:

| Description | Charge |
|---|---|
| Filing Fees | $ 1,243.00 |
| Copy Expense | $   568.38 |
| Postage | $   568.94 |
| Travel | $     30.00 |
| *Total Costs in the* *Current Time Period* | *$ 2,410.32* |

We would provide these comments, with respect to some of these expenditures.

-12-

*Copy Expense - $568.38*

All of the duplication expense was incurred at the rate of $.09 per page.  The dates and reasons

for these expenses are detailed in Exhibits C and D.  Copy expense is only charged for service

copies of motions, orders or other papers which are actually put in envelopes and mailed to

parties in this case.  No copy charge is made for printed research, drafts of documents, drafts of

motions or briefs, or anything which might resemble an overhead expense of Mr. Dopke's law

practice.

*Postage - $568.94*

Postage expense is strictly limited to out-of-pocket expenditures on correspondence, pleadings

and discovery materials transmitted in connection with this case.  The dates and reasons for

these expenses are detailed in Exhibits C and D.

*Travel - $30.00*

Mr. Dopke generally does not charge clients for local travel expense or mileage (local meaning

within 50 miles of Schaumburg, IL).  His sole travel charge in this case is a $30.00 parking fee

for the Grant Park Garage in Chicago on September 3, 2013, which Mr. Dopke incurred only

because it was deemed more convenient for Mr. Dopke and the Debtor's sole employee and

responsible party, Mrs. Edith Alcala, to drive to the 341 meeting together.   No mileage or other

travel related expense  has been charged to the estate by Mr. Dopke.

10.     No payments have been made or promised to Mr. Dopke for services rendered or

to be rendered by him to the Debtor in any capacity whatsoever in connection with the case.  Mr.

Dopke has not agreed to share any compensation earned with respect to this matter with any

other entity.  Nor does any agreement or understanding exist between Mr.  Dopke and any other

-13-

entity for the sharing of compensation received or to be  received for services rendered in or in connection with this case.

11.     Mr. Dopke has mailed a complete copy of this Motion to the Debtor on May 28, 2014.  He also mailed a notice, in the form attached hereto as Exhibit E, to all claimants with allowed claims in this case.  Mr. Dopke asks that the Court deem this notice to be sufficient for purposes of Federal Rule of Bankruptcy Procedure 2002.

WHEREFORE, Bruce Dopke requests that the Court afford him the following relief:

a.      Final allowance of compensation in the amount of Fifty-Seven Thousand Four Hundred Fifty Dollars ($57,450.00)(plus such allowances, if any, as the Court may allow to Mr. Dopke for his work done between May 29, 2014 and the June 18, 2014 hearing date scheduled for this Motion);

b.      Final allowance of reimbursement of costs and expenses incurred by Mr. Dopke on behalf of the Debtor's estate, in the amount of Two Thousand Four Hundred Ten and 32/100 Dollars ($2,410.32), (plus such allowances, if any, as the Court may allow to Mr. Dopke for costs and expenses which he incurred on the estate's behalf between May 29, 2014 and the June 18, 2014 hearing date scheduled for this Motion);

c.      a finding that the notice which accompanied the filing of this Motion was sufficient under the circumstances, for purposes of Federal Rule of Bankruptcy Procedure 2002; and

-14-

d.      such further and additional relief as the Court deems just.

Dated: May 28, 2014                    CHICAGO CONSTRUCTION SPECIALTIES,
                                       INC., Debtor and Debtor In Possession


                              By:    /s/ Bruce Dopke_____
                                     General bankruptcy counsel for the Debtor


Bruce Dopke
P.O. Box 681246
Schaumburg, IL 60168-1246
Tel:    847-524-4811
Fax:    847-524-4131
email: bruce@dopkelaw.com
ARDC: 3127052

-15-

# Exhibit A

## Chronological Time Charges

## Application of Bruce Dopke for Final Compensation As
## Counsel to Chicago Construction Specialties, Inc. - Chapter 11

*Billing Categories:*

**Code   Description of Category**

| Code | Description of Category |
|------|-------------------------|
| AD | Administration of the Case |
| AR | Collection of Accounts Receivable |
| AR1 | JC Anderson |
| AR2 | Pepper Construction |
| AR3 | Leopardo Companies |
| AR4 | Bear Construction |
| AR5 | FH Paschen, SN Neilsen |
| AR6 | Midland Frantz |
| AR7 | Interior Alterations |
| AR8 | Bulley & Andrews |
| AR9 | Gallant Construction |
| AR10 | Krause Construction |
| AR11 | WE O'Neil |

| Code | Description of Category |
|------|-------------------------|
| BAR | Bar Date |
| CBA | Collective Bargaining Agreement |
| CT | Court Appearances |
| EMP | Employment of Professionals |
| EXL | Exclusivity (to file Plan) |
| OB1 | Objection to IRS Claim |
| OB2 | Objection to Nunez/Impression claims |
| OPS | Operating Reports |
| PD | Plan/Disclosure Statement |
| SCH | Schedules/Statement of Financial Affairs |

| Code | Description of Category |
|------|-------------------------|
| FEE | Final Fee Application of Bruce Dopke |

## <u>BEGIN 2013 TIME ENTRIES</u>

| Date | Time | Code | Description |
|------|------|------|-------------|
| 8/5 | .3 | AD | Draft an email to Mr. Powers, from JC Anderson, copied on Christina Krivanek, Union Pension Fund counsel, notifying them that the case has been filed, and related subjects (.2); draft some much shorter emails to accomplish the same purpose, addressed to Robert Rabin, who represents the secured party (.1). |

**Exhibit A  -  Page 2**
**Chronological Time Charges**
Date    Time    Code    Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 8/5 | 1.6 | CBA | Review the statutory provisions which concern the rejection of collective bargaining agreements (.2); review the complaint and recent pleadings filed by the Laborers' Pension Fund, to identify those agreements which constitute executory agreements in the nature of collective bargaining agreements, which are subject to the procedures dictated by 11 U.S.C. §1113 (1.0); draft a letter to the Construction & General Laborers' District Counsel, Mr. Jorgensen (Pension and Benefit Plan administrator) and Ms. Krivanek (Fund Counsel) concerning the case filing and the Debtor's proposal to reject the collective bargaining agreement (.4). |
| 8/5 | .2 | AD | Telephone call with Ms. Alcala concerning the case filing, and the next steps (.2); later, call from Ms. Alcala re: the data on the AR, and contact people, as well as the communications with the Union and Pension Funds (.2). |
| 8/6 | 2.5 | EMP | Draft our employment motion (2.0) and the related affidavit (.5)(As an explanatory note, our practice is to include a narrative in our employment motions to explain what the case is about and, in cases like this where we have represented affiliated parties, why it is that we believe that we are disinterested.  In this case, the explanatory notes on these subjects were more detailed than is typical, and consequently, this particular motion and its supporting affidavit took a bit more time than is usual to prepare). |
| 8/6 | 1.3 | AR1 | Review email received from Mr. Powers (of JC Anderson) and send a carefully worded reply (.2); read and take notes on the 13 page agreement which we received from Mr. Powers, which governs JC Andersen's obligations with respect to amounts owed to the Union pension and welfare funds, on projects with JC Anderson (1.0); draft an email, concerning some data which we would like Ms. Alcala to pull with respect to the JC Anderson jobs (.1). |
| 8/6 | .1 | AD | Telephone call with the Alcalas re: cash use going forward. |
| 8/7 | .7 | EMP | Revise the employment motion and the affidavit (.5); prepare the notice (.1); prepare the form fillable order (.1). |
| 8/7 | .7 | AD | Telephone call to Edith Alcala re: a large number of issues, including what we need to do with the AR and the specific documentation that we need for her to pull which would quantify the amounts due to the debtor on a job by job basis, her trust responsibilities with respect to the debtor in possession, the disposition of certain unemployment tax claims of the debtor, the US Trustee (what it is and its function in the case) and related matters. |

**Exhibit A  -  Page 3**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 8/7 | .5 | AD | Briefly review (no charge for this) and then reply in detail to an email received from the Funds' attorney concerning our employment application. |
| 8/8 | .2 | AD | Draft a shareholder/director consent and resignation for Mr. Alcala's signature. |
| 8/12 | .2 | AD | Receive and respond to a string of emails with Mr. Rabin (counsel to Chase Bank) about our thoughts for a very simple and expensive way to get Chase's secured claim paid from the first recoveries on the debtor's accounts receivable. |
| 8/12 | .1 | AR1 | Review and reply in some detail to Mrs. Alcala's emails concerning the gross accounts receivable on the several open matters with JC Anderson. |
| 8/14 | .3 | AD | Telephone call from Mrs. Alcala.  Discuss the upcoming administrative meeting with the UST, her review of the draft of Schedule F to check for potential unpaid mechanics' lien claimants (there are none), remind her of the process to be followed, to get UST, and hopefully, general contractor and pension fund approval of a collection arrangement for the AR, and also the need to file the rest of the schedules and the statement of financial affairs next Monday. |
| 8/15 | 3.0 | AR1 | Review the backup from the Audit and from the many emails sent by and between the Pension Funds and JC Anderson, to arrive at the total AR, by job, and total deductions, by job, encapsulated into a spreadsheet which will be an exhibit to the settlement motion (1.2); telephone call from Greg Eichorn, who represents JC Anderson, to discuss the settlement structure (.2); draft a settlement agreement (1.2); draft an email to the settling parties, concerning the settlement agreement (.4). |
| 8/16 | .3 | AD | Telephone call with E. Alcala concerning a number of issues, including the progress made with the JC Anderson settlement, the need to complete the schedules and statement of financial affairs to be filed next Monday, the declaration of electronic filing associated with that, and related issues. |
| 8/16 | 3.6 | SCH | Go through the available materials and prepare a first draft of the statement of financial affairs (3.4); telephone call with Mrs. Alcala, concerning the responses to the Statement of Financial Affairs and our request for further backup, from the Quickbooks account, of the statements of the debts owed (.2). |
| 8/17 | 4.2 | SCH | Review the available information, making adjustments where appropriate to the content of the schedules to the Petition (2.5); telephone call from E. |

**Exhibit A  -  Page 4**
**Chronological Time Charges**
Date    Time    Code    Description

Alcala, to discuss corporate vacation pay policies, amounts due to salaried employees and related issues (.5); meet with Mrs. Alcala to discuss the details of certain claims and additional backup documentation for those claims and entries to the Schedules and Statement, but also, and at length, the likely direction of the Chapter 11 case (assuming that we can collect the sums from the General Contractors), the end game and likely outcome and time line (1.2).

| Date | Time | Code | Description |
|------|------|------|-------------|
| 8/18 | 3.1 | SCH | Bring the Schedules to a 4th draft, continuing to assess and enter information from the documentation provided, and very carefully proofing all of the employee and vendor claim entries against the source documents (while updating the memo concerning the changes made) (2.7); draft an email, transmitting the current draft of what is to be filed tomorrow to Mrs. Alcala (.1); further review of certain specific entries, while drafting a second memo on the changes made (.3); email the second petition memo to Mrs. Alcala (***no charge for this***). |
| 8/19 | 3.0 | SCH | Final review, prior to filing, of schedules A-H and the Statement of Financial Affairs (2.2); review the complete statements on the two intercompany accounts and the one shareholder loan account, and extract from those reports the information which is required in response to Question 3 of the Statement of Financial Affairs and, in the process, zero in and separate Armando Alcala's wage payment history, and separately itemize his shareholder loan transactions with the Debtor, as well as those of Impression and Protecto (with the Debtor)(.5); draft an amended list of creditors (which takes minutes) but then annotate the PDF (using an Adobe tool) to identify those new or modified entries on the, so that the Clerk can identify those parties on the matrix which are new or modified (.3); see to the electronic filing of the Schedules, Statement of Financial Affairs and the Amended List/Matrix of Creditors (***no charge for this***). |
| 8/19 | .1 | AR1 | Telephone call from Greg Eichorn (who represents JC Anderson) concerning his comments on the settlement agreement, the need for final invoices on two of the eight jobs and related issues. |
| 8/20 | .2 | AD | Telephone call from J. Nelson (UST) concerning the cancellation of today's initial administrative meeting, due to illness (.1); telephone Mrs. Alcala re same (.1). |
| 8/20 | .8 | AR1 | Telephone call from Greg Eichorn re: JC Anderson's comments to the settlement agreement (.2); telephone call with Mrs. Alcala re same (.1); later, forward the email received from Mr. Eichorn to Mrs. Alcala (*no charge for this*); revise the settlement agreement, to incorporate the |

**Exhibit A  -  Page 5**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| | | | changes requested by JC Anderson (.4); draft an email to counsel to JC Anderson, the Funds and Chase, concerning the revised draft of the agreement (.1). |
| 8/21 | .7 | AR1 | Telephone call to Mr. Eichorn (counsel to JC Anderson) regarding to the release issue (.2); later, telephone call with Mrs. Alcala re same (.1); after very briefly reviewing an email received from Mr. Eichorn with suggested language, revise version 2 of the agreement to accommodate Eichorn's wishes, and prepare a comparison draft (.3); draft an email transmitting the agreement (v3) and the redline to v2 to Ms. Krivanek, Mr. Eichorn and Mr. Rabin (***no charge for this***); review Ms. Krivanek's email from late this afternoon, with her comments on the settlement agreement (.1). |
| 8/22 | .4 | AR1 | Draft a fourth and hopefully final draft of the settlement agreement. |
| 8/23 | .1 | AR1 | Initiate or receive responses to a flurry of emails (x7) directed to the various parties, all designed to secure everyone's signature on the settlement agreement so that we may move the matter to the Court. |
| 8/26 | .1 | AR1 | Telephone call from Mrs. Alcala, inquiring about the progress on the JC Anderson agreement. |
| 8/27 | .4 | AR1 | Respond in detail to two emails received from Fund counsel, the first, which had questions about the JC Anderson exhibit A, and the second which concerned another account debtor (Leopold)(.3); receive and respond to about 4-5 other emails, culminating in the Pension Funds' sign-off on the JC Anderson agreement (.1). |
| 8/28 | 1.0 | CT | Appear in court at our application for employment (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***). |
| 9/2 | .1 | AD | Draft an email to Ms. Alcala re: tomorrow's meeting with the UST and later, with creditors. |
| 9/3 | 1.8 | AD | Telephone call to Ms. Alcala re: today's 341 meeting and administrative meeting with the UST (.1); prepare for the 341 meeting (.2); participate in the administrative meeting with Mr. Nelson of the UST (which preceded the 341)(.5); participate in the 341 meeting (.5); after the meeting, discuss the future of the case, and our immediate short term goals in the case, as well as the comments made by certain parties who appeared at the 341 meeting, with Mrs. Alcala (.5). |

**Exhibit A  -  Page 6**
**Chronological Time Charges**
Date    Time    Code    Description

| Date | Time | Code | Description |
|---|---|---|---|
| 9/3 | 1.8 | AR1 | Review, and briefly respond to Mr. Rabin, who transmitting the final signature that we needed to get the proceedings rolling on the JC Anderson settlement (.1); draft a settlement motion relative to the JC Anderson transaction (1.6); draft an email to the principal parties to the settlement concerning the settlement motion and the two likely hearing dates (.1). |
| 9/4 | .6 | AR1 | Further revisions to the motion and the other documents which must accompany it, including orders, notices and related documentation, including the affidavit to be supplied by Mrs. Alcala. |
| 9/6 | .1 | AR1 | Draft an email to Mrs. Alcala, attaching her affidavit and providing some comments concerning the timing and need for that document. |
| 9/9 | 2.1 | AR1 | Telephone call with Mrs. Alcala re:  her approval of the form of the JC Anderson affidavit (.1); further and final revisions to the motion to settle with JC Anderson (1.3); prepare a notice of motion and a service list/matrix comprised of the 20 largest creditors for that motion (.5); prepare a proposed order for the motion (.2); attend to the electronic filing of the motion (***no charge for this***); send courtesy copies of the motion and order to the Funds, JC Anderson, Mr. Kelley and Mr. Rabin (representing the Bank)(***no charge for this***). |
| 9/12 | .7 | AD | Return call of E. Alcala to discuss a number of issues, including the operating report to be filed next week, contacts which she has received from several collection agents for the Debtor's creditors, the need to get together the final 941 tax return for the Debtor, so that we can contact the IRS and ask them to amend Claim 2, and the question of whether Mr. Gallagher has any retainer left to do the final 1120S for the Debtor (.4); Draft letters to the following to inform them of the case and the automatic stay: "CrediSolve" on behalf of Blue Book (.15) and "Linebarger Goggan Blair" on behalf of the City of Chicago (.15). |
| 9/12 | .1 | OB1 | Telephone call to Mr. Bill Gallagher's office (speak to Laura) re: getting copies of the final 941s filed for QI 2013 (which we will need for the IRS and probably the IDR), and also inquiring about whether their firm still has a retainer to do the Debtor's final 940 and 1120S returns. |
| 9/12 | .2 | BAR | Draft the notice of bar date and calculate the applicable time periods (.1); begin to draft a motion to set a bar date (.1). |
| 9/13 | .6 | BAR | Complete the draft of the bar date motion and the related notice (.6); cause the motion to be scheduled and electronically filed (***no charge for this***); draft emails sending courtesy copies of the bar date motion to Mrs. Alcala |

**Exhibit A  -  Page 7**
**Chronological Time Charges**
**Date    Time    Code    Description**

| | | | |
|---|---|---|---|
| | | | and to Chase's attorney, Mr. Rabin (*no charge for this*). |
| 9/17 | .2 | AD | Telephone call from Ms. Alcala re: her many questions concerning the fact that people who either repossessed or purchased vehicles titled to the Debtor are apparently driving them through toll gates and violating red light cameras in Chicago and elsewhere. |
| 9/18 | .1 | AD | Exchange four emails with Mrs. Alcala re:  the latest operating report, as filed, the action which needs to be taken with respect to some of the Chase accounts, and the continuing issue of what to do about the red light camera violation notices. |
| 9/18 | .5 | OPS | Telephone calls (x2) with Mr. Nelson (from the UST) concerning the August 2013 report, and the applicable form (.1); complete the report and redact the two attachments (.4); cause it to be electronically filed (no charge for this). |
| 9/25 | 1.5 | CT | In court for 1.5 hours, for hearing on the motions to set a bar date, and to settle with JC Anderson and provide adequate protection to Chase Bank (this does not include travel time)(1.5); telephone Mrs. Alcala to inform her of the outcome of the hearing (no charge for this). |
| 9/26 | .6 | BAR | Prepare a master matrix (for use in the bar date notice, as well as for an exhibit to the certificate of service to be filed thereafter (.2); prepare the form of certificate of service for the bar date notice (.2); prepare a form of proof of claim to send to creditors with the Court's order setting bar date (.1); attend to the clerical task of reproducing 202 copies of the bar date order, the form proof of claim, the labels, the envelopes, etc. (no charge for this half-day task); on the ECF system, in creditor maintenance, add an alternate contact name and address for US Bank, at their Milwaukee, WI location, in light of the return of mail from the PO Box indicating that the box has been closed (.1). |
| 9/27 | .4 | AD | Telephone call from E. Alcala re: the workers' comp audit request received with respect to  the Pepper Construction, and the appropriate response to that, and also concerning the upcoming meeting with the IRS, and the need to address the IRS' estimated claim, and the potential benefits of having us speak with Mr. Velachek (IRS) about the potentials to be achieved through our liquidating plan. |
| 9/27 | .3 | PD | Return call of Alvar Ayala, to discuss the possible treatment of the Impression workers through a plan. |

**Exhibit A  -  Page 8**
**Chronological Time Charges**

| Date | Time | Code | Description |
|---|---|---|---|
| 9/30 | .3 | AD | Telephone call with E. Alcala re: my discussion with Mr. Ayala of last week (who represents the Impression class action plaintiffs) and what that can mean for the end game in the Debtor's case, as well as a discussion about today's scheduled meeting between her and the IRS, and the Debtor's final 941s which should be brought to that meeting, and what we hope to accomplish in terms of an amended IRS claim.  Also in that discussion, relate the content of our discussions earlier in the week with Mr. Ayala (who represents the Impression workers) and the potential benefits of such an agreement. |
| 9/30 | .1 | AD | Exchange five emails with Chase's lawyer concerning:  specific information concerning the payoff figures for Chase's secured claim. |
| 9/30 | .2 | OB2 | Conference call with Mrs. Alcala and Mr. Velachek, IRS agent, concerning the over-estimated tax claim filed in the Debtor's case and related issues. |
| 10/1 | .5 | PD | Telephone call with Alvar Ayala and Chris Williamson, who represent the Impression workers, about the possible ways to address the claims of their constituency through a reorganization plan. |
| 10/2 | .6 | AD | Telephone call from E. Alcala re: her episode with I-Pass (and the claims which keep being charged to the Debtor, from vehicles sold or repossessed last May), the issues concerning the Impression workers and my discussion yesterday with their class counsel, the need to get something going with Pepper Construction, and related issues (.5); telephone call from Mr. Gonzalez (owner of Milestone Equipment) concerning the bar date notice which he received (.1). |
| 10/4 | .4 | AD | Telephone call from E. Alcala re: bank account issues, Pepper and AR issues, Impression lawsuit issues, and related subjects (this is a charge for about half of the actual elapsed time of the call). |
| 10/5 | .2 | AD | Telephone call from E. Alcala re: bank account issues and Impression lawsuit issues (.2)(this is a reduced charge); later call from E. Alcala (from the Bank) to set up the new account (very brief). |
| 10/8 | .2 | AD | Three calls from Edith (while closing the Chase accounts - and also discussing the issues with the BOA account). |
| 10/16 | .3 | AR1 | Telephone call to Mr. Daniel Budorick (who represents JC Anderson) concerning: implementation of the agreement (.1); draft an email to Mr. Budorick re same (.2). |

**Exhibit A  -  Page 9**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 10/21 | .1 | AR1 | Another call to Mr. Budorick re: whether his client needs documentation other than the mechanics' lien release before it will consummate the sale, and whether, if additional documentation is needed, precisely what it is that his client is asking for (.1); telephone call to Ms. Alcala re same (leave message, no charge). |
| 10/22 | .3 | AR1 | Telephone call with Ms. Alcala re what needs to be done, on her part, to set up our further efforts to encourage JC Anderson to proceed as agreed. |
| 10/24 | .2 | AR1 | Draft an email to Mr. Budorick, to encourage him to encourage his client to follow up on the settlement of the JC Anderson AR account. |
| 10/30 | .3 | OPS | Prepare the September operating report (.3); cause it to be electronically filed (no charge for this). |
| 11/1 | .5 | AD | Meet with Mrs. Alcala and with representatives of Bank of America, to discuss the DIP account and to take steps to make sure that the account remains open. |
| 11/1 | .1 | AR2 | Telephone call to Shawna Oertley (at Pepper) to ask about getting a copy of the master subcontract agreement between the debtor and Pepper. |
| 11/5 | .1 | AD | Exchange of emails with Mr. Rabin concerning:  the payment details of the JC Anderson settlement check to the Debtor, and the payment details (for the payoff of the Chase secured indebtedness). |
| 11/7 | 1.0 | AR2 | Review the audit records to determine the appropriate deduction amount (for Pension Fund Contributions) to be made in connection with the Pepper settlement, and also, to determine which excerpts of the audit should be used as exhibits to the agreement (.1); review the master subcontract agreement relative to the Pepper job, and identify those provisions which will need to be referenced in the agreement and motion, which concern the Debtor's obligations to pay its union benefits current, and the indemnification and default rights of Pepper in the event that this is not done (.3); write a first draft of a settlement agreement for Pepper (.5); draft an email, transmitting a copy of the agreement to Pepper and to the Funds' counsel (.1). |
| 11/7 | .1 | AD | Draft an email to Ms. Alcala, concerning the payoff of the Bank's claim tomorrow. |
| 11/8 | 1.5 | AR2 | Review, and briefly reply to Ms. Krivanek's email concerning the Pepper agreement, and do the same, with a more detailed response, to the request |

**Exhibit A  -  Page 10**
**Chronological Time Charges**
Date   Time   Code   Description

of Pepper's representatives for an indemnity as a part of the compromise (.2); review and revise the drafts of the motion, notice, affidavit and order prepared yesterday for the Pepper transaction (.9); prepare a declaration of electronic filing (for the affidavit attached as Exhibit 2 to the motion)(.1); revise, to a version 2, the Settlement Agreement which is the subject of the Motion to Compromise with Pepper Construction (.2);  draft an email transmitting a copy of version 2 of the Settlement Agreement to representatives of Pepper and the Funds, with some comments to explain why certain things were revised (.1).

| Date | Time | Code | Description |
|------|------|------|-------------|
| 11/9 | .1 | AR2 | Telephone call with Ms. Alcala re: the collections made by the Funds from Pepper with respect to the alleged Impressions work on the Palos job. |
| 11/10 | .1 | AR2 | Exchange of emails and documentation with Mrs. Alcala relative to the offset claim which is being asserted by Pepper. |
| 11/11 | .3 | AD | Draft a letter to Mr. Rabin, transmitting the payoff check. |
| 11/11 | 1.4 | AR2 | Draft an email to Mr. Sullivan, at Pepper, concerning the deductions from the amounts payable to the Debtor based on the Funds' grievance for work done by Impressions on unrelated projects (.5); telephone call from Ms. Krivanek, concerning the confidentiality agreement in place between the Funds and Pepper, and some scant information that she felt that she could provide (in light of the confidentiality agreement (to which the Debtor had no knowledge and was not a party)) to explain why Pepper is asserting the $1,874.93 offset from the amount it owes to the Debtor – and also briefly discuss a similar situation which is brewing with another account debtor of the Debtor, namely, Leopardo (.2); telephone call with Tim Sullivan concerning the situation and a resolution of it (.2); telephone call to E. Alcala re the settlement of the settlement with Pepper (.1); revise the settlement agreement to reflect the settlement of the settlement (i.e., the "Offset")(.4). |
| 11/11 | .3 | AD | Telephone call with Mrs. Alcala to discuss salary issues, and the consequent need for the creation of tax and tax withholding compliance mechanisms from the DIP. |
| 11/12 | .7 | AR2 | Revise the previously drafted motion, affidavit and order, to reflect the settlement of the settlement (.6); draft an email to Ms. Alcala, transmitting those documents to her, with the settlement agreement, for her review and signature (.1). |

**Exhibit A  -  Page 11**
**Chronological Time Charges**
Date   Time   Code   Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 11/12 | .1 | CBA | Exchange of three emails with Ms. Krivanek re: identification of the agreements which were incorporated by reference into the short form collective bargaining agreement which the debtor signed in 2008, and later, the reasons why we are asking for the documentation (as in, the specific statutory requirements of section 1113). |
| 11/13 | .7 | AR2 | Draft a hurry-up email to the parties to the Pepper settlement, suggesting that they get us the signature pages (.1); after receiving and very briefly reviewing the signature page received from the Funds' counsel, talk briefly by phone with Mrs. Alcala, to suggest that she drop by and sign the papers (.1); two more emails, and two more phone calls, to Pepper representatives, to encourage them to send a signature page in time for us to get the motion filed and noticed today (.1); at 4:00 p.m., after receiving the final signature, do the final electronic assembly of the motion and its constituent parts, make the signed agreement into an exhibit to be attached to the proposed order (as is the court's preference, as noted at the hearing on the JC Anderson settlement), and make a few adjustments to the matrix (and corresponding changes to the service list attached to the notice of motion) to reflect the updated addresses drawn from recent claim filing activity (.4); cause the motion to be electronically filed (***no charge for this***); cause the motion to be served on the 15 parties who are to receive hard copies of the materials, and the other 5 or so parties who will receive electronic copies of same (***no charge for this***). |
| 11/13 | .3 | AR3 | Exchange emails with Mr. Oetter, a representative of Leopardo, concerning the backup to the subcontract with the Debtor (.1); draft an email to Mrs. Alcala re same, asking for confirmation of the factual elements of the materials sent by Leopardo (.1); later, briefly discuss the Leopardo receivable, and the difference between their records and the Debtor's records, relative to the account receivable (.1). |
| 11/14 | .9 | AR3 | Review the backup provided by the Debtor concerning the Leopardo AR (.4); compare that with the documentation provided by Leopardo earlier this week (.2); draft an email to Mr. Oetter (from Leopardo), transmitting some of the Debtor's source documents and inquiring (in a nice way) about the $4,470.00 discrepancy in the amount due to the Debtor (.3). |
| 11/15 | .4 | OPS | Prepare the October 2013 operating report (.1); review and then redact the bank statements and prepare the Declaration of Electronic Filing (.2); draft an email to Ms. Alcala re same (.1); cause the documents to be electronically filed (no charge for this). |

**Exhibit A  -  Page 12**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 11/15 | .3 | AR3 | Review the email and the explanation of the Leopardo staff for why the AR is $2K lower than the Debtor's January 2013 invoice (.1); telephone call with Mr. Oetter (from Leopardo) re same (.1); draft an email to Mrs. Alcala re: the Leopardo deal, and the need for her approval and our recommendation (.1). |
| 11/18 | .6 | AR3 | Draft a settlement agreement for Leopardo (.3); draft an email to the Leopardo and Fund representatives, concerning that agreement and requesting a copy of the Master Subcontract Agreement from Leopardo (.1); later, telephone call from Mr. Oetter re: some changes he would like to make to the Agreement (.2). |
| 11/19 | .7 | AR3 | Review the master subcontract agreement with Leopardo, to satisfy myself that it really does provide for indemnification and offset rights, in the event of a non-payment or under-payment of the pension fund contributions due for the Debtor's former union work force (.4); draft a second draft of the settlement agreement with Leopardo, and a redline, and an email to Mr. Oetter and Ms. Krivanek, transmitting those documents to them for their consideration (.2); after reviewing the agreements as signed by the Funds and Leopardo, send an email to Ms. Alcala, transmitting the documents and requesting certain actions (.1). |
| 11/20 | 2.5 | AR3 | Draft the motion, notices, order and other materials associated with the Leopardo settlement (2.3); several telephone calls with Mrs. Alcala re her affidavit and the motion itself (.2). |
| 11/20 | .1 | OPS | Telephone call (leaving voicemail) followed up with an email, with documents attached, to Mr. Wakefield (UST's office) concerning the last operating statement filed by the Debtor. |
| 12/4 | 1.0 | CT | Appear in court at our application to compromise with Pepper Construction (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***). |
| 12/4 | .5 | AR | Review the information on hand concerning the amounts due from the remaining general contractors (.3); draft a form of letter to those generals (urging them to settle up, in the manner used for the other three major accounts (.2). |
| 12/5 | .3 | AD | Draft an email to Mrs. Alcala, detailing the information which will be needed to facilitate the collection of the AR from the remaining general contractors. |

**Exhibit A  -  Page 13**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 12/9 | .3 | OB2 | Review claims 11 - 19, filed on or about December 6, 2013 in response to the bar date. |
| 12/9 | .7 | CBA | Review the 6 separate trust agreements related to the collective bargaining agreement which the Debtor signed with the construction local, which we received from Ms. Krivanek (.5); research: the binding effect of agreements to which the Debtor assumed, by signing the master agreement (.2). |
| 12/10 | .1 | OB2 | Review the claim filed by the Pension Funds. |
| 12/10 | .5 | AD | Telephone call with E. Alcala.  Go through the entire to-do list with her, and receive authorizations to move forward. |
| 12/10 | .3 | AR2 | Draft a letter to the Pepper staff, transmitting the original signature page of Mrs. Alcala (on the settlement agreement) and providing payment instructions. |
| 12/10 | 1.2 | CBA | Draft a first draft of a motion to reject the collective bargaining agreement. |
| 12/11 | 2.2 | CBA | Revise the motion to reject (1.8); draft the notice of motion (.1); draft a proposed order for the motion (.2); draft an email to Ms. Alcala concerning today's second (and hopefully, final) draft of the motion to reject (.1); after receiving approval, cause the motion to reject to be electronically filed (***no charge for this***). |
| 12/11 | 1.0 | CT | Appear in court at our application to compromise with Leopardo Companies (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***). |
| 12/12 | .2 | AR3 | Draft a letter to the Leopardo staff, transmitting the original signature page of Mrs. Alcala (on the settlement agreement) and providing payment instructions. |
| 12/13 | .2 | CBA | Telephone call to Ms. Krivanek (returning her call) to discuss our motion to reject the collective bargaining agreement, the Funds' alleged withdrawal liability claim and related issues. |
| 12/13 | .4 | AD | Several telephone discussions with Mrs. Alcala re: the things we would like to accomplish today with respect to the case and preparations for future actions, as well as our discussions with Ms. Krivanek concerning AR collections & cet. (.2); later, meet with Mrs. Alcala, and go over the papers that she delivered (.2). |

**Exhibit A  -  Page 14**
**Chronological Time Charges**
Date    Time    Code    Description

12/16    .5    OPS    Prepare the November operating report and the accompanying declaration (.5); cause the report to be electronically filed (***no charge for this***).

12/18    1.0    CT    Appear in court at our application to reject all collective bargaining agreements to which the debtor is a party (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***).

12/19    n/c    AR3    Forward the lien release documents to Mrs. Alcala with a short commentary (no charge for this).

12/26    1.1    OB1    Draft an objection to the IRS claim (1.0); forward a draft to Mrs. Alcala (by email)(no charge for this); later, telephone call with Mrs. Alcala re the claim objection (.1).

12/26    .4    OB1    Lightly revise the IRS claim objection, and then prepare the notice and proposed order relative to that claim objection (.4); cause the objection to be electronically filed (***no charge for this***).

12/27    .5    OB2    Prepare an objection to the Nunoz plaintiff claims (.5); forward a first draft of the objection to Mrs. Alcala, soliciting her comments (***no charge for this***).

12/27    .1    AR3    Draft a transmittal letter for the lien waiver for Leopardo.

12/28    .2    OB1    Revise the objection on the IRS claim.

12/28    2.6    OB2    Revise the objection to the Nunoz claims (.5); telephone call with Mrs. Alcala re the objection (.1); review the case authorities cited in the motion, and the subsequent decisions which either supported or commented on those cited authorities (.6); further revisions to the objection (.8); draft the notice and proposed order, relating to the objection (.2); draft a proposed order for the objection (.2); telephone call with Mrs. Alcala re: authorization to file and her comments on the motion (.2); cause the objection to be filed (***no charge for this***).

12/29    n/c    AR2    Draft an email to Pepper staff re: an inquiry concerning the payment which is now overdue (***no charge for this***).

**Exhibit A  -  Page 15**
**Chronological Time Charges**
**Date    Time    Code    Description**

## BEGIN 2014 TIME ENTRIES

1/5    .9    EXL    Draft a motion for an extension of the exclusive periods to file a plan and seek acceptances thereof.

1/7    .5    EXL    Telephone call to Mrs. Alcala to discuss the exclusivity motion, including what it is, what it does and why we are filing it now (.2); revise the motion (.3).

1/8    1.0    EXL    Final revision to the Exclusivity Motion (.6); draft the notice for the motion (.2); draft a proposed order for the motion (.2).

1/9    .1    CBA    Forward a copy of the Funds' objection to the motion to reject to Mrs. Alcala by email, and with some short comments.

1/14    .1    EXL    Telephone call to Ms. Krivanek, to check to see whether her client agrees to the extension motion (for exclusivity) and also discuss the information that the Funds have with respect to the Debtor's account debtors.

1/14    .1    AR1    Review the lien release form sent by Pepper; review the Funds' contact sheet and analysis of the Debtor's account debtors.

1/15    1.0    CT    Appear in court on the Debtor's motion to extend exclusivity, and on the Funds' motion to treat their proof of claim as timely filed.

1/15    1.0    AR1    Analyze the AR trial balances for the remaining amounts due to the Debtor, as well as the amounts shown as due to the Funds, per the Audit and also per the spreadsheet which Ms. Krivanek sent us yesterday (there are differences).  Make note of those AR accounts where there are not pension fund claims, and the many more where there are pension funds claims without a corresponding amount payable.  All of this is in preparation for the sending of a letter to the remaining account debtors (who owe more than $5,000.00 to the Debtor)(.9); scan and email the analysis to Mrs. Alcala (no charge for this); several short telephone calls with E. Alcala re same (.1).

1/16    3.4    AR1    Telephone call with E. Alcala concerning the AR analysis (.3); draft a detailed email to Ms. Krivanek concerning the discrepancy (on her spreadsheet) on the amount payable to the Fund on the IHC job, and also, concerning the terms under which the Debtor may agree to a modification and assumption of the CBAs (.2); revise the previously drafted form letter to begin the process of making them individualized to the following account debtors: Allegiance Construction, Bear Construction, Berglund

**Exhibit A  -  Page 16**
**Chronological Time Charges**

| Date | Time | Code | Description |
|---|---|---|---|
| | | | Construction, Bulley & Andrews, FH Paschen, Gallant Construction, IHC Construction, Interior Alterations, Krause Construction, MV Franks, Midland Frantz, Novak Construction, Pacific Construction and WE O'Neil (2.8); briefly telephone Ms. Krivanek to make sure that we are in agreement on the Fund principal due on the jobs which involve that contractor, and then briefly telephone Ms. Alcala to let her know of my discussion with Ms. Krivanek (.1). |
| 1/17 | .1 | AR7 | Return call of Nancy Mattingly (of IAI) and later exchange emails with her concerning the Debtor's AR records, and the corresponding records of IAI. |
| 1/20 | .1 | AR7 | Review the IAI back-charge information received today from Ms. Mattingly. |
| 1/21 | .6 | AR1 | Prepare a written analysis that can be used, not only to chart progress on the AR collections, and to respond to contractor calls as they occur, but which can also be used as a plan or disclosure statement exhibit (.5); review and then respond to the email received from Novak, concerning their AR to the Debtor (.1); forward the Novak information to Mrs. Alcala (***no charge for this***) |
| 1/21 | 1.5 | CBA | Telephone call to Christina Krivanek re: agreement on the cba, and the real timeline for getting approval from the union and the funds (.2); review those few cases which considered section 1113 of the Code in the context of a liquidating chapter 11 case, and specifically, in a case where the objective was to merely liquidate assets, as opposed to the sale of the debtor's business as a going concern (1.2); later call to Ms. Krivanek, taking her up on her suggestion to extend the briefing schedule and the hearing date (.1). |
| 1/22 | 1.5 | CBA | Telephone call to Mrs. Alcala re: the extension request relative to the CBA motion – the reasons why it s a good idea (.1); check the Pension Funds' proof of claim against the Judgment (just to make sure that we are not missing anything and that there are no errors in the amounts sought, etc.)(.4); draft the motion to extend, the notice and the proposed order (1.0); cause the motion to be electronically filed (no charge for this). |
| 1/23 | .1 | AR1 | Exchange three emails with Mr. Pounders (Novak) re:  payments of the relatively small AR ($3,678.00) which the Debtor has with Novak, and the preferred lien waiver forms relative to that general contractor. |
| 1/24 | .1 | AR4 | Review and reply to an email from Bear Construction re Bear's AP to the Debtor. |

**Exhibit A  -  Page 17**
**Chronological Time Charges**
Date   Time   Code   Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 1/24 | .1 | AR5 | Review the response received from Mr. Schutt (at FH Paschen) concerning our inquiry about the AR, and then draft a detailed response. |
| 1/27 | .5 | AR4 | Draft a settlement agreement for Bear Construction (.5); draft an email transmitting the agreement to Bear (through its counsel) and to the Funds' counsel (no charge for this). |
| 1/27 | .1 | CBA | Review the email sent by the Fund Counsel re the additional requirement requested by the Fund trustees; immediately forward that email to the Alcalas with some brief comments. |
| 1/28 | 5.7 | CBA | Telephone call with Ms. Krol (the Alcalas' personal counsel) concerning the additional stipulation requested by the Fund trustees (.1); send an email to the Fund counsel re same, followed by a phone call with Ms. Krivanek (Fund counsel) concerning the understanding about the dischargeability of the Alcalas' obligation to stay out of the construction business (.1); draft a proposed order on the CBA, to accommodate the new points raised by the Funds and by counsel to the Alcalas, whom the Funds have now brought into the controversy (.7); in view of the breakdown in the discussions over an agreed order permitting a modified (and obligation free) assumption of the CBA, recommence work on the preparation of a reply brief, starting with a review of the Pension Funds' objection and the reported decisions on section 1113 of the Code, as applied to liquidation cases (1.7); begin to write (3.1). |
| 1/29 | 4.7 | CBA | Prepare a rather detailed response to Ms. Krivanek's last email to us of 1/28, setting forth a legal analysis for her to consider (.4); complete the Reply (4.3). |
| 1/29 | .5 | CT | Appear at the motion to extend time to reply in support of Debtor's motion to reject all collective bargaining agreements. |
| 1/30 | .4 | OB1 | Telephone call from Miss. Harper (from the IRS) concerning the case and the tax claim which needs to be amended (.2); review the several emails sent from Mrs. Alcala, each transmitting a current employment tax return (.2). |
| 1/30 | n/c | AR4 | Draft an email to Ms. Krivanek, asking her about her client's signature on the Bear settlement agreement (***no charge for this***). |
| 1/31 | .5 | OB1 | Review the amended IRS tax claim (.1); later telephone call from Roger Markley (IRS Counsel) concerning the claim objection, and inform him that in light of the amended claim, the claim objection will probably be |

**Exhibit A  -  Page 18**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| | | | moot (.2); draft a fax transmittal for the 4th Quarter 941 to Miss. Harper at the IRS (.1); call Mr. Markley (IRS) after reviewing the IRS claim again to let him know that given the $1,000.00 plug claim for income tax, we would not dismiss the objection but would instead continue it to February or March, by which time the company would have prepared and filed its return for the year, and the amount, if any, of the income tax would then be known (.1). |
| 2/3 | .2 | CBA | Participate in a flurry of emails (eleven of them, to be precise) which concern two Citations issued in the district court suit (Funds v. Chicago Construction), in which our primary interest was to determine whether the Debtor was a party, directly or indirectly, to the citation requests. |
| 2/3 | .1 | AR4 | Exchange separate emails with counsel for Bear and for FH Paschen, re progress on the resolution of the AR amounts. |
| 2/4 | .1 | AR4 | Respond in some detail to an inquiry by Bear's counsel about whether there are any sub-subcontractor claims or wage amounts payable to any union employees of the Debtor (independent from the benefits claims asserted by the Funds). |
| 2/5 | 1.0 | CT | Attend the hearing on three matters: the objection to the IRS claim, the First Omnibus Objection, and the status hearing on the motion to reject all CBAs. |
| 2/6 | .4 | OB2 | Review the response filed by the former Impressions employees to the First Omnibus Objection (.2); review the Court's prior decision in the Montalbano case (.2); telephone Ms. Alcala concerning the outcome of today's hearings (leave message - no charge for this). |
| 2/7 | .1 | AR4 | Exchange a round of emails with Bear's counsel and Ms. Krivanek, concerning the signed Bear settlement agreement. |
| 2/7 | .1 | AR5 | Draft an email to Mr. Schutt (FH Paschen) concerning the agreed numbers on the AR and Fund payment. |
| 2/10 | .3 | AD | Telephone call with Ms. Alcala regarding the pending matters - the motion to reject, the Omnibus Objection (and the information we would like her to obtain concerning the employment relationship of the claimants) and the Bear and Paschan receivables (.3); draft emails to Mrs. Alcala, sending her digital copies of the documentation that we discussed and would ask her comments on (***no charge for this***). |

**Exhibit A  -  Page 19**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 2/11 | .8 | AR1 | Update the AR analysis (.2); review a number of the smaller AR numbers and the responses we received from those contractors (.3); send separate emails to Ms. Alcala with suggestions concerning the ICH, Novak and WE O'Neil receivables (.3). |
| 2/11 | .5 | AR5 | Review the backup materials provided by the general contractor on the FH Paschen jobs (.2); draft a settlement agreement for FH Paschen (.3); draft an email to Mr. Schutt (for FH Paschen) transmitting the agreement to her and to Ms. Krivanek for their review (no charge for this). |
| 2/11 | .3 | AR6 | Draft a settlement agreement for Midland Frantz (.3); draft an email to Ms. Ressler (for Midland Frantz) transmitting the agreement to her and to Ms. Krivanek for their review (no charge for this). |
| 2/11 | .7 | AR7 | Review the backup for the Interior Alterations job (.4); prepare an agreement for Interior Alterations (.3). |
| 2/12 | .9 | AR4 | Draft the motion, notice and proposed order relative to the settlement with Bear Construction (.9); cause the motion to be electronically filed (***no charge for this***). |
| 2/13 | .2 | AD | Telephone call from E. Alcala to discuss the records that she sent us on the IAI and WE O'Neil contract claims, as well as the information on the last paychecks of the Nunez claimants. |
| 2/13 | .1 | AR7 | Review the backup information on the IAI receivable; draft an email, transmitting the backup to Ms. Mattingly and asking her to confirm the amounts due. |
| 2/13 | .1 | AR8 | Draft an email to Mr. Hellerman (Bully & Andrews) to confirm the terms of the settlement. |
| 2/13 | .4 | AR11 | Review the WE O'Neil backup (.1); draft a response (by email) to Mr. Sikich (from O'Neil) explaining why we believe that he is mistaken about whether there is an amount due to the Debtor from his company, and asking him to do certain things to verify our information and records (.3). |
| 2/13 | .3 | OPS | Draft the January operating report (.3); draft an email to Mrs. Alcala, transmitting the operating report and redacted bank statement to her for her signature and review (***no charge for this***). |
| 2/14 | .3 | AR8 | Draft a settlement agreement for Bully & Andrews (.3); draft an email, transmitting the agreement to the parties for their review and signature (no |

**Exhibit A  -  Page 20**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| | | | charge for this). |
| 2/17 | 1.8 | P/D | Prepare a cash flow projection for the case (1.8); draft an email, transmitting it to Mrs. Alcala for her review (no charge for this). |
| 2/17 | 2.1 | OB2 | Telephone call to Mr. Kelley and his associate, Mr. Szabo, to inquire about the status of the state court lawsuit brought by the Impressions employees against the Debtor and its affiliate, Impressions (.3); research: cases which address the FLSA in the context in which it is presented here – as attempts to make a debtor liable for the wages earned by employees of affiliate companies (1.8). |
| 2/18 | .2 | AR7 | Return call of N. Mattingly (Interior Alterations) to discuss the process of getting the deal approved, including the timing of payment and the nature of the releases to be received. |
| 2/18 | .8 | PD | Telephone call with Mrs. Alcala, and go walk her through the detail of the analysis, prepared yesterday, concerning the financial projections for the case, including some which could potentially assist in the resolution of the Nunez claims. |
| 2/19 | .2 | AR7 | Telephone call from Ms. Mattingly, and explain to her exactly how the release process works (with the general release given in the agreement, plus the specific written release to follow)(.1); after reviewing the signed settlement agreement from Interior Alterations, exchange emails with Ms. Krivanek and with Ms. Alcala, soliciting signatures (.1). |
| 2/19 | .2 | AR5 | After reviewing the signed settlement agreement from Paschen, exchange emails with Ms. Krivanek and with Ms. Alcala, soliciting signatures (.1); later, telephone call from Mrs. Alcala re same (.1). |
| 2/20 | .2 | OB2 | Telephone call from E. Alcala re: details concerning the idea we had for the settlement of the objection to the Impressions claimants. |
| 2/23 | 3.1 | OB2 | Prepare an affidavit for Mrs. Alcala, relative to the Nunez claims. |
| 2/23 | .5 | AR8 | Prepare a motion, notice and proposed order relative to the Bulley & Andrews settlement (.4); draft an email to Mr. Hellerman, inquiring about Bulley & Andrew's signature page, which we would like to see (.1). |
| 2/24 | 4.2 | OB2 | Review the Nunez reply, and parse the facts that they actually plead in that response, relative to the joint operations of the companies (.3); meet with Mrs. Alcala to go over her affidavit, and discuss in detail what happened at |

**Exhibit A  -  Page 21**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| | | | the companies in the times which were critical to the issues in the Nunez case and claim (1.7); telephone Mrs. Alcala, to further discuss a few of the points which we discussed earlier today (.2); further research on the numerous legal issues (2.0). |
| 2/25 | 7.0 | OB2 | Create the 2nd draft of Mrs. Alcala's affidavit (2.8); write a Reply in support of the objection to the Nunez claims (4.2). |
| 2/25 | .5 | AR7 | Prepare a motion, notice and proposed order relative to the Interior Alterations settlement. |
| 2/25 | .2 | AR5 | Go through the materials to confirm that the Funds have not actually signed off on the FH Paschen settlement agreement, and then send an email, transmitting the Agreement with the other two signatures to her, with a request for signature. |
| 2/26 | 6.4 | OB2 | Revise the reply multiple times throughout the day (5.5); telephone call with E. Alcala concerning the reply and her affidavit (.2); later, telephone call from E. Alcala with a number of last minute changes to the Affidavit (.5); turn around version 4 of the affidavit, with a redline (.2); get authorization to file with Affidavit v4 (no charge) and do so (no charge). |
| 2/26 | .5 | AR5 | Prepare a motion, notice and proposed order relative to the FH Paschen settlement (.5); cause those materials to be electronically filed (***no charge for this***). |
| 3/4 | .3 | AR8 | Telephone call from Paul Hellerman (Bulley & Andrews) who called to explain why he was now unwilling to do what he had agreed to do (in terms of the settlement of the AR) last month; explain the facts of life to him (.2); telephone call to Ms. Krivanek re the call received from Hellerman and some suggestions about how to respond (.1). |
| 3/5 | 1.0 | CT | Attend hearing on the settlement with Bear Construction (we capped this charge at 1.0 hours, although the actual time incurred, with travel time, was approximately 2.8 hours); draft an email to Mrs. Alcala, to let her know how things went in court today (no charge for this). |
| 3/6 | .1 | AD | Review and immediately reply to emails received from Mrs. Alcala concerning the contact from BOA, and then follow up those emails with a call to the BOA officer who contacted Mr. Alcala, with an urgent message concerning the debtor. |

**Exhibit A  -  Page 22**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 3/6 | .1 | AR4 | Draft a detailed email to Mr. Rein, transmitting a copy of the settlement order and suggesting a process for closing the settlement. |
| 3/7 | .5 | AR9 | Telephone call from David Buetow (attorney for Gallant) concerning our January 2014 letter to his client; explain how the settlement and the releases work (.2); draft a proposed settlement agreement for his review (.3); transmit the agreement to Mr. Buetow with some explanatory information concerning the process and timing (no charge for this). |
| 3/12 | .3 | OPS | Review the February 2014 BOA account statement, and cross check the expense data (.1); prepare the February 2014 operating report (.2). |
| 3/12 | 1.0 | CT | Appear in court at the hearing on the Debtor's 1st Omnibus Objection to the claims of Nunez et al. (1.0)(we limited our charge for this service at 1.0 hour, although our actual time expenditure, with travel, was approximately 2.8 hours). |
| 3/13 | .1 | AR4 | Exchange multiple emails with Mrs. Alcala re:  the form and content of the Bear mechanics' lien waivers. |
| 3/16 | .1 | OPS | Final review of the February 2014 operating report, prior to its filing (.1); cause the document to be electronically filed (no charge for this). |
| 3/17 | .1 | AR5 | Exchange five emails (back and forth) with counsel for Paschen/Nielsen and Mrs. Alcala re:  payment terms, mechanics' lien release form issues and closing logistics. |
| 3/19 | 1.0 | CT | Appear in court at the hearing on the IAI and FH Paschen/SN Nielsen settlements (we limited our charge for this service at 1.0 hour, although our actual time expenditure, with travel, was approximately 2.8 hours). |
| 3/19 | .1 | AD | Telephone call to Ms. Alcala re:  today's activities, and the schedule (and to-do) for the weekend and next week's hearings. |
| 3/19 | .2 | OB2 | Telephone call from Mr. Ayala (returning my earlier call) and discuss settlement of the Nunez claims. |
| 3/20 | .1 | AR5 | Review the order approving the Paschen settlement and then draft a moderately detailed email to Ms. Schutt re the closing process. |
| 3/20 | .1 | AR7 | Review the order approving the IAI settlement and then draft a moderately detailed email to Ms. Mattingly re the closing process. |

**Exhibit A  -  Page 23**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 3/20 | 1.9 | OB2 | Planning for the settlement of the Nunez claims, which mostly consists of updating the previously prepared chart of all claims and settlements, and then tinkering with various distribution options in the event of settlement with the Nunez claimants at various levels and with various attributes (1.7); send the draft to Mrs. Alcala for her review with some explanatory comments (.2). |
| 3/20 | .2 | AR9 | After very briefly reviewing the email from Mr. Buetow, revise the contract (.1) and then draft an email back to him (with copies to Ms. Krivanek) transmitting the corrected contract draft and giving him an answer with respect to the use of the lien waiver form that he would like the debtor to sign (.1). |
| 3/24 | 2.9 | OB2 | Prepare a spreadsheet concerning the settlement numbers for the Nunez claims (.7); draft an email, transmitting that spreadsheet to the Nunez counsel (.1); prepare a first draft of a settlement agreement for Nunez (1.8); telephone call with E. Alcala re same (.2); draft an email which transmits the agreement to counsel for Nunez for their comments, with the usual reservations (.1). |
| 3/24 | .2 | AR9 | After looking through all of the recent emails for Chicago Construction and not finding a Gallant agreement signed by the trust (.1), draft an email to Ms. Krivanek, asking her to make sure that her client signs the agreement and returns it to us so that we can file it before we leave town this Thursday afternoon (.1). |
| 3/25 | .9 | OB2 | Review the agreement, and catch a few things that need to be revised (.2); telephone call with Mr. Ayala to get his comments on the agreement (.2); revise the agreement to incorporate Mr. Ayala's changes (.2); draft an email to the parties, transmitting the agreement vers. 2 and a redline (.1); telephone call from Mr. Zambo concerning the Nunez agreement (.2). |
| 3/25 | .5 | AD | Meet with Mrs. Alcala to discuss and/or obtain signatures on the Nunez agreement, the Gallant agreement, the Paschen lien release, and the Paschen check. |
| 3/25 | .7 | AR9 | Draft a motion for approval of the Gallant settlement, with the accompanying notice and order (.7); cause the motion to be electronically filed (no charge for this); draft an email to Mr. Buetow concerning the filed motion and the hearing date (no charge for this). |
| 3/26 | 1.0 | CT | Attend hearing on the Nunez claim objection (we have capped this charge at 1.0 hour, although the actual time incurred, with travel, was |

**Exhibit A  -  Page 24**
**Chronological Time Charges**
Date    Time    Code    Description

approximately 2.8 hours).

3/26    1.3    OB2    Telephone call to Mr. Zambo, to inquire about whether Armando Alcala has signed the settlement agreement; later, very briefly review email from Mr. Zambo which transmitted the executed document (.1)(for both activities); review the claims and the schedules to isolate those entities which hold allowed claims against the estate (.8); translate that information to a matrix, for use in the Nunez objection as well as the potential transmission of a plan (.1); draft a notice of motion, reflecting the special arrangements we have for the service of the motion in the three modes:  ecf system, digital notice (by agreement) and by mail (.2); draft a proposed order relative to the motion (.1).

3/27    3.5    OB2    Write the motion for approval of the compromise with the Nunez claimants (2.7); brief telephone call to E. Alcala re the motion draft (no charge for this); later, telephone call from E. Alcala, to discuss her questions and comments relative to the motion to settle (.3); complete the assembly of the various components of the motion (to facilitate the electric filing thereof)(.2); cause the agreement to be electronically filed (no charge for this); draft an email to Mr. Mason, transmitting copies of the Nunez settlement motion and explaining in some detail why we are sending the motion to him, with a copy to Ms. Krol (.3).

4/10    .1    AD    Telephone call to and later from Ms. Alcala, to touch base on open matters.

4/10    .2    AR10    Telephone call from Kevin Murninghan, who represents Krause Construction, and explain the settlement process to him.

4/11    .1    AD    Telephone call from Mrs. Alcala.  Inquire about the Bear waivers (and inform her of our receipt of the Bear check), discuss the best way to get the IAI information for the lien waivers, and inquire about the BOA statement for March.

4/11    .4    AR10    Draft a settlement agreement for Krause (.3); draft an email to Krause's counsel, and to Ms. Krivanek, concerning the settlement (.1).

4/11    .2    AR11    Draft an email to Mr. Russell (WE O'Neil) in an effort to try to move the stalled settlement process forward.

4/15    .4    OPS    Prepare the March 2014 operating report (.4); cause it to be electronically filed (no charge for this).

**Exhibit A  -  Page 25**
**Chronological Time Charges**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 4/17 | .3 | OB1 | Telephone call from Agent Merritt (IRS - Detroit) and inform her of the status and history of the case, the issue of the 2013 income tax and the status of the pending objection to the IRS claim in the case. |
| 4/22 | .4 | AR10 | Briefly revise the settlement agreement for Krause (.2) and then draft an email to Krause's counsel, explaining why the modification to the release provision which he requested required further adjustment (.2). |
| 4/23 | .4 | AR1 | Update the cash flow projections, based on the deals recently made and the current numbers. |
| 4/23 | 1.0 | CT | Appear in court on the following matters:  the objection to the Nunez claims, and the proposed settlement of those claims; the objection to the IRS claim; and the settlement of the Gallant receivable (we limited this charge to one hour, although the time incurred, with travel, was approximately 2.8 hours). |
| 4/28 | .1 | AR10 | Return last Friday's call from Mike Murray, one of the attorneys for Krause Construction. |
| 4/28 | .5 | PD | Begin work on the Plan and the accompanying documentation (.2); telephone call from E. Alcala to describe the plan, what it does and the related timing issues (.3). |
| 4/29 | .5 | PD | Further work on planning the various and specific components which will be needed in the liquidating plan which we have in mind for the Debtor in this case. |
| 4/29 | .6 | AD | Telephone call with Mrs. Alcala re:  progress on yesterday's to-do list and related issues (.2); meet with Mrs. Alcala and run through the employment tax returns, the recent correspondence from the UST and the labor union and funds, and related issues (.4). |
| 4/29 | .2 | AR10 | Telephone call to Ms. Krivanek re:  getting the Krause deal signed by the Administrator, getting the Bulley deal to move forward, the status of the plan and the likelihood of a decision on the Motion to Reject this week. |
| 4/30 | .2 | AR9 | Draft an email to Mr. Butow, transmitting a conformed copy of the order entered on the Gallant settlement and providing some details for getting the matter completed and closed. |
| 4/30 | 1.4 | PD | Complete the first draft of the motion to set dates and approve the plan/disclosure statement. |

**Exhibit A  -  Page 26**
**Chronological Time Charges**
Date   Time   Code   Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 4/30 | .9 | AR10 | Draft the motion for approval of the Krause settlement, together with the notice and proposed order (.8); draft an email to Ms. Krivanek, to inform her that we are ready to file the motion, subject only to receipt of a signature from her client (no charge for this); attend to the electronic filing of the motion (no charge for this); draft an email to Mr. Murray, transmitting a conformed copy of the motion and providing some detail concerning the May 21 hearing (.1). |
| 4/30 | .1 | AD | Telephone Mr. Kier, who represents Wessels Sherman (an unsecured creditor) to find out why the notice we recently sent the firm at the address noted in its proof of claim came back "return to sender." |
| 5/1 | .2 | EXL | Update our research on current decisions on section 1121(e). |
| 5/4 | 3.1 | PD | Further work on the chart (for sources and uses of cash) which will be attached to the plan, to include recent settlements, estimates of additional expense, timing issues, reserves, and related, essential considerations (2.9); draft a detailed email to Mrs. Alcala concerning the chart and its assumptions (.2). |
| 5/5 | 1.9 | PD | Further fine tuning of the chart (1.0); draft an email to Mrs. Alcala concerning the May 5 edition of the chart (.1); draft the opening section of the Plan (1.8). |
| 5/6 | 2.4 | PD | Revise the introductory section of the Plan to a good first draft. |
| 5/7 | 4.7 | PD | Telephone call with Mrs. Alcala concerning some comments she had on the introductory section of the Plan and the Plan exhibit (.2) and also her thoughts and concerns about the IDES claim (no charge for this); revise the introductory section of the plan, and draft the remaining sections of the Plan (4.5). |
| 5/8 | 3.2 | PD | Telephone call with Mrs. Alcala, to discuss the latest (and complete) draft of the plan, the timing issues and the status of the discussions with the accountant for his post-confirmation work (.2); later, telephone call with Mr. Gallagher (the accountant) to confirm that he understands what his firm is being called upon to do, and to request something written to attach to the plan re same (.2); prepare a declaration of electronic filing for the Plan (.1); prepare a notice of filing for the Plan (.1); review and revise the Plan to its third and (hopefully) final draft (2.6). |
| 5/9 | 5.0 | PD | Recalculate our legal fee and cost estimate through May 8, and then adjust that figure to provide a closer administrative expense estimate for use in |

**Exhibit A  -  Page 27**
**Chronological Time Charges**
**Date    Time    Code    Description**

the Plan and the Plan Exhibit 1 (.2); revise Plan Exhibit 1 accordingly (.1); revise the Plan to complete version 5 (1.4); telephone call with Mrs. Alcala to discuss all of the changes made to version 5 of the Plan, and to make sure that all of the moving parts of the Plan are understood and approved, and obtain her authorization to proceed to file the Plan (.5); exchange emails confirming the authorization to proceed (***no charge for this***); arrange for the electronic filing of the Plan and the Notice of Filing relating to the Plan (***no charge for this***); revise the scheduling motion, to take into consideration the advancement of the hearing date, and also incorporate a number of additions to the relief sought (and the explanation for why the additional relief is sought)(1.6); draft the notice of motion (.1); adapt the official form of ballot for use in this small business bankruptcy case (.3); draft the order and notice and the scheduling order (.8); cause the motion to be electronically filed (***no charge for this***).

| | | | |
|---|---|---|---|
| 5/12 | .2 | AR8 | Draft an email to the representatives of Bulley & Andrews, urging them to sign off on the settlement agreement which we sent them last February. |
| 5/12 | .4 | AD | Telephone call from E. Alcala re:  the IRS/FUTA statement that she received, the status of the IRS claim in the case, Bulley & Andrews, and the meaning and import of the Court's decision on the Motion to Reject the CBA. |
| 5/13 | .3 | OPS | Prepare the April 2014 operating report (.3); send a draft to Ms. Alcala for her review and signature (no charge for this). |
| 5/13 | .9 | PD | Create a matrix for the mailing of notice of confirmation, paying particular attention to variances between the official list of record, and come up with a 55 name list, potentially expandable to 189 names if the Court so chooses (.5); revise the Order granting the motion to set hearing dates (.2); revise the Order & Notice of the Hearing on Confirmation (.2). |
| 5/14 | 1.0 | CT | Appear in court on the scheduling motion (relative to the Plan of Liquidation)(1.0)(this charge was capped at 1.0 hours; the actual time incurred, with travel, was approximately 2.8 hours). |
| 5/14 | .5 | FEE | Begin to draft our first and final fee application. |
| 5/14 | .5 | AR8 | Respond (by email) to a question which the Bulley & Andrews rep had to the settlement agreement (.1); revise the motion to approve the settlement with Bulley & Andrews, which was first prepared several months ago (.2); revise the notice of motion, as well as the service list (the lists of electronic notice parties and the list of who, among the remaining |

**Exhibit A  -  Page 28**
**Chronological Time Charges**
Date    Time    Code    Description

creditors, are among the 20 largest has changed in view of the Nunez settlement, which required an adjustment of the service list)(.2); cause it to be electronically filed (no charge for this).

5/14    .2    AD    Telephone call from E. Alcala re:  the completion of the 2013 form 1040S return for the Debtor, the Bulley & Andrews settlement, and other issues (.2); cause the April 2014 operating report to be electronically filed (no charge for this).

5/14    .1    PD    Amend and adapt the chart which was attached to the Plan as Exhibit 1, so that it may be used as a confirmation exhibit, and while doing so, make revisions to reflect the Bulley & Andrews settlement which was finally inked and filed today.

5/15    1.3    PD    Draft an email to Ms. Krivanek, and a separate one to Mr. Ayala, inviting them to each call us to discuss some of the practical issues relative to the Plan and voting on the Plan (.1); as a convenience to counsel for the Nunez claimants (Mr. Ayala), customize ballots for the seven Class 1-B claimants, using the claim figures set forth in the list attached to the Plan (.1); draft a letter to Mr. Ayala, concerning the Plan (.2); prepare customized ballots for Mr. Alcala, Impression and Protectco (.1); check and double check the solicitation packets to be sent to the parties, prior to transmission (.5); prepare a certificate of service relative to the Order, Ballot, Plan and the service list of entities receiving the confirmation packet, and the individual components of that certificate (.3); cause the certificate to be electronically filed (no charge for this).

5/15    .8    OB1    Draft a letter which transmits an original copy of the Debtor's 2013 federal income tax return, a copy of the Debtor's 2013 form 940 return, and a copy of the last amended proof of claim filed by the IRS to Agent Linda Merritt, with suggestions for the amendment of the IRS claim (.5); telephone call with Agent Merritt concerning the amendment of the POC (.2); meet with Mrs. Alcala, and briefly discuss the return and our letter to the IRS Agent Merritt (.1).

5/20    .3    PD    Telephone call to C. Krivanek to discuss the Funds' rejection claim, the issue of voting on the claim (i.e., encouraging her to get the five or six entities which have pieces of claim 20 to file a single ballot, instead of several which might require review and possibly, objection) and the next steps on collecting the two remaining major accounts receivable.

5/20    .5    AD    After reviewing Mrs. Alcala's emergency email and its attachments (concerning an IRS summons to Chase, to determine potential responsible

Exhibit A  -  Page 29
Chronological Time Charges
Date    Time    Code    Description

parties for the debtor), place a call to our IRS contact (no charge for this); later, telephone call from Agent Linda Merritt and discuss the practical elements of launching a responsible party investigation and assessment on an IRS claim which promises to be paid in full in about seven weeks, and also, the question of whether the issuance of a notice of assessment of a penalty is covered by the section 362(a)(3) exceptions (.3); telephone Mrs. Alcala to let her know what is going on, and to not worry about it (.2).

| Date | Time | Code | Description |
|------|------|------|-------------|
| 5/21 | 1.0 | CT | Appear in court on the continued objection to the IRS claim (which is moot in light of the recent amendment to the claim, and the motion for approval of the settlement with Krause Construction, and on the general status of the case (1.0)(this charge is limited to one hour, although the action time incurred, with travel, was approximately 2.8 hours). |
| 5/22 | .1 | AR1 | Draft separate emails to Mrs. Alcala re:  followup on the Midland Frandz and the Novak receivables. |
| 5/22 | .7 | AR11 | Draft a carefully worded email to the President of WE O'Neil Construction, urging him to act on the settlement proposals which we have previously sent to him (.4); draft a second email to Ms. Krivanek, on the subject of WE O'Neil and the Debtor's two other five-figure accounts receivable (.3). |
| 5/23 | .2 | AR1 | Forward several emails to Mrs. Alcala, relative to the collection of the Novak receivable (.1); forward an email to Ms. Krivanek concerning the open $29,417.00 Berglund receivable, and seeking to enlist her aid in approaching her contact at the company about getting the matter resolved. |
| 5/23 | .2 | AR10 | Draft a detailed email to Krause's counsel, transmitting a copy of the settlement order and suggesting a process for closing the settlement. |
| 5/24 | 2.5 | FEE | Complete the first draft of the final fee application (this charge has been capped at 2.5 hours, to bring the total charges to the estate for the preparation of the fee application to 3.0 hours.  The actual time spent in preparing the application, the exhibits and the notices, was more than 7.0 hours). |
| 5/27 | .5 | AR11 | Telephone call from Lance Hornady (from WE O'Neil) re settlement of the open amount payable at $4,500.00 (.2); telephone call to Mrs. Alcala, to obtain approval for this settlement (.1); draft a settlement agreement for the O'Neil settlement (.2); circulate it to the parties by email(no charge for this). |

Total Hours:  191.5    @ $300.00 per hour              $  57,450.00

**Exhibit B  -  Page 1**
**Time Charges by Category**
**Date   Time   Code   Description**

## Exhibit B

### Time Charges By Category

### Application of Bruce Dopke for Final Compensation As
### Counsel to Chicago Construction Specialties, Inc. - Chapter 11

### AD - Administration of the Case

| Date | Time | Code | Description |
|------|------|------|-------------|
| 8/5 | .3 | AD | Draft an email to Mr. Powers, from JC Anderson, copied on Christina Krivanek, Union Pension Fund counsel, notifying them that the case has been filed, and related subjects (.2); draft some much shorter emails to accomplish the same purpose, addressed to Robert Rabin, who represents the secured party (.1). |
| 8/5 | .2 | AD | Telephone call with Ms. Alcala concerning the case filing, and the next steps (.2); later, call from Ms. Alcala re: the data on the AR, and contact people, as well as the communications with the Union and Pension Funds (.2). |
| 8/6 | .1 | AD | Telephone call with the Alcalas re: cash use going forward. |
| 8/7 | .7 | AD | Telephone call to Edith Alcala re: a large number of issues, including what we need to do with the AR and the specific documentation that we need for her to pull which would quantify the amounts due to the debtor on a job by job basis, her trust responsibilities with respect to the debtor in possession, the disposition of certain unemployment tax claims of the debtor, the US Trustee (what it is and its function in the case) and related matters. |
| 8/8 | .2 | AD | Draft a shareholder/director consent and resignation for Mr. Alcala's signature. |
| 8/12 | .2 | AD | Receive and respond to a string of emails with Mr. Rabin (counsel to Chase Bank) about our thoughts for a very simple and expensive way to get Chase's secured claim paid from the first recoveries on the debtor's accounts receivable. |
| 8/14 | .3 | AD | Telephone call from Mrs. Alcala.  Discuss the upcoming administrative meeting with the UST, her review of the draft of Schedule F to check for potential unpaid mechanics' lien claimants (there are none), remind her of |

**Exhibit B  -  Page 2**
**Time Charges by Category**
**Date   Time   Code   Description**

|  |  |  |  |
|------|------|------|-----|
|  |  |  | the process to be followed, to get UST, and hopefully, general contractor and pension fund approval of a collection arrangement for the AR, and also the need to file the rest of the schedules and the statement of financial affairs next Monday. |
| 8/16 | .3 | AD | Telephone call with E. Alcala concerning a number of issues, including the progress made with the JC Anderson settlement, the need to complete the schedules and statement of financial affairs to be filed next Monday, the declaration of electronic filing associated with that, and related issues. |
| 8/20 | .2 | AD | Telephone call from J. Nelson (UST) concerning the cancellation of today's initial administrative meeting, due to illness (.1); telephone Mrs. Alcala re same (.1). |
| 9/2 | .1 | AD | Draft an email to Ms. Alcala re: tomorrow's meeting with the UST and later, with creditors. |
| 9/3 | 1.8 | AD | Telephone call to Ms. Alcala re: today's 341 meeting and administrative meeting with the UST (.1); prepare for the 341 meeting (.2); participate in the administrative meeting with Mr. Nelson of the UST (which preceded the 341)(.5); participate in the 341 meeting (.5); after the meeting, discuss the future of the case, and our immediate short term goals in the case, as well as the comments made by certain parties who appeared at the 341 meeting, with Mrs. Alcala (.5). |
| 9/12 | .7 | AD | Return call of E. Alcala to discuss a number of issues, including the operating report to be filed next week, contacts which she has received from several collection agents for the Debtor's creditors, the need to get together the final 941 tax return for the Debtor, so that we can contact the IRS and ask them to amend Claim 2, and the question of whether Mr. Gallagher has any retainer left to do the final 1120S for the Debtor (.4); Draft letters to the following to inform them of the case and the automatic stay: "CrediSolve" on behalf of Blue Book (.15) and "Linebarger Goggan Blair" on behalf of the City of Chicago (.15). |
| 9/17 | .2 | AD | Telephone call from Ms. Alcala re: her many questions concerning the fact that people who either repossessed or purchased vehicles titled to the Debtor are apparently driving them through toll gates and violating red light cameras in Chicago and elsewhere. |
| 9/18 | .1 | AD | Exchange four emails with Mrs. Alcala re:  the latest operating report, as filed, the action which needs to be taken with respect to some of the Chase accounts, and the continuing issue of what to do about the red light camera |

**Exhibit B  -  Page 3**
**Time Charges by Category**
**Date    Time    Code    Description**

| Date | Time | Code | Description |
|------|------|------|-------------|
| | | | violation notices. |
| 9/27 | .4 | AD | Telephone call from E. Alcala re: the workers' comp audit request received with respect to  the Pepper Construction, and the appropriate response to that, and also concerning the upcoming meeting with the IRS, and the need to address the IRS' estimated claim, and the potential benefits of having us speak with Mr. Velachek (IRS) about the potentials to be achieved through our liquidating plan. |
| 9/30 | .3 | AD | Telephone call with E. Alcala re: my discussion with Mr. Ayala of last week (who represents the Impression class action plaintiffs) and what that can mean for the end game in the Debtor's case, as well as a discussion about today's scheduled meeting between her and the IRS, and the Debtor's final 941s which should be brought to that meeting, and what we hope to accomplish in terms of an amended IRS claim.  Also in that discussion, relate the content of our discussions earlier in the week with Mr. Ayala (who represents the Impression workers) and the potential benefits of such an agreement. |
| 9/30 | .1 | AD | Exchange five emails with Chase's lawyer concerning:  specific information concerning the payoff figures for Chase's secured claim. |
| 10/2 | .6 | AD | Telephone call from E. Alcala re: her episode with I-Pass (and the claims which keep being charged to the Debtor, from vehicles sold or repossessed last May), the issues concerning the Impression workers and my discussion yesterday with their class counsel, the need to get something going with Pepper Construction, and related issues (.5); telephone call from Mr. Gonzalez (owner of Milestone Equipment) concerning the bar date notice which he received (.1). |
| 10/4 | .4 | AD | Telephone call from E. Alcala re: bank account issues, Pepper and AR issues, Impression lawsuit issues, and related subjects (this is a charge for about half of the actual elapsed time of the call). |
| 10/5 | .2 | AD | Telephone call from E. Alcala re: bank account issues and Impression lawsuit issues (.2)(this is a reduced charge); later call from E. Alcala (from the Bank) to set up the new account (very brief). |
| 10/8 | .2 | AD | Three calls from Edith (while closing the Chase accounts - and also discussing the issues with the BOA account). |
| 11/1 | .5 | AD | Meet with Mrs. Alcala and with representatives of Bank of America, to discuss the DIP account and to take steps to make sure that the account |

**Exhibit B  -  Page 4**
**Time Charges by Category**
**Date    Time    Code    Description**

|       |      |      |                                                                                                                                                                                                                                     |
|-------|------|------|--------------------------------------------------------------------------------------------------------------------------------------------------|
|       |      |      | remains open.                                                                                                                                    |
| 11/5  | .1   | AD   | Exchange of emails with Mr. Rabin concerning:  the payment details of the JC Anderson settlement check to the Debtor, and the payment details (for the payoff of the Chase secured indebtedness). |
| 11/7  | .1   | AD   | Draft an email to Ms. Alcala, concerning the payoff of the Bank's claim tomorrow.                                                                 |
| 11/11 | .3   | AD   | Telephone call with Mrs. Alcala to discuss salary issues, and the consequent need for the creation of tax and tax withholding compliance mechanisms from the DIP. |
| 11/11 | .3   | AD   | Draft a letter to Mr. Rabin, transmitting the payoff check.                                                                                       |
| 12/5  | .3   | AD   | Draft an email to Mrs. Alcala, detailing the information which will be needed to facilitate the collection of the AR from the remaining general contractors. |
| 12/10 | .5   | AD   | Telephone call with E. Alcala.  Go through the entire to-do list with her, and receive authorizations to move forward.                           |
| 12/13 | .4   | AD   | Several telephone discussions with Mrs. Alcala re: the things we would like to accomplish today with respect to the case and preparations for future actions, as well as our discussions with Ms. Krivanek concerning AR collections & cet. (.2); later, meet with Mrs. Alcala, and go over the papers that she delivered (.2). |
| 2/10  | .3   | AD   | Telephone call with Ms. Alcala regarding the pending matters - the motion to reject, the Omnibus Objection (and the information we would like her to obtain concerning the employment relationship of the claimants) and the Bear and Paschan receivables (.3); draft emails to Mrs. Alcala, sending her digital copies of the documentation that we discussed and would ask her comments on (***no charge for this***). |
| 2/13  | .2   | AD   | Telephone call from E. Alcala to discuss the records that she sent us on the IAI and WE O'Neil contract claims, as well as the information on the last paychecks of the Nunez claimants. |
| 3/6   | .1   | AD   | Review and immediately reply to emails received from Mrs. Alcala concerning the contact from BOA, and then follow up those emails with a call to the BOA officer who contacted Mr. Alcala, with an urgent message concerning the debtor. |

**Exhibit B - Page 5**
**Time Charges by Category**
Date    Time    Code    Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 3/19 | .1 | AD | Telephone call to Ms. Alcala re:  today's activities, and the schedule (and to-do) for the weekend and next week's hearings. |
| 3/25 | .5 | AD | Meet with Mrs. Alcala to discuss and/or obtain signatures on the Nunez agreement, the Gallant agreement, the Paschen lien release, and the Paschen check. |
| 4/10 | .1 | AD | Telephone call to and later from Ms. Alcala, to touch base on open matters. |
| 4/11 | .1 | AD | Telephone call from Mrs. Alcala.  Inquire about the Bear waivers (and inform her of our receipt of the Bear check), discuss the best way to get the IAI information for the lien waivers, and inquire about the BOA statement for March. |
| 4/29 | .6 | AD | Telephone call with Mrs. Alcala re:  progress on yesterday's to-do list and related issues (.2); meet with Mrs. Alcala and run through the employment tax returns, the recent correspondence from the UST and the labor union and funds, and related issues (.4). |
| 4/30 | .1 | AD | Telephone Mr. Kier, who represents Wessels Sherman (an unsecured creditor) to find out why the notice we recently sent the firm at the address noted in its proof of claim came back "return to sender." |
| 5/12 | .4 | AD | Telephone call from E. Alcala re:  the IRS/FUTA statement that she received, the status of the IRS claim in the case, Bulley & Andrews, and the meaning and import of the Court's decision on the Motion to Reject the CBA. |
| 5/14 | .2 | AD | Telephone call from E. Alcala re:  the completion of the 2013 form 1040S return for the Debtor, the Bulley & Andrews settlement, and other issues (.2); cause the April 2014 operating report to be electronically filed (no charge for this). |
| 5/20 | .5 | AD | After reviewing Mrs. Alcala's emergency email and its attachments (concerning an IRS summons to Chase, to determine potential responsible parties for the debtor), place a call to our IRS contact (no charge for this); later, telephone call from Agent Linda Merritt and discuss the practical elements of launching a responsible party investigation and assessment on an IRS claim which promises to be paid in full in about seven weeks, and also, the question of whether the issuance of a notice of assessment of a penalty is covered by the section 362(a)(3) exceptions (.3); telephone Mrs. Alcala to let her know what is going on, and to not worry about it (.2). |

**Exhibit B - Page 6**
**Time Charges by Category**
**Date   Time   Code   Description**

Hours In Category: 13.3      @ $300.00 per hour                    $  3,990.00


## AR1 - JC Anderson


8/6    1.3    AR1    Review email received from Mr. Powers (of JC Anderson) and send a
carefully worded reply (.2); read and take notes on the 13 page agreement
which we received from Mr. Powers, which governs JC Andersen's
obligations with respect to amounts owed to the Union pension and
welfare funds, on projects with JC Anderson (1.0); draft an email,
concerning some data which we would like Ms. Alcala to pull with respect
to the JC Anderson jobs (.1).

8/12    .1    AR1    Review and reply in some detail to Mrs. Alcala's emails concerning the
gross accounts receivable on the several open matters with JC Anderson.

8/15    3.0    AR1    Review the backup from the Audit and from the many emails sent by and
between the Pension Funds and JC Anderson, to arrive at the total AR, by
job, and total deductions, by job, encapsulated into a spreadsheet which
will be an exhibit to the settlement motion (1.2); telephone call from Greg
Eichorn, who represents JC Anderson, to discuss the settlement structure
(.2); draft a settlement agreement (1.2); draft an email to the settling
parties, concerning the settlement agreement (.4).

8/19    .1    AR1    Telephone call from Greg Eichorn (who represents JC Anderson)
concerning his comments on the settlement agreement, the need for final
invoices on two of the eight jobs and related issues.

8/20    .8    AR1    Telephone call from Greg Eichorn re: JC Anderson's comments to the
settlement agreement (.2); telephone call with Mrs. Alcala re same (.1);
later, forward the email received from Mr. Eichorn to Mrs. Alcala (*no
charge for this*); revise the settlement agreement, to incorporate the
changes requested by JC Anderson (.4); draft an email to counsel to JC
Anderson, the Funds and Chase, concerning the revised draft of the
agreement (.1).

8/21    .7    AR1    Telephone call to Mr. Eichorn (counsel to JC Anderson) regarding to the
release issue (.2); later, telephone call with Mrs. Alcala re same (.1); after
very briefly reviewing an email received from Mr. Eichorn with suggested
language, revise version 2 of the agreement to accommodate Eichorn's
wishes, and prepare a comparison draft (.3); draft an email transmitting the
agreement (v3) and the redline to v2 to Ms. Krivanek, Mr. Eichorn and
Mr. Rabin (***no charge for this***); review Ms. Krivanek's email from late

**Exhibit B - Page 7**
**Time Charges by Category**
Date   Time   Code   Description

|       |      |      | this afternoon, with her comments on the settlement agreement (.1). |

8/22    .4    AR1    Draft a fourth and hopefully final draft of the settlement agreement.

8/23    .1    AR1    Initiate or receive responses to a flurry of emails (x7) directed to the various parties, all designed to secure everyone's signature on the settlement agreement so that we may move the matter to the Court.

8/26    .1    AR1    Telephone call from Mrs. Alcala, inquiring about the progress on the JC Anderson agreement.

8/27    .4    AR1    Respond in detail to two emails received from Fund counsel, the first, which had questions about the JC Anderson exhibit A, and the second which concerned another account debtor (Leopold)(.3); receive and respond to about 4-5 other emails, culminating in the Pension Funds' sign-off on the JC Anderson agreement (.1).

9/3    1.8    AR1    Review, and briefly respond to Mr. Rabin, who transmitting the final signature that we needed to get the proceedings rolling on the JC Anderson settlement (.1); draft a settlement motion relative to the JC Anderson transaction (1.6); draft an email to the principal parties to the settlement concerning the settlement motion and the two likely hearing dates (.1).

9/4    .6    AR1    Further revisions to the motion and the other documents which must accompany it, including orders, notices and related documentation, including the affidavit to be supplied by Mrs. Alcala.

9/6    .1    AR1    Draft an email to Mrs. Alcala, attaching her affidavit and providing some comments concerning the timing and need for that document.

9/9    2.1    AR1    Telephone call with Mrs. Alcala re: her approval of the form of the JC Anderson affidavit (.1); further and final revisions to the motion to settle with JC Anderson (1.3); prepare a notice of motion and a service list/matrix comprised of the 20 largest creditors for that motion (.5); prepare a proposed order for the motion (.2); attend to the electronic filing of the motion (***no charge for this***); send courtesy copies of the motion and order to the Funds, JC Anderson, Mr. Kelley and Mr. Rabin (representing the Bank)(***no charge for this***).

10/16    .3    AR1    Telephone call to Mr. Daniel Budorick (who represents JC Anderson) concerning: implementation of the agreement (.1); draft an email to Mr. Budorick re same (.2).

**Exhibit B  -  Page 8**
**Time Charges by Category**
**Date    Time    Code    Description**

10/21    .1    AR1    Another call to Mr. Budorick re: whether his client needs documentation other than the mechanics' lien release before it will consummate the sale, and whether, if additional documentation is needed, precisely what it is that his client is asking for (.1); telephone call to Ms. Alcala re same (leave message, no charge).

10/22    .3    AR1    Telephone call with Ms. Alcala re what needs to be done, on her part, to set up our further efforts to encourage JC Anderson to proceed as agreed.

10/24    .2    AR1    Draft an email to Mr. Budorick, to encourage him to encourage his client to follow up on the settlement of the JC Anderson AR account.

12/4    .5    AR1    Review the information on hand concerning the amounts due from the remaining general contractors (.3); draft a form of letter to those generals (urging them to settle up, in the manner used for the other three major accounts (.2).

1/14    .1    AR1    Review the lien release form sent by Pepper; review the Funds' contact sheet and analysis of the Debtor's account debtors.

1/15    1.0    AR1    Analyze the AR trial balances for the remaining amounts due to the Debtor, as well as the amounts shown as due to the Funds, per the Audit and also per the spreadsheet which Ms. Krivanek sent us yesterday (there are differences).  Make note of those AR accounts where there are not pension fund claims, and the many more where there are pension funds claims without a corresponding amount payable.  All of this is in preparation for the sending of a letter to the remaining account debtors (who owe more than $5,000.00 to the Debtor)(.9); scan and email the analysis to Mrs. Alcala (no charge for this); several short telephone calls with E. Alcala re same (.1).

1/16    3.4    AR1    Telephone call with E. Alcala concerning the AR analysis (.3); draft a detailed email to Ms. Krivanek concerning the discrepancy (on her spreadsheet) on the amount payable to the Fund on the IHC job, and also, concerning the terms under which the Debtor may agree to a modification and assumption of the CBAs (.2); revise the previously drafted form letter to begin the process of making them individualized to the following account debtors: Allegiance Construction, Bear Construction, Berglund Construction, Bulley & Andrews, FH Paschen, Gallant Construction, IHC Construction, Interior Alterations, Krause Construction, MV Franks, Midland Frantz, Novak Construction, Pacific Construction and WE O'Neil (2.8); briefly telephone Ms. Krivanek to make sure that we are in agreement on the Fund principal due on the jobs which involve that

**Exhibit B  -  Page 9**
**Time Charges by Category**
Date    Time    Code    Description

|  |  |  |  |
|---|---|---|---|
|  |  |  | contractor, and then briefly telephone Ms. Alcala to let her know of my discussion with Ms. Krivanek (.1). |
| 1/21 | .6 | AR1 | Prepare a written analysis that can be used, not only to chart progress on the AR collections, and to respond to contractor calls as they occur, but which can also be used as a plan or disclosure statement exhibit (.5); review and then respond to the email received from Novak, concerning their AR to the Debtor (.1); forward the Novak information to Mrs. Alcala (***no charge for this***). |
| 1/23 | .1 | AR1 | Exchange three emails with Mr. Pounders (Novak) re:  payments of the relatively small AR ($3,678.00) which the Debtor has with Novak, and the preferred lien waiver forms relative to that general contractor. |
| 2/11 | .8 | AR1 | Update the AR analysis (.2); review a number of the smaller AR numbers and the responses we received from those contractors (.3); send separate emails to Ms. Alcala with suggestions concerning the ICH, Novak and WE O'Neil receivables (.3). |
| 4/23 | .4 | AR1 | Update the cash flow projections, based on the deals recently made and the current numbers. |
| 5/22 | .1 | AR1 | Draft separate emails to Mrs. Alcala re:  followup on the Midland Frandz and the Novak receivables. |
| 5/23 | .2 | AR1 | Forward several emails to Mrs. Alcala, relative to the collection of the Novak receivable (.1); forward an email to Ms. Krivanek concerning the open $29,417.00 Berglund receivable, and seeking to enlist her aid in approaching her contact at the company about getting the matter resolved. |

Hours In Category:  19.7        @ $300.00 per hour                          $   5,910.00


### AR2  -  Pepper Construction

| 11/1 | .1 | AR2 | Telephone call to Shawna Oertley (at Pepper) to ask about getting a copy of the master subcontract agreement between the debtor and Pepper. |
|---|---|---|---|
| 11/7 | 1.0 | AR2 | Review the audit records to determine the appropriate deduction amount (for Pension Fund Contributions) to be made in connection with the Pepper settlement, and also, to determine which excerpts of the audit should be used as exhibits to the agreement (.1); review the master subcontract agreement relative to the Pepper job, and identify those |

**Exhibit B - Page 10**
**Time Charges by Category**
Date   Time   Code   Description

provisions which will need to be referenced in the agreement and motion, which concern the Debtor's obligations to pay its union benefits current, and the indemnification and default rights of Pepper in the event that this is not done (.3); write a first draft of a settlement agreement for Pepper (.5); draft an email, transmitting a copy of the agreement to Pepper and to the Funds' counsel (.1).

11/8   1.5   AR2   Review, and briefly reply to Ms. Krivanek's email concerning the Pepper agreement, and do the same, with a more detailed response, to the request of Pepper's representatives for an indemnity as a part of the compromise (.2); review and revise the drafts of the motion, notice, affidavit and order prepared yesterday for the Pepper transaction (.9); prepare a declaration of electronic filing (for the affidavit attached as Exhibit 2 to the motion)(.1); revise, to a version 2, the Settlement Agreement which is the subject of the Motion to Compromise with Pepper Construction (.2); draft an email transmitting a copy of version 2 of the Settlement Agreement to representatives of Pepper and the Funds, with some comments to explain why certain things were revised (.1).

11/9   .1   AR2   Telephone call with Ms. Alcala re: the collections made by the Funds from Pepper with respect to the alleged Impressions work on the Palos job.

11/10   .1   AR2   Exchange of emails and documentation with Mrs. Alcala relative to the offset claim which is being asserted by Pepper.

11/11   1.4   AR2   Draft an email to Mr. Sullivan, at Pepper, concerning the deductions from the amounts payable to the Debtor based on the Funds' grievance for work done by Impressions on unrelated projects (.5); telephone call from Ms. Krivanek, concerning the confidentiality agreement in place between the Funds and Pepper, and some scant information that she felt that she could provide (in light of the confidentiality agreement (to which the Debtor had no knowledge and was not a party)) to explain why Pepper is asserting the $1,874.93 offset from the amount it owes to the Debtor – and also briefly discuss a similar situation which is brewing with another account debtor of the Debtor, namely, Leopardo (.2); telephone call with Tim Sullivan concerning the situation and a resolution of it (.2); telephone call to E. Alcala re the settlement of the settlement with Pepper (.1); revise the settlement agreement to reflect the settlement of the settlement (i.e., the "Offset")(.4).

11/12   .7   AR2   Revise the previously drafted motion, affidavit and order, to reflect the settlement of the settlement (.6); draft an email to Ms. Alcala, transmitting those documents to her, with the settlement agreement, for her review and

**Exhibit B - Page 11**
**Time Charges by Category**
Date   Time   Code   Description

signature (.1).

| 11/13 | .7 | AR2 | Draft a hurry-up email to the parties to the Pepper settlement, suggesting that they get us the signature pages (.1); after receiving and very briefly reviewing the signature page received from the Funds' counsel, talk briefly by phone with Mrs. Alcala, to suggest that she drop by and sign the papers (.1); two more emails, and two more phone calls, to Pepper representatives, to encourage them to send a signature page in time for us to get the motion filed and noticed today (.1); at 4:00 p.m., after receiving the final signature, do the final electronic assembly of the motion and its constituent parts, make the signed agreement into an exhibit to be attached to the proposed order (as is the court's preference, as noted at the hearing on the JC Anderson settlement), and make a few adjustments to the matrix (and corresponding changes to the service list attached to the notice of motion) to reflect the updated addresses drawn from recent claim filing activity (.4); cause the motion to be electronically filed (*no charge for this*); cause the motion to be served on the 15 parties who are to receive hard copies of the materials, and the other 5 or so parties who will receive electronic copies of same (*no charge for this*). |

| 12/10 | .3 | AR2 | Draft a letter to the Pepper staff, transmitting the original signature page of Mrs. Alcala (on the settlement agreement) and providing payment instructions. |

| 12/29 | n/c | AR2 | Draft an email to Pepper staff re: an inquiry concerning the payment which is now overdue (no charge for this). |

Hours In Category: 5.9      @ $300.00 per hour                   $   1,770.00


### AR3 - Leopardo Companies

| 11/13 | .3 | AR3 | Exchange emails with Mr. Oetter, a representative of Leopardo, concerning the backup to the subcontract with the Debtor (.1); draft an email to Mrs. Alcala re same, asking for confirmation of the factual elements of the materials sent by Leopardo (.1); later, briefly discuss the Leopardo receivable, and the difference between their records and the Debtor's records, relative to the account receivable (.1). |

| 11/14 | .9 | AR3 | Review the backup provided by the Debtor concerning the Leopardo AR (.4); compare that with the documentation provided by Leopardo earlier this week (.2); draft an email to Mr. Oetter (from Leopardo), transmitting some of the Debtor's source documents and inquiring (in a nice way) |

**Exhibit B  -  Page 12**
**Time Charges by Category**
Date   Time   Code   Description

about the $4,470.00 discrepancy in the amount due to the Debtor (.3).

11/15   .3   AR3   Review the email and the explanation of the Leopardo staff for why the AR is $2K lower than the Debtor's January 2013 invoice (.1); telephone call with Mr. Oetter (from Leopardo) re same (.1); draft an email to Mrs. Alcala re: the Leopardo deal, and the need for her approval and our recommendation (.1).

11/18   .6   AR3   Draft a settlement agreement for Leopardo (.3); draft an email to the Leopardo and Fund representatives, concerning that agreement and requesting a copy of the Master Subcontract Agreement from Leopardo (.1); later, telephone call from Mr. Oetter re: some changes he would like to make to the Agreement (.2).

11/19   .7   AR3   Review the master subcontract agreement with Leopardo, to satisfy myself that it really does provide for indemnification and offset rights, in the event of a non-payment or under-payment of the pension fund contributions due for the Debtor's former union work force (.4); draft a second draft of the settlement agreement with Leopardo, and a redline, and an email to Mr. Oetter and Ms. Krivanek, transmitting those documents to them for their consideration (.2); after reviewing the agreements as signed by the Funds and Leopardo, send an email to Ms. Alcala, transmitting the documents and requesting certain actions (.1).

11/20   2.5   AR3   Draft the motion, notices, order and other materials associated with the Leopardo settlement (2.3); several telephone calls with Mrs. Alcala re her affidavit and the motion itself (.2).

12/12   .2   AR3   Draft a letter to the Leopardo staff, transmitting the original signature page of Mrs. Alcala (on the settlement agreement) and providing payment instructions.

12/19   n/c   AR3   Forward the lien release documents to Mrs. Alcala with a short commentary (no charge for this).

12/27   .1   AR3   Draft a transmittal letter for the lien waiver for Leopardo.

Hours In Category:  5.6        @ $300.00 per hour                    $   1,680.00

**Exhibit B  -  Page 13**
**Time Charges by Category**
**Date   Time   Code   Description**

### AR4  -  Bear Construction

| Date | Time | Code | Description |
|------|------|------|-------------|
| 1/24 | .1 | AR4 | Review and reply to an email from Bear Construction re Bear's AP to the Debtor (.1). |
| 1/27 | .5 | AR4 | Draft a settlement agreement for Bear Construction (.5); draft an email transmitting the agreement to Bear (through its counsel) and to the Funds' counsel (no charge for this). |
| 1/30 | n/c | AR4 | Draft an email to Ms. Krivanek, asking her about her client's signature on the Bear settlement agreement (***no charge for this***). |
| 2/3 | .1 | AR4 | Exchange separate emails with counsel for Bear and for FH Paschen, re progress on the resolution of the AR amounts. |
| 2/4 | .1 | AR4 | Respond in some detail to an inquiry by Bear's counsel about whether there are any sub-subcontractor claims or wage amounts payable to any union employees of the Debtor (independent from the benefits claims asserted by the Funds). |
| 2/7 | .1 | AR4 | Exchange a round of emails with Bear's counsel and Ms. Krivanek, concerning the signed Bear settlement agreement. |
| 2/12 | .9 | AR4 | Draft the motion, notice and proposed order relative to the settlement with Bear Construction (.9); cause the motion to be electronically filed (***no charge for this***). |
| 3/6 | .1 | AR4 | Draft a detailed email to Mr. Rein, transmitting a copy of the settlement order and suggesting a process for closing the settlement. |
| 3/13 | .1 | AR4 | Exchange multiple emails with Mrs. Alcala re:  the form and content of the Bear mechanics' lien waivers. |

Hours In Category:  2.0          @ $300.00 per hour                    $     600.00

### AR5  -  FH Paschen, SN Neilsen

| Date | Time | Code | Description |
|------|------|------|-------------|
| 1/24 | .1 | AR5 | Review the response received from Mr. Schutt (at FH Paschen) concerning our inquiry about the AR, and then draft a detailed response. |
| 2/7 | .1 | AR5 | Draft an email to Mr. Schutt (FH Paschen) concerning the agreed numbers on the AR and Fund payment. |

**Exhibit B  -  Page 14**
**Time Charges by Category**
Date    Time    Code    Description

2/11    .5    AR5    Review the backup materials provided by the general contractor on the FH
                     Paschen jobs (.2); draft a settlement agreement for FH Paschen (.3); draft
                     an email to Mr. Schutt (for FH Paschen) transmitting the agreement to her
                     and to Ms. Krivanek for their review (no charge for this).

2/19    .2    AR5    After reviewing the signed settlement agreement from Paschen, exchange
                     emails with Ms. Krivanek and with Ms. Alcala, soliciting signatures (.1);
                     later, telephone call from Mrs. Alcala re same (.1).

2/25    .2    AR5    Go through the materials to confirm that the Funds have not actually
                     signed off on the FH Paschen settlement agreement, and then send an
                     email, transmitting the Agreement with the other two signatures to her,
                     with a request for signature.

2/26    .5    AR5    Prepare a motion, notice and proposed order relative to the FH Paschen
                     settlement (.5); cause those materials to be electronically filed (***no charge
                     for this***).

3/17    .1    AR5    Exchange five emails (back and forth) with counsel for Paschen/Nielsen
                     and Mrs. Alcala re:  payment terms, mechanics' lien release form issues
                     and closing logistics.

3/20    .1    AR5    Review the order approving the Paschen/Nielsen settlement and then draft
                     a moderately detailed email to Mr. Schutt re the closing process.

Hours In Category:  1.8        @ $300.00 per hour                    $      540.00


**AR6  -  Midland Frantz**

2/11    .3    AR6    Draft a settlement agreement for Midland Frantz (.3); draft an email to Ms.
                     Ressler (for Midland Frantz) transmitting the agreement to her and to Ms.
                     Krivanek for their review (no charge for this).

Hours In Category:    .3        @ $300.00 per hour                    $       90.00


**AR7  -  Interior Alterations**

1/17    .1    AR7    Return call of Nancy Mattingly (of IAI) and later exchange emails with her
                     concerning the Debtor's AR records, and the corresponding records of IAI.

**Exhibit B  -  Page 15**
**Time Charges by Category**
Date    Time    Code    Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 1/20 | .1 | AR7 | Review the IAI back-charge information received today from Ms. Mattingly. |
| 2/11 | .7 | AR7 | Review the backup for the Interior Alterations job (.4); prepare an agreement for Interior Alterations (.3). |
| 2/13 | .1 | AR7 | Review the backup information on the IAI receivable; draft an email, transmitting the backup to Ms. Mattingly and asking her to confirm the amounts due. |
| 2/18 | .2 | AR7 | Return call of N. Mattingly (Interior Alterations) to discuss the process of getting the deal approved, including the timing of payment and the nature of the releases to be received. |
| 2/19 | .2 | AR7 | Telephone call from Ms. Mattingly, and explain to her exactly how the release process works (with the general release given in the agreement, plus the specific written release to follow)(.1); after reviewing the signed settlement agreement from Interior Alterations, exchange emails with Ms. Krivanek and with Ms. Alcala, soliciting signatures (.1). |
| 2/25 | .5 | AR7 | Prepare a motion, notice and proposed order relative to the Interior Alterations settlement. |
| 3/20 | .1 | AR7 | Review the order approving the IAI settlement and then draft a moderately detailed email to Ms. Mattingly re the closing process. |

Hours In Category:  2.0          @ $300.00 per hour                    $      600.00


**AR8  -  Bulley & Andrews**

| Date | Time | Code | Description |
|------|------|------|-------------|
| 2/13 | .1 | AR8 | Draft an email to Mr. Hellerman (Bully & Andrews) to confirm the terms of the settlement. |
| 2/14 | .3 | AR8 | Draft a settlement agreement for Bully & Andrews (.3); draft an email, transmitting the agreement to the parties for their review and signature (no charge for this). |
| 2/23 | .5 | AR8 | Prepare a motion, notice and proposed order relative to the Bulley & Andrews settlement (.4); draft an email to Mr. Hellerman, inquiring about Bulley & Andrew's signature page, which we would like to see (.1). |

**Exhibit B  -  Page 16**
**Time Charges by Category**
Date    Time    Code    Description

| | | | |
|---|---|---|---|
| 3/4 | .3 | AR8 | Telephone call from Paul Hellerman (Bulley & Andrews) who called to explain why he was now unwilling to do what he had agreed to do (in terms of the settlement of the AR) last month; explain the facts of life to him (.2); telephone call to Ms. Krivanek re the call received from Hellerman and some suggestions about how to respond (.1). |
| 5/12 | .2 | AR8 | Draft an email to the representatives of Bulley & Andrews, urging them to sign off on the settlement agreement which we sent them last February. |
| 5/14 | .5 | AR8 | Respond (by email) to a question which the Bulley & Andrews rep had to the settlement agreement (.1); revise the motion to approve the settlement with Bulley & Andrews, which was first prepared several months ago (.2); revise the notice of motion, as well as the service list (the lists of electronic notice parties and the list of who, among the remaining creditors, are among the 20 largest has changed in view of the Nunez settlement, which required an adjustment of the service list)(.2); cause it to be electronically filed (no charge for this). |

Hours In Category:  1.9          @ $300.00 per hour                          $      570.00

## AR9  -  Gallant Construction

| | | | |
|---|---|---|---|
| 3/7 | .5 | AR9 | Telephone call from David Buetow (attorney for Gallant) concerning our January 2014 letter to his client; explain how the settlement and the releases work (.2); draft a proposed settlement agreement for his review (.3); transmit the agreement to Mr. Buetow with some explanatory information concerning the process and timing (no charge for this). |
| 3/20 | .2 | AR9 | After very briefly reviewing the email from Mr. Buetow, revise the contract (.1) and then draft an email back to him (with copies to Ms. Krivanek) transmitting the corrected contract draft and giving him an answer with respect to the use of the lien waiver form that he would like the debtor to sign (.1). |
| 3/24 | .2 | AR9 | After looking through all of the recent emails for Chicago Construction and not finding a Gallant agreement signed by the trust (.1), draft an email to Ms. Krivaneck, asking her to make sure that her client signs the agreement and returns it to us so that we can file it before we leave town this Thursday afternoon (.1). |
| 3/25 | .7 | AR9 | Draft a motion for approval of the Gallant settlement, with the accompanying notice and order (.7); cause the motion to be electronically |

**Exhibit B  –  Page 17**
**Time Charges by Category**
Date    Time    Code    Description

|  |  |  | filed (no charge for this); draft an email to Mr. Buetow concerning the filed motion and the hearing date (no charge for this). |

| 4/30 | .2 | AR9 | Draft an email to Mr. Buetow, transmitting a conformed copy of the order entered on the Gallant settlement and providing some details for getting the matter completed and closed. |

Hours In Category:  1.8        @ $300.00 per hour                    $      540.00


## AR10  –  Krause Construction

| 4/10 | .2 | AR10 | Telephone call from Kevin Murninghan, who represents Krause Construction, and explain the settlement process to him. |

| 4/11 | .4 | AR10 | Draft a settlement agreement for Krause (.3); draft an email to Krause's counsel, and to Ms. Krivanek, concerning the settlement (.1). |

| 4/22 | .4 | AR10 | Briefly revise the settlement agreement for Krause (.2) and then draft an email to Krause's counsel, explaining why the modification to the release provision which he requested required further adjustment (.2). |

| 4/28 | .1 | AR10 | Return last Friday's call from Mike Murray, one of the attorneys for Krause Construction. |

| 4/29 | .2 | AR10 | Telephone call to Ms. Krivanek re:  getting the Krause deal signed by the Administrator, getting the Bulley deal to move forward, the status of the plan and the likelihood of a decision on the Motion to Reject this week. |

| 4/30 | .9 | AR10 | Draft the motion for approval of the Krause settlement, together with the notice and proposed order (.8); draft an email to Ms. Krivanek, to inform her that we are ready to file the motion, subject only to receipt of a signature from her client (no charge for this); attend to the electronic filing of the motion (no charge for this); draft an email to Mr. Murray, transmitting a conformed copy of the motion and providing some detail concerning the May 21 hearing (.1). |

| 5/23 | .2 | AR10 | Draft a detailed email to Krause's counsel, transmitting a copy of the settlement order and suggesting a process for closing the settlement. |

Hours In Category:  2.4        @ $300.00 per hour                    $      720.00

**Exhibit B  -  Page 18**
**Time Charges by Category**
**Date   Time   Code   Description**

### AR11  -  WE O'Neil

| 2/13 | .4 | AR11 | Review the WE O'Neil backup (.1); draft a response (by email) to Mr. Sikich (from O'Neil) explaining why we believe that he is mistaken about whether there is an amount due to the Debtor from his company, and asking him to do certain things to verify our information and records (.3). |

| 4/11 | .2 | AR11 | Draft an email to Mr. Russell (WE O'Neil) in an effort to try to move the stalled settlement process forward. |

| 5/22 | .7 | AR11 | Draft a carefully worded email to the President of WE O'Neil Construction, urging him to act on the settlement proposals which we have previously sent to him (.4); draft a second email to Ms. Krivanek, on the subject of WE O'Neil and the Debtor's two other five-figure accounts receivable (.3). |

| 5/27 | .5 | AR11 | Telephone call from Lance Hornady (from WE O'Neil) re settlement of the open amount payable at $4,500.00 (.2); telephone call to Mrs. Alcala, to obtain approval for this settlement (.1); draft a settlement agreement for the O'Neil settlement (.2); circulate it to the parties by email(no charge for this). |

Hours In Category:  1.8          @ $300.00 per hour                    $     540.00

### BAR  -  Bar Date

| 9/12 | .2 | BAR | Draft the notice of bar date and calculate the applicable time periods (.1); begin to draft a motion to set a bar date (.1). |

| 9/13 | .6 | BAR | Complete the draft of the bar date motion and the related notice (.6); cause the motion to be scheduled and electronically filed (***no charge for this***); draft emails sending courtesy copies of the bar date motion to Mrs. Alcala and to Chase's attorney, Mr. Rabin (***no charge for this***). |

| 9/26 | .6 | BAR | Prepare a master matrix (for use in the bar date notice, as well as for an exhibit to the certificate of service to be filed thereafter (.2); prepare the form of certificate of service for the bar date notice (.2); prepare a form of proof of claim to send to creditors with the Court's order setting bar date (.1); attend to the clerical task of reproducing 202 copies of the bar date order, the form proof of claim, the labels, the envelopes, etc. (no charge for this half-day task); on the ECF system, in creditor maintenance, add an alternate contact name and address for US Bank, at their Milwaukee, WI |

**Exhibit B  -  Page 19**
**Time Charges by Category**
**Date    Time   Code   Description**

location, in light of the return of mail from the PO Box indicating that the box has been closed (.1).

Hours In Category:  1.4          @ $300.00 per hour                        $     420.00

## CBA  -  Collective Bargaining Agreement

8/5    1.6    CBA    Review the statutory provisions which concern the rejection of collective bargaining agreements (.2); review the complaint and recent pleadings filed by the Laborers' Pension Fund, to identify those agreements which constitute executory agreements in the nature of collective bargaining agreements, which are subject to the procedures dictated by 11 U.S.C. §1113 (1.0); draft a letter to the Construction & General Laborers' District Counsel, Mr. Jorgensen (Pension and Benefit Plan administrator) and Ms. Krivanek (Fund Counsel) concerning the case filing and the Debtor's proposal to reject the collective bargaining agreement (.4).

11/12   .1    CBA    Exchange of three emails with Ms. Krivanek re:  identification of the agreements which were incorporated by reference into the short form collective bargaining agreement which the debtor signed in 2008, and later, the reasons why we are asking for the documentation (as in, the specific statutory requirements of section 1113).

12/9    .7    CBA    Review the 6 separate trust agreements related to the collective bargaining agreement which the Debtor signed with the construction local, which we received from Ms. Krivanek (.5); research: the binding effect of agreements to which the Debtor assumed, by signing the master agreement (.2).

12/10   .1    CBA    Review the claim filed by the Pension Funds.

12/10  1.2    CBA    Draft a first draft of a motion to reject the collective bargaining agreement.

12/11  2.2    CBA    Revise the motion to reject (1.8); draft the notice of motion (.1); draft a proposed order for the motion (.2); draft an email to Ms. Alcala concerning today's second (and hopefully final) draft of the motion to reject (.1); after receiving approval, cause the motion to reject to be electronically filed (***no charge for this***).

12/13   .2    CBA    Telephone call to Ms. Krivanek (returning her call) to discuss our motion to reject the collective bargaining agreement, the Funds' alleged

**Exhibit B  -  Page 20**
**Time Charges by Category**
**Date    Time    Code    Description**

|  |  |  | withdrawal liability claim and related issues. |

1/9    .1    CBA    Forward a copy of the Funds' objection to the motion to reject to Mrs. Alcala by email, and with some short comments.

1/21    1.5    CBA    Telephone call to Christina Krivanek re: agreement on the cba, and the real timeline for getting approval from the union and the funds (.2); review those few cases which considered section 1113 of the Code in the context of a liquidating chapter 11 case, and specifically, in a case where the objective was to merely liquidate assets, as opposed to the sale of the debtor's business as a going concern (1.2); later call to Ms. Krivanek, taking her up on her suggestion to extend the briefing schedule and the hearing date (.1).

1/22    1.5    CBA    Telephone call to Mrs. Alcala re: the extension request relative to the CBA motion – the reasons why it s a good idea (.1); check the Pension Funds' proof of claim against the Judgment (just to make sure that we are not missing anything and that there are no errors in the amounts sought, etc.)(.4); draft the motion to extend, the notice and the proposed order (1.0); cause the motion to be electronically filed (no charge for this).

1/27    .1    CBA    Review the email sent by the Fund Counsel re the additional requirement requested by the Fund trustees; immediately forward that email to the Alcalas with some brief comments.

1/28    5.7    CBA    Telephone call with Ms. Krol (the Alcalas' personal counsel) concerning the additional stipulation requested by the Fund trustees (.1); send an email to the Fund counsel re same, followed by a phone call with Ms. Krivanek (Fund counsel) concerning the understanding about the dischargeability of the Alcalas' obligation to stay out of the construction business (.1); draft a proposed order on the CBA, to accommodate the new points raised by the Funds and by counsel to the Alcalas, whom the Funds have now brought into the controversy (.7); in view of the breakdown in the discussions over an agreed order permitting a modified (and obligation free) assumption of the CBA, recommence work on the preparation of a reply brief, starting with a review of the Pension Funds' objection and the reported decisions on section 1113 of the Code, as applied to liquidation cases (1.7); begin to write (3.1).

1/29    4.7    CBA    Prepare a rather detailed response to Ms. Krivanek's last email to us of 1/28, setting forth a legal analysis for her to consider (.4); complete the Reply (4.3).

**Exhibit B  -  Page 21**
**Time Charges by Category**
Date   Time   Code   Description

2/3    .2    CBA    Participate in a flurry of emails (eleven of them, to be precise) which concern two Citations issued in the district court suit (Funds v. Chicago Construction), in which our primary interest was to determine whether the Debtor was a party, directly or indirectly, to the citation requests.

Hours In Category:  19.9      @ $300.00 per hour                        $  5,970.00


### CT  -  Court Appearances

8/28   1.0    CT    Appear in court at our application for employment (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***).

9/25   1.5    CT    In court for 1.5 hours, for hearing on the motions to set a bar date, and to settle with JC Anderson and provide adequate protection to Chase Bank (this does not include travel time)(1.5); telephone Mrs. Alcala to inform her of the outcome of the hearing (no charge for this).

12/4   1.0    CT    Appear in court at our application to compromise with Pepper Construction (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***).

12/11  1.0    CT    Appear in court at our application to compromise with Leopardo Companies (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***).

12/18  1.0    CT    Appear in court at our application to reject all collective bargaining agreements to which the debtor is a party (***charge limited to one hour, although the actual time spent on this activity, with travel, was approximately 2.8 hours***).

1/15   1.0    CT    Appear in court on the Debtor's motion to extend exclusivity, and on the Funds' motion to treat their proof of claim as timely filed.

1/29   .5    CT    Appear at the motion to extend time to reply in support of Debtor's motion to reject all collective bargaining agreements.

2/5    1.0    CT    Attend the hearing on three matters: the objection to the IRS claim, the First Omnibus Objection, and the status hearing on the motion to reject all CBAs.

**Exhibit B - Page 22**
**Time Charges by Category**
Date    Time    Code    Description

| Date | Time | Code | Description |
|---|---|---|---|
| 3/5 | 1.0 | CT | Attend hearing on the settlement with Bear Construction (we capped this charge at 1.0 hours, although the actual time incurred, with travel time, was approximately 2.8 hours); draft an email to Mrs. Alcala, to let her know how things went in court today (no charge for this). |
| 3/12 | 1.0 | CT | Appear in court at the hearing on the Debtor's 1st Omnibus Objection to the claims of Nunez et al. (1.0)(we limited our charge for this service at 1.0 hour, although our actual time expenditure, with travel, was approximately 2.8 hours). |
| 3/19 | 1.0 | CT | Appear in court at the hearing on the IAI and FH Paschen/SN Nielsen settlements (we limited our charge for this service at 1.0 hour, although our actual time expenditure, with travel, was approximately 2.8 hours). |
| 3/26 | 1.0 | CT | Attend hearing on the Nunez claim objection (we have capped this charge at 1.0 hour, although the actual time incurred, with travel, was approximately 2.8 hours). |
| 4/23 | 1.0 | CT | Appear in court on the following matters:  the objection to the Nunez claims, and the proposed settlement of those claims; the objection to the IRS claim; and the settlement of the Gallant receivable (we limited this charge to one hour, although the time incurred, with travel, was approximately 2.8 hours). |
| 5/14 | 1.0 | CT | Appear in court on the scheduling motion (relative to the Plan of Liquidation)(1.0)(this charge was capped at 1.0 hours; the actual time incurred, with travel, was approximately 2.8 hours). |
| 5/21 | 1.0 | CT | Appear in court on the continued objection to the IRS claim (which is moot in light of the recent amendment to the claim, and the motion for approval of the settlement with Krause Construction, and on the general status of the case (1.0)(this charge is limited to one hour, although the action time incurred, with travel, was approximately 2.8 hours). |

Hours In Category: 15.0        @ $300.00 per hour                    $   4,500.00

### EMP - Employment of Professionals

| Date | Time | Code | Description |
|---|---|---|---|
| 8/6 | 2.5 | EMP | Draft our employment motion (2.0) and the related affidavit (.5)(As an explanatory note, our practice is to include a narrative in our employment motions to explain what the case is about and, in cases like this where we have represented affiliated parties, why it is that we believe that we are disinterested.  In this case, the explanatory notes on these subjects were |

**Exhibit B  -  Page 23**
**Time Charges by Category**
Date    Time    Code    Description

|  |  |  | more detailed than is typical, and consequently, this particular motion and its supporting affidavit took a bit more time than is usual to prepare). |

| 8/7 | .7 | EMP | Revise the employment motion and the affidavit (.5); prepare the notice (.1); prepare the form fillable order (.1). |

| 8/7 | .5 | EMP | Briefly review (no charge for this) and then reply in detail to an email received from the Funds' attorney concerning our employment application. |

Hours In Category: 3.7        @ $300.00 per hour                         $  1,100.00

### EXL  -  Exclusivity (to file Plan)

| 1/5 | .9 | EXL | Draft a motion for an extension of the exclusive periods to file a plan and seek acceptances thereof. |

| 1/7 | .5 | EXL | Telephone call to Mrs. Alcala to discuss the exclusivity motion, including what it is, what it does and why we are filing it now (.2); revise the motion (.3). |

| 1/8 | 1.0 | EXL | Final revision to the Exclusivity Motion (.6); draft the notice for the motion (.2); draft a proposed order for the motion (.2). |

| 1/14 | .1 | EXL | Telephone call to Ms. Krivanek, to check to see whether her client agrees to the extension motion (for exclusivity) and also discuss the information that the Funds have with respect to the Debtor's account debtors. |

| 5/1 | .2 | EXL | Update our research on current decisions on section 1121(e). |

Hours In Category: 2.7        @ $300.00 per hour                         $     810.00

### OB1  -  Objection to IRS Claim

| 9/30 | .2 | OB1 | Conference call with Mrs. Alcala and Mr. Velachek, IRS agent, concerning the over-estimated tax claim filed in the Debtor's case and related issues. |

| 9/12 | .1 | OB1 | Telephone call to Mr. Bill Gallagher's office (speak to Laura) re: getting copies of the final 941s filed for QI 2013 (which we will need for the IRS and probably the IDR), and also inquiring about whether their firm still has a retainer to do the Debtor's final 940 and 1120S returns. |

**Exhibit B  -  Page 24**
**Time Charges by Category**
Date    Time    Code    Description

12/26   1.1     OB1     Draft an objection to the IRS claim (1.0); forward a draft to Mrs. Alcala
                        (by email)(no charge for this); later, telephone call with Mrs. Alcala re the
                        claim objection (.1).

12/26   .4      OB1     Lightly revise the IRS claim objection, and then prepare the notice and
                        proposed order relative to that claim objection (.4); cause the objection to
                        be electronically filed (*no charge for this*).

12/28   .2      OB1     Revise the objection on the IRS claim.

1/30    .4      OB1     Telephone call from Miss. Harper (from the IRS) concerning the case and
                        the tax claim which needs to be amended (.2); review the several emails
                        sent from Mrs. Alcala, each transmitting a current employment tax return
                        (.2).

1/31    .5      OB1     Review the amended IRS tax claim (.1); later telephone call from Roger
                        Markley (IRS Counsel) concerning the claim objection, and inform him
                        that in light of the amended claim, the claim objection will probably be
                        moot (.2); draft a fax transmittal for the 4th Quarter 941 to Miss. Harper at
                        the IRS (.1); call Mr. Markley (IRS) after reviewing the IRS claim again to
                        let him know that given the $1,000.00 plug claim for income tax, we
                        would not dismiss the objection but would instead continue it to February
                        or March, by which time the company would have prepared and filed its
                        return for the year, and the amount, if any, of the income tax would then be
                        known (.1).

4/17    .3      OB1     Telephone call from Agent Merritt (IRS - Detroit) and inform her of the
                        status and history of the case, the issue of the 2013 income tax and the
                        status of the pending objection to the IRS claim in the case.

5/15    .8      OB1     Draft a letter which transmits an original copy of the Debtor's 2013 federal
                        income tax return, a copy of the Debtor's 2013 form 940 return, and a
                        copy of the last amended proof of claim filed by the IRS to Agent Linda
                        Merritt, with suggestions for the amendment of the IRS claim (.5);
                        telephone call with Agent Merritt concerning the amendment of the POC
                        (.2); meet with Mrs. Alcala, and briefly discuss the return and our letter to
                        the IRS Agent Merritt (.1).

Hours In Category:  4.0        @ $300.00 per hour                      $   1,200.00


**OB2  -  Objection to Nunez/Impression claims**

**Exhibit B  -  Page 25**
**Time Charges by Category**
Date    Time    Code    Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 12/9 | .3 | OB2 | Review claims 11 - 19, filed on or about December 6, 2013 in response to the bar date. |
| 12/27 | .5 | OB2 | Prepare an objection to the Nunoz plainiff claims (.5); forward a first draft of the objection to Mrs. Alcala, soliciting her comments (***no charge for this***). |
| 12/28 | 2.6 | OB2 | Revise the objection to the Nunoz claims (.5); telephone call with Mrs. Alcala re the objection (.1); review the case authorities cited in the motion, and the subsequent decisions which either supported or commented on those cited authorities (.6); further revisions to the objection (.8); draft the notice and proposed order, relating to the objection (.2); draft a proposed order for the objection (.2); telephone call with Mrs. Alcala re: authorization to file and her comments on the motion (.2); cause the objection to be filed (no charge for this). |
| 2/6 | .4 | OB2 | Review the response filed by the former Impressions employees to the First Omnibus Objection (.2); review the Court's prior decision in the Montalbano case (.2); telephone Ms. Alcala concerning the outcome of today's hearings (leave message - no charge for this). |
| 2/17 | 2.1 | OB2 | Telephone call to Mr. Kelley and his associate, Mr. Szabo, to inquire about the status of the state court lawsuit brought by the Impressions employees against the Debtor and its affiliate, Impressions (.3); research: cases which address the FLSA in the context in which it is presented here – as attempts to make a debtor liable for the wages earned by employees of affiliate companies (1.8). |
| 2/20 | .2 | OB2 | Telephone call from E. Alcala re: details concerning the idea we had for the settlement of the objection to the Impressions claimants. |
| 2/23 | 3.1 | OB2 | Prepare an affidavit for Mrs. Alcala, relative to the Nunez claims. |
| 2/24 | 4.2 | OB2 | Review the Nunez reply, and parse the facts that they actually plead in that response, relative to the joint operations of the companies (.3); meet with Mrs. Alcala to go over her affidavit, and discuss in detail what happened at the companies in the times which were critical to the issues in the Nunez case and claim (1.7); telephone Mrs. Alcala, to further discuss a few of the points which we discussed earlier today (.2); further research on the numerous legal issues (2.0). |
| 2/25 | 7.0 | OB2 | Create the 2nd draft of Mrs. Alcala's affidavit (2.8); write a Reply in support of the objection to the Nunez claims (4.2). |

**Exhibit B  –  Page 26**
**Time Charges by Category**
Date   Time   Code   Description

| Date | Time | Code | Description |
|------|------|------|-------------|
| 2/26 | 6.4 | OB2 | Revise the reply multiple times throughout the day (5.5); telephone call with E. Alcala concerning the reply and her affidavit (.2); later, telephone call from E. Alcala with a number of last minute changes to the Affidavit (.5); turn around version 4 of the affidavit, with a redline (.2); get authorization to file with Affidavit v4 (no charge) and do so (no charge). |
| 3/19 | .2 | OB2 | Telephone call from Mr. Ayala (returning my earlier call) and discuss settlement of the Nunez claims. |
| 3/20 | 1.9 | OB2 | Planning for the settlement of the Nunez claims, which mostly consists of updating the previously prepared chart of all claims and settlements, and then tinkering with various distribution options in the event of settlement with the Nunez claimants at various levels and with various attributes (1.7); send the draft to Mrs. Alcala for her review with some explanatory comments (.2). |
| 3/24 | 2.9 | OB2 | Prepare a spreadsheet concerning the settlement numbers for the Nunez claims (.7); draft an email, transmitting that spreadsheet to the Nunez counsel (.1); prepare a first draft of a settlement agreement for Nunez (1.8); telephone call with E. Alcala re same (.2); draft an email which transmits the agreement to counsel for Nunez for their comments, with the usual reservations (.1). |
| 3/25 | .9 | OB2 | Review the agreement, and catch a few things that need to be revised (.2); telephone call with Mr. Ayala to get his comments on the agreement (.2); revise the agreement to incorporate Mr. Ayala's changes (.2); draft an email to the parties, transmitting the agreement vers. 2 and a redline (.1); telephone call from Mr. Zambo concerning the Nunez agreement (.2). |
| 3/26 | 1.3 | OB2 | Telephone call to Mr. Zambo, to inquire about whether Armando Alcala has signed the settlement agreement; later, very briefly review email from Mr. Zambo which transmitted the executed document (.1)(for both activities); review the claims and the schedules to isolate those entities which hold allowed claims against the estate (.8); translate that information to a matrix, for use in the Nunez objection as well as the potential transmission of a plan (.1); draft a notice of motion, reflecting the special arrangements we have for the service of the motion in the three modes: ecf system, digital notice (by agreement) and by mail (.2); draft a proposed order relative to the motion (.1). |
| 3/27 | 3.5 | OB2 | Write the motion for approval of the compromise with the Nunez claimants (2.7); brief telephone call to E. Alcala re the motion draft (no charge for this); later, telephone call from E. Alcala, to discuss her |

**Exhibit B  -  Page 27**
**Time Charges by Category**
**Date    Time    Code    Description**

questions and comments relative to the motion to settle (.3); complete the assembly of the various components of the motion (to facilitate the electric filing thereof)(.2); cause the agreement to be electronically filed (no charge for this); draft an email to Mr. Mason, transmitting copies of the Nunez settlement motion and explaining in some detail why we are sending the motion to him, with a copy to Ms. Krol (.3).

Hours In Category: 37.5        @ $300.00 per hour                    $ 11,250.00

**OPS  -  Operating Reports**

9/18    .5    OPS    Telephone calls (x2) with Mr. Nelson (from the UST) concerning the August 2013 report, and the applicable form (.1); complete the report and redact the two attachments (.4); cause it to be electronically filed (no charge for this).

10/30    .3    OPS    Prepare the September operating report (.3); cause it to be electronically filed (no charge for this).

11/15    .4    OPS    Prepare the October 2013 operating report (.1); review and then redact the bank statements and prepare the Declaration of Electronic Filing (.2); draft an email to Ms. Alcala re same (.1); cause the documents to be electronically filed (no charge for this).

11/20    .1    OPS    Telephone call (leaving voicemail) followed up with an email, with documents attached, to Mr. Wakefield (UST's office) concerning the last operating statement filed by the Debtor.

12/16    .5    OPS    Prepare the November operating report and the accompanying declaration (.5); cause the report to be electronically filed (*no charge for this*).

2/13    .3    OPS    Draft the January operating report (.3); draft an email to Mrs. Alcala, transmitting the operating report and redacted bank statement to her for her signature and review (*no charge for this*).

3/12    .3    OPS    Review the February 2014 BOA account statement, and cross check the expense data (.1); prepare the February 2014 operating report (.2).

3/16    .1    OPS    Final review of the February 2014 operating report, prior to its filing (.1); cause the document to be electronically filed (no charge for this).

4/15    .4    OPS    Prepare the March 2014 operating report (.4); cause it to be electronically

**Exhibit B  -  Page 28**
**Time Charges by Category**
**Date    Time    Code    Description**

filed (no charge for this).

| 5/13 | .3 | OPS | Prepare the April 2014 operating report (.3); send a draft to Ms. Alcala for her review and signature (no charge for this). |

Hours In Category:  3.2          @ $300.00 per hour                          $      960.00

### PD  -  Plan/Disclosure Statement

| 9/27 | .3 | PD | Return call of Alvar Ayala, to discuss the possible treatment of the Impression workers through a plan. |

| 10/1 | .5 | PD | Telephone call with Alvar Ayala and Chris Williamson, who represent the Impression workers, about the possible ways to address the claims of their constituency through a reorganization plan. |

| 2/17 | 1.8 | PD | Prepare a cash flow projection for the case (1.8); draft an email, transmitting it to Mrs. Alcala for her review (no charge for this). |

| 2/18 | .8 | PD | Telephone call with Mrs. Alcala, and go walk her through the detail of the analysis, prepared yesterday, concerning the financial projections for the case, including some which could potentially assist in the resolution of the Nunez claims. |

| 4/28 | .5 | PD | Begin work on the Plan and the accompanying documentation (.2); telephone call from E. Alcala to describe the plan, what it does and the related timing issues (.3). |

| 4/29 | .5 | PD | Further work on planning the various and specific components which will be needed in the liquidating plan which we have in mind for the Debtor in this case. |

| 4/30 | 1.4 | PD | Complete the first draft of the motion to set dates and approve the plan/disclosure statement. |

| 5/4 | 3.1 | PD | Further work on the chart (for sources and uses of cash) which will be attached to the plan, to include recent settlements, estimates of additional expense, timing issues, reserves, and related, essential considerations (2.9); draft a detailed email to Mrs. Alcala concerning the chart and its |

**Exhibit B  -  Page 29**
**Time Charges by Category**

| Date | Time | Code | Description |
|------|------|------|-------------|

assumptions (.2).

| 5/5 | 1.9 | PD | Further fine tuning of the chart (1.0); draft an email to Mrs. Alcala concerning the May 5 edition of the chart (.1); draft the opening section of the Plan (1.8). |

| 5/6 | 2.4 | PD | Revise the introductory section of the Plan to a good first draft. |

| 5/7 | 4.7 | PD | Telephone call with Mrs. Alcala concerning some comments she had on the introductory section of the Plan and the Plan exhibit (.2) and also her thoughts and concerns about the IDES claim (no charge for this); revise the introductory section of the plan, and draft the remaining sections of the Plan (4.5). |

| 5/8 | 3.2 | PD | Telephone call with Mrs. Alcala, to discuss the latest (and complete) draft of the plan, the timing issues and the status of the discussions with the accountant for his post-confirmation work (.2); later, telephone call with Mr. Gallagher (the accountant) to confirm that he understands what his firm is being called upon to do, and to request something written to attach to the plan re same (.2); prepare a declaration of electronic filing for the Plan (.1); prepare a notice of filing for the Plan (.1); review and revise the Plan to its third and (hopefully) final draft (2.6). |

| 5/9 | 5.0 | PD | Recalculate our legal fee and cost estimate through May 8, and then adjust that figure to provide a closer administrative expense estimate for use in the Plan and the Plan Exhibit 1 (.2); revise Plan Exhibit 1 accordingly (.1); revise the Plan to complete version 5 (1.4); telephone call with Mrs. Alcala to discuss all of the changes made to version 5 of the Plan, and to make sure that all of the moving parts of the Plan are understood and approved, and obtain her authorization to proceed to file the Plan (.5); exchange emails confirming the authorization to proceed (***no charge for this***); arrange for the electronic filing of the Plan and the Notice of Filing relating to the Plan (***no charge for this***); revise the scheduling motion, to take into consideration the advancement of the hearing date, and also incorporate a number of additions to the relief sought (and the explanation for why the additional relief is sought)(1.6); draft the notice of motion (.1); adapt the official form of ballot for use in this small business bankruptcy case (.3); draft the order and notice and the scheduling order (.8); cause the motion to be electronically filed (***no charge for this***). |

| 5/13 | .9 | PD | Create a matrix for the mailing of notice of confirmation, paying particular attention to variances between the official list of record, and come up with a 55 name list, potentially expandable to 189 names if the Court so |

**Exhibit B  -  Page 30**
**Time Charges by Category**
**Date    Time   Code    Description**

|  |  |  | chooses (.5); revise the Order granting the motion to set hearing dates (.2); revise the Order & Notice of the Hearing on Confirmation (.2). |

5/14   .1   PD   Amend and adapt the chart which was attached to the Plan as Exhibit 1, so that it may be used as a confirmation exhibit, and while doing so, make revisions to reflect the Bulley & Andrews settlement which was finally inked and filed today.

5/15   1.3   PD   Draft an email to Ms. Krivanek, and a separate one to Mr. Ayala, inviting them to each call us to discuss some of the practical issues relative to the Plan and voting on the Plan (.1); as a convenience to counsel for the Nunez claimants (Mr. Ayala), customize ballots for the seven Class 1-B claimants, using the claim figures set forth in the list attached to the Plan (.1); draft a letter to Mr. Ayala, concerning the Plan (.2); prepare customized ballots for Mr. Alcala, Impression and Protectco (.1); check and double check the solicitation packets to be sent to the parties, prior to transmission (.5); prepare a certificate of service relative to the Order, Ballot, Plan and the service list of entities receiving the confirmation packet, and the individual components of that certificate (.3); cause the certificate to be electronically filed (no charge for this).

5/20   .3   PD   Telephone call to C. Krivanek to discuss the Funds' rejection claim, the issue of voting on the claim (i.e., encouraging her to get the five or six entities which have pieces of claim 20 to file a single ballot, instead of several which might require review and possibly, objection) and the next steps on collecting the two remaining major accounts receivable.

Hours In Category:  28.7      @ $300.00 per hour                    $   8,610.00


### SCH  -  Schedules/Statement of Financial Affairs

8/16   3.6   SCH   Go through the available materials and prepare a first draft of the statement of financial affairs (3.4); telephone call with Mrs. Alcala, concerning the responses to the Statement of Financial Affairs and our request for further backup, from the Quickbooks account, of the statements of the debts owed (.2).

8/17   4.2   SCH   Review the available information, making adjustments where appropriate to the content of the schedules to the Petition (2.5); telephone call from E. Alcala, to discuss corporate vacation pay policies, amounts due to salaried employees and related issues (.5); meet with Mrs. Alcala to discuss the details of certain claims and additional backup documentation for those

**Exhibit B  -  Page 31**
**Time Charges by Category**
**Date   Time   Code   Description**

claims and entries to the Schedules and Statement, but also, and at length, the likely direction of the Chapter 11 case (assuming that we can collect the sums from the General Contractors), the end game and likely outcome and time line (1.2).

| 8/18 | 3.1 | SCH | Bring the Schedules to a 4th draft, continuing to assess and enter information from the documentation provided, and very carefully proofing all of the employee and vendor claim entries against the source documents (while updating the memo concerning the changes made) (2.7); draft an email, transmitting the current draft of what is to be filed tomorrow to Mrs. Alcala (.1); further review of certain specific entries, while drafting a second memo on the changes made (.3); email the second petition memo to Mrs. Alcala (***no charge for this***). |

| 8/19 | 3.0 | SCH | Final review, prior to filing, of schedules A-H and the Statement of Financial Affairs (2.2); review the complete statements on the two intercompany accounts and the one shareholder loan account, and extract from those reports the information which is required in response to Question 3 of the Statement of Financial Affairs and, in the process, zero in and separate Armando Alcala's wage payment history, and separately itemize his shareholder loan transactions with the Debtor, as well as those of Impression and Protecto (with the Debtor)(.5); draft an amended list of creditors (which takes minutes) but then annotate the PDF (using an Adobe tool) to identify those new or modified entries on the, so that the Clerk can identify those parties on the matrix which are new or modified (.3); see to the electronic filing of the Schedules, Statement of Financial Affairs and the Amended List/Matrix of Creditors (***no charge for this***). |

Hours In Category:  13.9     @ $300.00 per hour                    $   4,170.00


**FEE  -  Final Fee Application of Bruce Dopke**

| 5/14 | .5 | FEE | Begin to draft our first and final fee application. |

| 5/28 | 2.5 | FEE | Complete the final fee application (this charge has been capped at 2.5 hours, to bring the total charges to the estate for the preparation of the fee application to 3.0 hours.  The actual time spent in preparing the application, the exhibits and the notices, was more than 7.0 hours). |

Hours In Category:  3.0     @ $300.00 per hour                    $      900.00

Total Hours - All Categories:  191.5  @ $300.00 per hour          $  57,450.00

**Exhibit C**

**Chronological Cost Charges**

**Application of Bruce Dopke for Final Compensation As
Counsel to Chicago Construction Specialties, Inc. - Chapter 11**

| | |
|---|---|
| Filing Fee (for the case), paid on August 5, 2013 | $ 1,213.00 |
| Filing Fee (for Schedules A - J), paid on August 19, 2014 | $    30.00 |
| Grant Park Garage, parking, for attendance at 341 meeting and the administrative meeting with the UST prior to that, incurred on Sept. 3, 2013 | $    30.00 |
| Copies, motion to settle with JC Anderson, 442 pages @ $.09, copied on Sept. 9, 2013 | $    39.78 |
| Postage, service copies of motion to settle with JC Anderson, 13 sets @ $2.12, mailed on Sept. 9, 2013 | $    27.56 |
| Copy expense, 202 copies of the Court's bar date order and a form proof of claim with instructions, 808 copies @ $.09, incurred on Sept. 26, 2013 | $    72.72 |
| Postage, mailing 202 copies of the bar date order and proof of claim form, sent on Sept. 26, 2013, sent first class | $    92.92 |
| Copies, 15 service copies of the motion to settle with Pepper Construction (315 pages total) @ $.09 per page, incurred on Nov. 13, 2013 | $    28.35 |
| Postage, service copies of motion to settle with Pepper Constr., 15 sets @ $1.72, mailed on Nov. 13, 2013 | $    25.80 |
| Copies, 15 service copies of the motion to settle with Leopardo Companies (330 pages total) @ $.09 per page, incurred on Nov. 20, 2013 | $    29.70 |
| Postage, service copies of motion to settle with Leopardo, 15 sets @ $1.72, mailed on Nov. 20, 2013 | $    25.80 |
| Postage, copy of order and original signature page sent to Pepper Construction on Dec. 10, 2013 | $     5.60 |

Exhibit C
Chronological Listing of Costs
Page 2

| | | |
|---|---|---|
| Postage, copy of order and original signature page sent to Leopardo Companies on Dec. 12, 2013 | $ | 5.60 |
| Postage, original mechanics' lien release sent to by US Priority Mail to Leopardo Companies on Dec. 17, 2013 | $ | 5.60 |
| Postage, service copies of the objections to claim 2 and the First Omnibus Objection, incurred on Dec. 28, 2013 | $ | 5.88 |
| Copies, 17 service copies of the motion to extend Debtor's exclusive period to file a plan (221 pages total) @ $.09 per page, incurred on January 8, 2014 | $ | 19.89 |
| Postage, service copies of motion to extend Debtor's exclusive period, 17 sets @ $1.32, mailed on January 8, 2014 | $ | 22.44 |
| Postage, 25 first class letters to the general contractors which owe money to the Debtor, and to their registered agents where applicable, sent on January 16, 2014, @ $.49 each | $ | 12.25 |
| Copies, 14 service copies of the motion to settle with Bear Construction (224 pages total) @ $.09 per page, incurred on February 12,  2014 | $ | 20.16 |
| Postage, service copies of Debtor's motion to settle with Bear Construction, 14 sets @ $1.61, mailed on February 12, 2014 | $ | 22.54 |
| Copies, 14 service copies of the settlement motion with IAI (322 pages total) @ $.09 per page, incurred on Feb. 24, 2014 | $ | 28.98 |
| Copies, 14 service copies of the settlement motion with FH Paschen (210 pages total) @ $.09 per page, incurred on Feb. 26, 2014 | $ | 18.90 |
| Postage, service copies of motions (1) to settle with IAI; and (2) motion to settle with Paschen (same envelope) 14 sets @ $2.45, mailed on Feb. 26, 2014 | $ | 34.40 |

Exhibit C
Chronological Listing of Costs
Page 3

| | | |
|---|---|---|
| Postage, service copies of motion to settle with Gallant Construction 14 sets @ $1.61, mailed on March 26, 2014 | $ | 22.54 |
| Copies, 14 service copies of the motion to extend Debtor's motion to settle with Gallant Construction Company, (210 pages total) @ $.09 per page, incurred on March 25, 2014 | $ | 18.90 |
| Copies, 39 service copies of the motion to settle with Nunez et al, (1014 pages total) @ $.09 per page, incurred on March 27, 2014 | $ | 91.26 |
| Postage, 39 first class flats to the service parties on the Nunez compromise motion, incurred on March 27, 2014 (at $2.03 per flat) | $ | 85.26 |
| Copies, 14 service copies of the settlement motion with Krause Krause (238 pages total) @ $.09 per page, incurred on April 30, 2014 | $ | 23.97 |
| Postage, service copies of Debtor's motion to settle with Krause Construction, 14 sets @ $1.61, mailed on April 30, 2014 | $ | 22.54 |
| Copies, 9 service copies of the settlement motion with Bulley & Andrews for those persons who are not registered for electronic service (143 pages total) @ $.09 per page, incurred on May 14, 2014 | $ | 12.87 |
| Copies, service copies of the Plan, Scheduling Order and Ballots, (1,810 pages total) @ $.09 per page, incurred on May 15, 2014 | $ | 162.90 |
| Postage, for mailing the plan package, and for eight of the recipients, this included the Bulley & Andrews settlement motion, incurred on May 15, 2014 | $ | 113.47 |
| Postage, for Priority Mailing the 2013 form 1120S tax return to Agent Merritt, IRS in Detroit, MI, sent on May 15, 2014 | $ | 5.70 |

Exhibit C
Chronological Listing of Costs
Page 4


Postage, for Priority Mailing of the Fee Application
to the Debtor ($5.60) and 56 first class letters to the
service list ($.49 * 56), transmitting the notice of the Fee
Application to the service list, sent on May 28, 2014     $     33.04

Total:          $   2,410.32

Exhibit D
Costs By Category
Page 1

## Exhibit D

## Cost Charges By Category

### Application of Bruce Dopke for Final Compensation As
### Counsel to Chicago Construction Specialties, Inc. - Chapter 11

*Copy Expense:*

|  |  |  |
|---|---|---|
| Copies, motion to settle with JC Anderson, 442 pages @ $.09, copied on Sept. 9, 2013 | $ | 39.78 |
| Copy expense, 202 copies of the Court's bar date order and a form proof of claim with instructions, 808 copies @ $.09, incurred on Sept. 26, 2013 | $ | 72.72 |
| Copies, 15 service copies of the motion to settle with Pepper Construction (315 pages total) @ $.09 per page, incurred on Nov. 13, 2013 | $ | 28.35 |
| Copies, 15 service copies of the motion to settle with Leopardo Companies (330 pages total) @ $.09 per page, incurred on Nov. 20, 2013 | $ | 29.70 |
| Copies, 17 service copies of the motion to extend Debtor's exclusive period to file a plan (221 pages total) @ $.09 per page, incurred on January 8, 2014 | $ | 19.89 |
| Copies, 14 service copies of the motion to settle with Bear Construction (224 pages total) @ $.09 per page, incurred on February 12,  2014 | $ | 20.16 |
| Copies, 14 service copies of the settlement motion with IAI (322 pages total) @ $.09 per page, incurred on Feb. 24, 2014 | $ | 28.98 |
| Copies, 14 service copies of the settlement motion with FH Paschen (210 pages total) @ $.09 per page, incurred on Feb. 26, 2014 | $ | 18.90 |

Exhibit D
Costs By Category
Page 2

| | |
|---|---|
| Copies, 14 service copies of the motion to extend Debtor's motion to settle with Gallant Construction Company, (210 pages total) @ $.09 per page, incurred on March 25, 2014 | $      18.90 |
| Copies, 39 service copies of the motion to settle with Nunez et al, (1014 pages total) @ $.09 per page, incurred on March 27, 2014 | $      91.26 |
| Copies, 14 service copies of the settlement motion with Krause Krause (238 pages total) @ $.09 per page, incurred on April 30, 2014 | $      23.97 |
| Copies, 9 service copies of the settlement motion with Bulley & Andrews for those persons who are not registered for electronic service (143 pages total) @ $.09 per page, incurred on May 14, 2014 | $      12.87 |
| Copies, service copies of the Plan, Scheduling Order and Ballots, (1,810 pages total) @ $.09 per page, incurred on May 15, 2014 | $     162.90 |
| Sub Total for this Category: | $     568.38 |

*     *     *

***Filing Fees:***

| | |
|---|---|
| Filing Fee (for the case), paid on August 5, 2013 | $   1,213.00 |
| Filing Fee (for Schedules A - J), paid on August 19, 2014 | $      30.00 |
| Sub Total for this Category: | $   1,243.00 |

*     *     *

***Postage Expense:***

| | |
|---|---|
| Postage, service copies of motion to settle with JC Anderson, 13 sets @ $2.12, mailed on Sept. 9, 2013 | $      27.56 |

Exhibit D
Costs By Category
Page 3

| | | |
|---|---|---|
| Postage, mailing 202 copies of the bar date order and proof of claim form, sent on Sept. 26, 2013, sent first class | $ | 92.92 |
| Postage, service copies of motion to settle with Pepper Constr., 15 sets @ $1.72, mailed on Nov. 13, 2013 | $ | 25.80 |
| Postage, service copies of motion to settle with Leopardo, 15 sets @ $1.72, mailed on Nov. 20, 2013 | $ | 25.80 |
| Postage, copy of order and original signature page sent to Pepper Construction on Dec. 10, 2013 | $ | 5.60 |
| Postage, copy of order and original signature page sent to Leopardo Companies on Dec. 12, 2013 | $ | 5.60 |
| Postage, original mechanics' lien release sent to by US Priority Mail to Leopardo Companies on Dec. 17, 2013 | $ | 5.60 |
| Postage, service copies of the objections to claim 2 and the First Omnibus Objection, incurred on Dec. 28, 2013 | $ | 5.88 |
| Postage, service copies of motion to extend Debtor's exclusive period, 17 sets @ $1.32, mailed on January 8, 2014 | $ | 22.44 |
| Postage, 25 first class letters to the general contractors which owe money to the Debtor, and to their registered agents where applicable, sent on January 16, 2014, @ $.49 each | $ | 12.25 |
| Postage, service copies of motions (1) to settle with IAI; and (2) motion to settle with Paschen (same envelope) 14 sets @ $2.45, mailed on Feb. 26, 2014 | $ | 34.40 |
| Postage, service copies of Debtor's motion to settle with Bear Construction, 14 sets @ $1.61, mailed on February 12, 2014 | $ | 22.54 |
| Postage, service copies of motion to settle with Gallant Construction 14 sets @ $1.61, mailed on March 26, 2014 | $ | 22.54 |
| Postage, 39 first class flats to the service parties on the Nunez compromise motion, incurred on March 27, 2014 (at $2.03 per flat) | $ | 85.26 |

Exhibit D
Costs By Category
Page 4

| | | |
|---|---|---|
| Postage, service copies of Debtor's motion to settle with Krause Construction, 14 sets @ $1.61, mailed on April 30, 2014 | $ | 22.54 |
| Postage, for mailing the plan package, and for eight of the recipients, this included the Bulley & Andrews settlement motion, incurred on May 15, 2014 | $ | 113.47 |
| Postage, for Priority Mailing the 2013 form 1120S tax return to Agent Merritt, IRS in Detroit, MI, sent on May 15, 2014 | $ | 5.70 |
| Postage, for Priority Mailing of the Fee Application to the Debtor ($5.60) and 56 first class letters to the service list ($.49 * 56), transmitting the notice of the Fee Application to the service list, sent on May 28, 2014 | $ | 33.04 |
| Sub Total for this Category: | $ | 568.94 |

\*   \*   \*

**Travel:**

| | | |
|---|---|---|
| Grant Park Garage, parking, for attendance at 341 meeting and the administrative meeting with the UST prior to that, incurred on Sept. 3, 2013 | $ | 30.00 |

**Total for All Expenses:**     **$ 2,410.32**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | Case No.: 13-31265 |
| CHICAGO CONSTRUCTION | § | |
| SPECIALTIES, INC., | § | |
| | § | Hearing: June 18, 2014 |
| | § | 10:30  a.m. |
| Debtor. | § | |
| | § | Hon. Timothy A. Barnes |

**NOTICE OF MOTION OF BRUCE DOPKE FOR ALLOWANCE
OF FINAL COMPENSATION AND REIMBURSEMENT OF
COSTS AND EXPENSES FOR HIS SERVICE AS
COUNSEL TO THE DEBTOR**

**PLEASE TAKE NOTICE** that on May 28, 2014, Applicant Bruce Dopke, counsel to Chicago Construction Specialties, Inc., debtor and debtor-in-possession in this case (the "Debtor") filed a motion (the "Motion") for entry of an order which allows Mr. Dopke final compensation and reimbursement of costs and expenses for his services to the Debtor during the time period of August 5, 2013 through June 18, 2014 under 11 U.S.C. §330, in the following amounts:

    a.    Final allowance of compensation in the amount of Fifty-Seven Thousand Four Hundred Fifty Dollars ($57,450.00)(plus such allowances, if any, as the Court may allow to Mr. Dopke for his work done between May 29, 2014 and the June 18, 2014 hearing date scheduled for this Motion); and

    b.    Final allowance of reimbursement of costs and expenses incurred by Mr. Dopke on behalf of the Debtor's estate, in the amount of Two Thousand Four Hundred Ten and 32/100 Dollars ($2,410.32), (plus such allowances, if any, as the Court

-1-

EXHIBIT E

may allow to Mr. Dopke for costs and expenses which he incurred on the estate's

behalf between May 29, 2014 and the June 18, 2014 hearing date scheduled for

this Motion);

You may obtain a copy of the Motion by reviewing it in the Court's file located at 219 S.

Dearborn Street, Seventh Floor, Chicago, IL  60604, or you may contact Mr. Dopke, by phone,

mail or email at his offices (indicated below) and he will send you a copy (by mail or by email)

as you may prefer.  A hearing will be held on the Motion on Wednesday, June 18, 2014 at 10:30

a.m. in Courtroom 613 in the US Bankruptcy Court, located in the Everett McKinley Dirksen

Building, 219 S. Dearborn Street, Chicago, IL  60604, at which time you may appear and object

to the Motion, as you see fit.

Dated: May 28, 2014

By:   /s/ Bruce Dopke                                   
General bankruptcy counsel for the Debtor,
CHICAGO CONSTRUCTION SPECIALTIES,
INC., Debtor and Debtor In Possession

Bruce Dopke
P.O. Box 681246
Schaumburg, IL 60168-1246
Tel:    847-524-4811
Fax:    847-524-4131
email: bruce@dopkelaw.com
ARDC: 3127052